## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

DOLBY VIDEO COMPRESSION, LLC, and DOLBY INTERNATIONAL AB,

                    Plaintiffs,

      vs.

SNAP INC.,

                    Defendant,

---

SNAP INC.,

                    Counterclaim-Plaintiff,

      vs.

DOLBY VIDEO COMPRESSION, LLC,
DOLBY LABORATORIES, INC., DOLBY
INTERNATIONAL AB, AND
ACCESS ADVANCE LLC,

                    Counterclaim-Defendants,

Civil Action No. 26-317 (JLH)

---

## DOLBY VIDEO COMPRESSION, LLC, DOLBY LABORATORIES, INC., AND DOLBY INTERNATIONAL AB'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANT SNAP INC.'S COUNTERCLAIMS

Dated: August 10, 2026

Kevin Schubert
kschubert@mckoolsmith.com
Robert Burns
rburns@mckoolsmith.com
McKool Smith P.C.
1301 6th Ave, 32nd Floor
New York, NY 10019

Warren Lipschitz
wlipschitz@mckoolsmith.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
Phone: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

Greg Saltz
gsaltz@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court
Dallas, TX 75201

Mitch Verboncoeur
mverboncoeur@mckoolsmith.com
McKool Smith P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................ 3

    A.    The Parties ......................................................................................... 3

    B.    The H.264 and H.265 Standards, Dolby's RAND Commitments, and the AV1 Specification.......................................................................... 4

    C.    Dolby's Claims and Snap's Counterclaims ...................................... 5

III.  LEGAL STANDARD..................................................................................... 6

IV.   ARGUMENT .................................................................................................. 7

    A.    Snap's Counts XIX and XX Fail Under Rules 12(b)(6) and 12(b)(1)..................... 7

        1.    Snap's Counts XIX and XX fail to state a claim against Dolby regarding AV1 under Rule 12(b)(6). ........................................... 7

        2.    Snap's Counts XIX and XX regarding AV1 lack subject matter jurisdiction under Rule 12(b)(1). ................................. 10

    B.    Snap's Express Waiver Counterclaim is Improper, Insufficient, and Overbroad ................................................................................... 11

    C.    Snap's Counterclaim Count XX is Improperly Based on the Same Conduct as Count XIX ...................................................................... 16

    D.    Snap's Noninfringement and Invalidity Counterclaims Lack Sufficient Factual Support ................................................................ 18

        1.    Snap's noninfringement Counterclaims lack sufficient factual support.................................................................................. 18

        2.    Snap's invalidity Counterclaims lack sufficient factual support. ............. 19

V.    CONCLUSION.............................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A123 Sys., Inc. v. Hydro-Quebec*,
626 F.3d 1213 (Fed. Cir. 2010)..................................................................................12

*Acierno v. Preit-Rubin, Inc.*,
199 F.R.D. 157 (D. Del. 2001) ...................................................................................12

*Alexander v. BMW of N. Am. LLC*,
2023 WL 6066563 (D. Del. Sept. 18, 2023)...............................................................18

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014).....................................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................6, 18, 20

*Ballentine v. United States*,
486 F.3d 806 (3d Cir. 2007)...........................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................6, 20

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007)....................................................................................10

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ...............................................................................18, 19

*Capshaw v. Smith Ests., Inc.*,
69 F.R.D. 598 (D. Del. 1976) ......................................................................................12

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015).....................................................................................................19

*Dow Chem. Canada Inc. v. HRD Corp.*,
656 F. Supp. 2d 427 (D. Del. 2009)...............................................................................8

*Erie Telecommunications, Inc. v. City of Erie, Pa.*,
853 F.2d 1084 (3d Cir. 1988).......................................................................................14

*ETRI et al. v. Snap*,
Case No. 26-cv-00918 (D. Del. 2026) .........................................................................13

*Gen. Refractories Co. v. First State Ins. Co.*,
  500 F.3d 306 (3d Cir. 2007)................................................................................12

*Genentech, Inc. v. Amgen Inc.*,
  310 F. Supp. 3d 467 (D. Del. 2018)......................................................................7

*Haier Am. Trading, LLC v. Samsung Elecs., Co.*,
  2018 WL 4288617 (N.D.N.Y. Sept. 7, 2018) ........................................................8

*Ibex IP Holdings Ltd. v. Snap Inc.*,
  (Rio de Janeiro, May 2026) ................................................................................13

*Idenix Pharms., Inc. v. Gilead Scis., Inc.*,
  2014 WL 4222902 (D. Del. Aug. 25, 2014) .........................................................20

*Interfaith Hous. Delaware, Inc. v. Town of Georgetown*,
  841 F. Supp. 1393 (D. Del. 1994).......................................................................15

*Jack Eckerd Corp. v. Dart Grp. Corp.*,
  621 F. Supp. 725 (D. Del. 1985).........................................................................16

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
  11 F.3d 399 (3d Cir. 1993)..................................................................................13

*Johnson & Johnson v. Coopervision, Inc.*,
  720 F. Supp. 1116 (D. Del. 1989)........................................................................13

*Mas-Hamilton Grp. v. LaGard, Inc.*,
  156 F.3d 1206 (Fed. Cir. 1998)...........................................................................19

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)........................................................................................7, 10

*Microsoft Corp. v. Motorola, Inc.*,
  2011 WL 11480223 (W.D. Wash. June 1, 2011).................................................14

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ................................................................................8

*Migliore by Migliore v. Vision Solar LLC*,
  160 F.4th 79 (3d Cir. 2025) ................................................................................15

*Millett v. TrueLink, Inc.*,
  533 F. Supp. 2d 479 (D. Del. 2008)......................................................................8

*Milton Roy Co. v. Bausch & Lomb Inc.*,
  418 F. Supp. 975 (D. Del. 1976)...........................................................................6

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022)......................................................................................................14

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007).....................................................................................16

*MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*,
   2015 WL 6685523 (S.D.N.Y. Oct. 29, 2015)................................................................12

*Muskrat v. United States*,
   219 U.S. 346 (1911)......................................................................................................10

*Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*,
   2014 WL 12600274 (E.D. Tex. Feb. 28, 2014) ..............................................................9

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
   117 F. Supp. 3d 613 (D. Del. 2015)..............................................................................7, 8

*Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*,
   2017 WL 239326 (D. Del. Jan. 19, 2017)......................................................................18

*Rheault v. Halma Holdings Inc.*,
   2023 WL 8005318 (D. Del. Nov. 7, 2023) .....................................................................18

*Riverside Mem'l Mausoleum, Inc. v. UMET Tr.*,
   581 F.2d 62 (3d Cir. 1978)............................................................................................13

*Sanyo Elec. Co., Ltd v. Intel Corp.*,
   2019 WL 1650067 (D. Del. Apr. 17, 2019)...................................................................10

*Sprint Commc'ns Co. L.P. v. Cequel Commc'ns*,
   LLC, 2022 WL 609213 (D. Del. Jan. 27, 2022) ...........................................................16

*St. Thomas--St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*,
   218 F.3d 232 (3d Cir. 2000)............................................................................................7

*Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*,
   329 U.S. 637 (1947)......................................................................................................13

*Truinject Corp. v. Nestle Skin Health S.A.*,
   2020 U.S. Dist. LEXIS 2541 (D. Del. Jan 7, 2020).....................................................17

*United States v. Bestfoods*,
   524 U.S. 51 (1998)........................................................................................................16

*USX Corp. v. Prime Leasing Inc.*,
   988 F.2d 433 (3d Cir. 1993)..........................................................................................17

*Valli v. Avis Budget Grp. Inc*,
    162 F.4th 396 (3d Cir. 2025) ..........................................................................14, 16

*Voda v. Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007)..................................................................................16

*In re Volkswagen Grp. of Am., Inc.*,
    28 F.4th 1203 (Fed. Cir. 2022) ...............................................................................15

*Zinetti v. Deutsche Bank Nat'l Tr. Co.*,
    2020 WL 409725 (D. Del. Jan. 24, 2020)................................................................18

**Statutes**

28 U.S.C. § 1367(c)(4)..................................................................................................16

35 U.S.C § 101 ........................................................................................................19, 20

35 U.S.C § 102 ........................................................................................................19, 20

35 U.S.C § 103 ........................................................................................................19, 20

35 U.S.C § 112 ........................................................................................................19, 20

35 U.S.C. § 271(a) .........................................................................................................19

**Other Authorities**

Rule 8(c)(1)............................................................................................................13, 19

Rule 12(b)(1)...................................................................................................1, 2, 7, 10

Rule 12(b)(6).................................................................................................... *passim*

Rule 12(b)(7)......................................................................................................2, 11, 12

Rule 19 .................................................................................................................11, 12, 13

## I.     INTRODUCTION

This case is about Snap's infringement of Dolby's video coding patents. In response to Dolby's complaint, Snap Inc. ("Snap") raises declaratory judgment Counterclaims against Dolby Video Compression, LLC, Dolby Laboratories, Inc., and Dolby International AB (collectively, "Dolby"), and against Counterclaim Defendant Access Advance LLC ("Access Advance"). Snap's Counterclaims against Dolby should each be dismissed on account of four deficiencies:

*First,* Counts XIX and XX—as they relate to any alleged obligation to license implementations of the AV1 Specification—fail to state a claim for relief under Rule 12(b)(6) and fail for lack of subject matter jurisdiction under Rule 12(b)(1). Count XIX is a breach of contract claim. Count XX is a breach of the duty of good faith and fair dealing claim. Both claims require, at minimum, an allegation that Dolby breached a contractually imposed obligation. Yet absent from Snap's allegations is any contractual obligation on Dolby's part, express or implied, for AV1.

With respect to the AV1 Specification ("AV1"), Counts XIX and XX violate fundamental legal principles and basic fairness. As background, Dolby and its predecessors in interest in the Asserted Patents chose to contribute technology to the H.264 and H.265 Standards developed by the International Telecommunication Union ("ITU") through public, open standard-setting processes that were published in 2003 and 2013, respectively. Dolby has accordingly agreed to abide by the licensing commitments made to the ITU with respect to implementations of the H.264 and H.265 Standards. The AV1 Specification was developed by the Alliance for Open Media ("AOM"), a private consortium of companies, through a non-public, closed process and published in 2018—five years after publication of the H.265 Standard. Neither Dolby nor its predecessors in interest in the Asserted Patents played any role whatsoever in the development of AV1, nor taken on any contractual obligations relating thereto. For years, AOM has claimed that AV1 is "royalty free" despite failing to consult with patent owners such as Dolby, who never agreed to AOM's

licensing terms and never agreed that its technology could be incorporated into AV1. Snap now argues through its Counterclaims that Dolby has unspecified contractual obligations with respect to AV1, though Snap fails to identify any source for these alleged obligations. This position is legally erroneous.

This Court should reject Snap's attempts to bind Dolby to licensing commitments Dolby never made regarding technology that was incorporated into AV1 without Dolby's prior knowledge or permission. Snap's Counts XIX and XX fail under Rule 12(b)(6) because Snap does not allege any contractual obligation, an essential element of both counts. Counts XIX and XX also fail under Rule 12(b)(1) for lack of subject matter jurisdiction because there is no actual case or controversy appropriate for declaratory judgment. Snap can point to no contractual obligations with respect to AV1 to which Snap could conceivably be a third-party beneficiary. As such, Dolby would lack standing to bring any underlying cause of action based on AV1-related obligations because such obligations do not exist. Thus, the contrary is also true: Snap lacks standing to seek a declaratory judgment predicated on that nonexistent obligation.

***Second,*** Count XXI, titled "unenforceability due to express waiver," seeks a declaratory judgment that "all claims of all patents that are licensed through Access Advance" are unenforceable against Snap's content distribution. Count XXI fails for at least three reasons. As an initial matter, it fails under Rule 12(b)(7) for failure to join required parties. The extraordinary relief Snap seeks extends not only to Dolby's patents, but also to U.S. and foreign patents owned by dozens of other entities. Indeed, "all claims of all patents that are licensed through Access Advance" includes U.S. and foreign patents owned by 45 or more companies, at least 43 of whom are not parties to this action. Proceeding with Snap's Count XXI in their absence would prejudice those entities' rights in the patents that are subject of Snap's requested declaration. In addition,

-2-

Count XXI is an improper counterclaim because Snap's express waiver theory is, at best, an affirmative defense. Such an allegation may, if successful, limit Dolby's recovery, but it does not entitle Snap to affirmative relief independent of Dolby's infringement claims. Finally, Count XXI fails under Rule 12(b)(6) for failure to state a claim. Snap's allegations rely on purported statements from patent pools. At most, those alleged statements concern the terms under which Dolby's patents may be licensed through the pools. On their face, those statements do not waive, relinquish, or otherwise affect Dolby's independent right to bilaterally license or enforce its patents. Nor has Snap alleged, or plausibly could allege, that those patent pools were speaking on Dolby's behalf or had the authority to bind Dolby with respect to Dolby's bilateral licensing or patent enforcement. This Court should dismiss Count XXI in its entirety, but at minimum, this Court should decline jurisdiction over foreign patents and patents not asserted in this case.

*Third,* Count XX, an implied covenant claim, is improperly duplicative of Count XIX, a breach of contract claim. Counts XIX and XX are based on the same underlying alleged conduct. Under Third Circuit precedent, implied covenants are necessarily mutually exclusive with express contractual terms and cannot be based on the same alleged conduct.

*Fourth,* Snap's Counts I through XVIII are noninfringement and invalidity counterclaims that do no more than recite, almost verbatim, the statutory language and legal standard underlying those claims. They are therefore mere legal conclusions that fail to state a plausible claim for relief or provide Dolby with fair notice.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Dolby is a pioneer in audio, video, and imaging technologies and has played a significant role in the development of media technologies for decades. Building on its legacy, Dolby continues to invent, advance and license audio, video, and imaging technologies that shape the ways people

experience media and communicate. Dolby owns the Asserted Patents, which include inventions by engineers who contributed to the development of the H.264 and H.265 video coding standards.

Snap operates Snapchat, a widely used multimedia communications platform through which users create, share and view photo and video content. Snapchat uses Dolby's video coding technology to more efficiently send millions of high-quality videos to millions of users in the United States every day.

Certain of the patents at issue in Snap's Counterclaims are available to license not only bilaterally from Dolby, but also through patent pools. Access Advance is a patent pool administrator that operates several patent pools including the Video Distribution Patent Pool ("VDP"), through which companies can obtain licenses to Dolby's and other licensors' video coding patents. VDP includes 45 licensors, only two of whom are Dolby entities, and over 40,000 patents, many of which are foreign patents.[1] Access Advance does not have any legal interest in the Asserted Patents. VDP includes license coverage relating to the H.265 Standard and the AV1 Specification. Dolby licenses its patents relating to the earlier H.264 Standard through Via LA's H.264 pool, which also includes patents from many non-Dolby entities. Dolby's bilateral licensing program is entirely separate from the Via LA and VDP pools. Potential licensees (such as Snap) can choose to license the patents-in-suit directly from Dolby or through those patent pools.

**B.     The H.264 and H.265 Standards, Dolby's RAND Commitments, and the AV1 Specification**

Dolby's infringement claims involve Snap's use of the H.264 and H.265 Standards and the AV1 Specification. The H.264 and H.265 Standards were developed by a branch of the ITU—a specialized agency of the UN—specifically by collaborative groups of video coding engineers through public processes. *See* D.I. 25 ("Countercls.") ¶ 51. The ITU seeks to ensure that these

---

[1] https://accessadvance.com/vdp-pool-licensors/.

-4-

standards are widely usable and unimpeded by patent holders who refuse to license on reasonable and non-discriminatory ("RAND") terms. *Id.* ITU participants submit technical contributions for inclusion into a standard based on technical merit. The ITU expects those participants to indicate their RAND intention for any patent claims potentially essential to the standard. *Id.* Here, the contributors from which the patents-in-suit originated, and by extension Dolby, committed that they are prepared to license H.264 and H.265 essential patent claims on RAND terms for implementations of the H.264 and H.265 Standards. *See id.* ¶ 52.

The ITU is not involved with the AV1 Specification. Neither Dolby nor any of its predecessors in interest in the Asserted Patents played any role in developing AV1. Rather, AV1 was developed by AOM, a private consortium of primarily large companies through a non-public process that occurred years after the publication of the H.265 Standard.[2] Since that time, AOM has unilaterally stated that AV1 as "open" and "royalty-free" despite not consulting companies like Dolby, whose technology AOM incorporated into AV1 without their permission. To be clear, Dolby has never agreed that its technology could be incorporated into AV1, nor made any licensing commitments regarding AV1 for the Asserted Patents, to AOM or otherwise. Snap alleges none.

### C.    Dolby's Claims and Snap's Counterclaims

Dolby filed its amended complaint against Snap in June 2026, asserting nine patents against Snap. D.I. 21 ("Amend. Compl."). Snap answered Dolby's amended complaint and asserted Counterclaims against Dolby for noninfringement and invalidity for all Asserted Patents (Counts I through XVIII). Snap also asserted Counterclaims for "breach of RAND obligations" (Count XIX); "breach of duty of good faith and fair dealing" (Count XX); and "unenforceability due to express waiver" (Count XXI) against Dolby and Access Advance.

---

[2] *See* https://aomedia.org/specifications/av1/; https://aomedia.org/about/story/.

As relief for Count XIX, Snap seeks declarations that Dolby has "breached its RAND commitments to the ITU" and has not offered Snap licenses to "alleged . . . standard-essential patents" for H.264, H.265 and "patents allegedly covering video coding" in AV1. Countercls. ¶¶ 195-196. Snap further seeks a declaration that "all claims of the Asserted Patents are unenforceable based upon Dolby's breach." *Id*. ¶ 197. For Count XX, Snap seeks a declaratory judgment "that Dolby and Access Advance have not complied with their obligations to negotiate in good faith and fair dealing toward a RAND license." *Id*. ¶ 206. For Count XXI, Snap seeks a declaratory judgment "that all claims of all patents that are licensed through Access Advance . . . are unenforceable against Snap's non-physical HEVC [H.265] content distribution including Internet streaming due to express waiver. *Id*. ¶ 211.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The same pleading standards that apply to affirmative claims apply to counterclaims. *Milton Roy Co. v. Bausch & Lomb Inc.*, 418 F. Supp. 975, 978 (D. Del. 1976). Under Rule 12(b)(6), the Court accepts "all well-pleaded allegations in the complaint as true, and view[s] them in the light most favorable to the plaintiff." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (cleaned up). The facts pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The counterclaims should include sufficient allegations to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555 (citations omitted). The Court must dismiss any claim that fails as a matter of law or does not contain sufficient factual matter to state a claim to relief that is plausible on its face. *Id.* at 570.

Whether a court has jurisdiction to hear a declaratory judgment action depends on "whether

the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). "The party asserting subject matter jurisdiction has the burden of proving its existence." *Genentech, Inc. v. Amgen Inc.*, 310 F. Supp. 3d 467, 469 (D. Del. 2018).

## IV.    ARGUMENT

### A.    Snap's Counts XIX and XX Fail Under Rules 12(b)(6) and 12(b)(1)

Snap alleges breach of RAND (Count XIX) and breach of the duty of good faith and fair dealing (Count XX) against Dolby. These claims fail with respect to AV1. Snap claims it is "entitled to" a declaration that Dolby "has not offered Snap a license to Dolby's patents allegedly covering video coding in the AV1 standard on RAND terms and conditions." Countercls. ¶ 196. However, Snap is not entitled to such a declaration because Dolby has no contractual commitments, express or implied, to license implementations of AV1 on RAND terms.

Snap also lacks standing to bring Counts XIX and XX against Dolby as they relate to AV1. A declaratory judgment can issue only "when the constitutional standing requirements of a 'case' or 'controversy' are met." *St. Thomas--St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000). Snap's claims with respect to AV1 do not meet these constitutional standing requirements and should be dismissed on this additional basis.

#### 1.    Snap's Counts XIX and XX fail to state a claim against Dolby regarding AV1 under Rule 12(b)(6).

Counts XIX and XX fail under Rule 12(b)(6) as they relate to AV1. For both counts to survive a motion to dismiss, Snap must first demonstrate "the existence of the contract, whether express or implied." *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015) (citation omitted). For an "implied" commitment, Snap must show the parties "clearly would

have [] included" the term, "had the parties negotiated with respect to them." *Dow Chem. Canada Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 445 (D. Del. 2009) (citation omitted). Regardless of whether the contract is express or implied, Snap must show a "breach of an obligation imposed by that contract." *Phunware,* 117 F. Supp. at 625. Finally, Snap must show resulting damages. *Id.*; *Millett v. TrueLink, Inc.*, 533 F. Supp. 2d 479, 487–88 (D. Del. 2008) (a plaintiff "must establish that the defendant breached an obligation imposed by the contract; and [it] must show that the breach resulted in damages."). Snap does not allege any valid contract that Dolby could have breached with respect to the AV1 Specification.

Snap's Counts XIX and XX are seemingly predicated on an alleged contractual commitment to the ITU by Dolby. Countercls. ¶¶ 188, 199. Dolby's contractual commitment to the ITU is that it is "prepared to grant licenses *for implementations of the H.264 and H.265 Standards* to any patent claims essential to the H.264 and H.265 Standard on reasonable and non-discriminatory (RAND) terms and conditions as set forth in the ITU Common Patent Policy." *Id.* ¶ 52 (quoting Amend. Compl. ¶ 44) (emphasis added). Dolby's contractual commitments to the ITU include no obligation for implementations of the AV1 Specification. Snap does not allege any such obligation (express or implied) or allege any facts that could support the notion that Dolby or its predecessors in interest in the patents could have somehow acquired such an obligation.

The existence of a valid contract and a breach of a corresponding contractual obligation are required elements of any breach of contract or breach of the duty of good faith and fair dealing claim. For this reason, courts dismiss claims alleging breaches of RAND[3] obligations without identifying an agreement conferring such RAND obligations. *See Haier Am. Trading, LLC v.*

---

[3] "Instead of RAND, some courts and commentators use the alternative, legally equivalent abbreviation 'FRAND.'" *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 877 (9th Cir. 2012).

*Samsung Elecs., Co.*, 2018 WL 4288617, at \*15 (N.D.N.Y. Sept. 7, 2018) (dismissing a breach of FRAND claim when the allegations did not "make plausible that the Defendants and the . . . [standards-setting organization] even entered into a contract"); *Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, 2014 WL 12600274, at \*4 (E.D. Tex. Feb. 28, 2014) (dismissing FRAND claims where there was no specific identification of any agreement that was purportedly breached). Counts XIX and XX, as they pertain to AV1, should therefore be dismissed under Rule 12(b)(6).

Snap's pleading offers an apparent theory for why its Counts XIX and XX should stand notwithstanding the lack of any relevant obligations on Dolby's part. The theory is that Dolby cannot "condition" a license for H.264/AVC and H.265/HEVC on an allegedly "supra-RAND" license to AV1. Countercls. ¶ 190. The problem with this theory is that, even if Snap's allegations are correct, Snap's objection is with the conditions under which Dolby has offered a license for H.264/AVC and H.265/HEVC. However, this concern is inconsistent with the relief Snap seeks. Snap seeks a declaration that Dolby "has not offered Snap a license to Dolby's patents allegedly covering video coding in the AV1 standard on RAND terms and conditions." *Id.* ¶ 196. But none of Snap's allegations establish that Snap is entitled to such an AV1 license or that Dolby has any obligation to offer one. Snap further twists this theory by arguing that it is entitled to an AV1 license "to the extent" Dolby has included AV1 coverage "on RAND terms and conditions" as part of any H.264/AVC and H.265/HEVC licenses to third parties. *Id.* ¶ 58. But this line of reasoning falls prey to the same underlying issue: Dolby has no express or implied contractual obligations to offer Snap a patent license for implementations of the AV1 specification. Snap articulates no legal or factual basis for the conclusion that Dolby has taken on new contractual obligations "to the extent" it has ever licensed patents to third parties for non-RAND-encumbered fields of use.

Ultimately, Snap fails to articulate any plausible theory for why Dolby's ITU contractual

obligations for the H.264 or H.265 Standards should be stretched beyond their clear terms. *See id*. ¶ 52 ("Dolby has committed that it is prepared to grant licenses *for implementations of the H.264 and H.265 Standards* to any patent claims essential to the H.264 or H.265 Standard on reasonable and non-discriminatory (RAND) terms and conditions.") (quoting Amend. Compl. ¶ 44) (emphasis added). Snap is not "entitled to" a declaration that Dolby "has not offered Snap a license to Dolby's patents allegedly covering video coding in the AV1 standard on RAND terms and conditions." *Id*. ¶ 196. Counts XIX and XX should therefore be dismissed to the extent they are premised on any alleged obligation to license implementations of the AV1 Specification.

### 2. Snap's Counts XIX and XX regarding AV1 lack subject matter jurisdiction under Rule 12(b)(1).

The exercise of judicial power under Article III extends only to "cases" and "controversies." *Muskrat v. United States*, 219 U.S. 346, 356 (1911). For declaratory judgment actions, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (citation omitted). To determine whether there is an "actual controversy," there must be "an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) (citation omitted). Courts have declined jurisdiction over declaratory judgment claims on standing grounds where the declaratory judgment defendant would lack standing had it attempted to bring suit on the subject matter at issue. *See Sanyo Elec. Co., Ltd v. Intel Corp.*, 2019 WL 1650067, at *10 (D. Del. Apr. 17, 2019) ("Just as Sanyo lacks standing to bring an infringement suit against Intel, so too does Intel lack standing to seek a declaratory judgment against Sanyo.").

There is no such controversy here, and Snap lacks standing to bring Counts XIX and XX with respect to AV1. Dolby has no obligation to license AV1 on RAND terms. Therefore, Dolby could not have asserted a declaratory judgment claim that, for example, Dolby had complied with any alleged AV1-related licensing obligation with respect to Snap or that Snap failed to negotiate in good faith with respect to AV1. *Cf.* Amend. Compl. ¶¶ 575–82 (seeking declaratory judgment with respect to H.264 and H.265). Thus, Snap does not have standing to bring a declaratory judgment suit predicated on the inverse of such a nonviable claim.

### B. Snap's Express Waiver Counterclaim is Improper, Insufficient, and Overbroad

Snap brings an "unenforceability due to express waiver" counterclaim (Count XXI) against Dolby based on statements allegedly made by Via LA and Access Advance. Snap claims Via LA and Access Advance, as Dolby's licensing "agents," "irrevocably waived the right to seek royalty fees" for "Internet video" content (Via LA) and "non-physical HEVC content distribution including Internet streaming," (Access Advance).[4] Countercls. ¶¶ 209–10. Dolby allegedly "ratified that waiver through years of acquiescence and acceptance of benefits." *Id.* As a result, Snap alleges that (1) "all claims of the '173 Patent are unenforceable against Snap's AVC Internet video" and (2) "[a]ll claims of all patents that are licensed through Access Advance, including all of Dolby's patents that are licensed through Access Advance, are unenforceable against Snap's non-physical HEVC content." *Id.* Snap ignores that Dolby licenses its patents bilaterally, not just via patent pools. Snap's waiver counterclaim fails as a matter of law for three independent reasons.

First, Snap's waiver counterclaim related to Access Advance should be dismissed under Rule 12(b)(7) for failure to join necessary parties under Rule 19. Snap seeks a declaration that "all claims of all patents that are licensed through Access Advance" are unenforceable against Snap's

---

[4] Snap only partially quotes the purported statements by Via LA and Access Advance.

"non-physical HEVC content distribution."[5] *Id.* ¶ 211. The VDP pool includes 45 entities, 43 of which are non-Dolby entities.[6] Snap seeks to litigate the patent rights of *all* these licensors without including them as parties to this litigation and giving them an opportunity to be heard.

Courts analyzing a motion to dismiss under Rule 12(b)(7) for failure to join follow a two-step framework. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). Under step one, courts ask whether the absent parties are required under Rule 19. *Id.* Under step two, assuming joinder of absent parties is not feasible (as is the case here[7]), courts consider whether a claim should proceed among the existing parties. *Id.* Snap's Count XXI fails at both steps.

Dozens of non-party licensors are required parties to Snap's Count XXI under Rule 19. A party "must be joined" if "in that person's absence, the court cannot accord complete relief among existing parties," or if "disposing of the action" in its absence may "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurrent double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1). Snap seeks a declaration that "all claims of all patents that are licensed through Access Advance" are unenforceable against Snap. Countercls. ¶ 211. This Court cannot provide complete relief in the absence of the other patent owners. *See, e.g.*, *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010); *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, 2015 WL

---

[5] Although Snap's fifth defense alleges that "All claims of all patents that are licensed through Via LA, including the '173 Patent, are thus unenforceable," Snap's Count XXI cabins its allegation of unenforceability to just the '173 Patent. Countercls. ¶ 210.

[6] *See* https://accessadvance.com/vdp-pool-licensors/

[7] It is not feasible to join parties over which this Court does not have personal jurisdiction. *See, e.g.*, *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157, 164 (D. Del. 2001). Many of the VDP pool licensors are foreign entities that do not transact business in Delaware. *Capshaw v. Smith Ests., Inc.*, 69 F.R.D. 598, 601 (D. Del. 1976). For example, several of the licensors are Korean university entities with no connection to Delaware, such as Hanbat National University Industry-Academic Cooperation Foundation, Industry-Academy Cooperation Foundation of Sejong University, and Kwangwoon University Industry-Academic Collaboration Foundation.

-12-

6685523, at *5 (S.D.N.Y. Oct. 29, 2015). The non-party patent owners have unique property interests. For example, non-Dolby patent owners who participate in the VDP and other Access Advance pools have filed their own patent infringement lawsuits against Snap in both the United States and in other countries. *See, e.g.*, *ETRI et al. v. Snap*, Case No. 26-cv-00918 (D. Del. 2026); *Ibex IP Holdings Ltd. v. Snap Inc.* (Rio de Janeiro, May 2026). If Count XXI proceeds, Snap would litigate waiver, an affirmative defense against non-Dolby patent owners' infringement claims around the world, in this Court without those other plaintiffs' involvement. Yet, without joining the other entities, any decision on Count XXI may not bind these licensors. These licensors, therefore, "would remain free to sue" Snap in another forum. *Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1122 (D. Del. 1989). Failing to add these parties would result in this Court being unable to provide "complete relief."

Any determination on Count XXI would also "impair or impede an absent party's ability to protect its interest." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993). There is substantial risk that any declaratory judgment from this Court would impair the ability of those patent owners to protect their unique interests in their patents, including their ability to collect royalties for, and enforce, those patents. *Cf. Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947) ("A patent is a species of property."). Snap seeks to litigate the rights of *all* patents licensed through Access Advance, so the owners of those patents— the 43 additional licensors—are required parties under Rule 19.

Second, Snap improperly brings "express waiver" as a counterclaim. Rule 8(c)(1) includes a list of affirmative defenses, "waiver" among them. "A counterclaim may entitle the defendant in the original action to some amount of affirmative relief; a defense merely precludes or diminishes the plaintiff's recovery." *Riverside Mem'l Mausoleum*, *Inc. v. UMET Tr.*, 581 F.2d 62, 68 (3d Cir.

-13-

1978). Snap has not adequately alleged that its waiver counterclaim entitles Snap to affirmative relief; instead, it tries to "preclude" or "diminish" Dolby's recovery. *Microsoft Corp. v. Motorola, Inc.*, 2011 WL 11480223, at *4 (W.D. Wash. June 1, 2011) ("[T]he Court is unaware of[] any legal authority allowing waiver as a cause of action."). Therefore, Snap's waiver arguments are improperly pled as a counterclaim, and should be dismissed.

Third, Snap has failed to state a plausible "express waiver" claim under Rule 12(b)(6). "Waiver" is the "intentional relinquishment or abandonment of a known right." *Valli v. Avis Budget Grp. Inc*, 162 F.4th 396, 405 (3d Cir. 2025) (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)). "[E]xpress waiver" occurs when "a party outright declares that it will forgo" a right and "leaves no doubt as to its intent." *Id.* at 409. A patent pool is a commercial arrangement whereby a pool administrator may offer a convenient licensing option for several licensors' patents. Parties are free to enter other licensing arrangements, including bilateral deals, as Dolby has done. Here, however, the "known right," as it relates to Dolby, is Dolby's right to enforce its patents. Dolby's right to enforce its patents against infringers is distinct from Dolby's commercial decisions to license its patents bilaterally or through patent pools. Snap has not alleged that Dolby made any express statement reflecting an intentional relinquishment of its right to enforce its patents. *See Morgan*, 596 U.S. at 417 ("To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right."); *see also Erie Telecommunications, Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1096 (3d Cir. 1988) (determining that rights may be waived where "the party foregoing *its rights* has done so of its own volition") (emphasis added). Rather, Snap claims that all of Dolby's patents are unenforceable because Via LA and Access Advance are Dolby's "licensing agents" and allegedly waived Dolby's rights to seek licensing fees. Snap relies on two statements: (1) an August 2010 statement made by Via LA (f/k/a MPEG LA) on behalf "of

-14-

the pool and its licensors collectively," that "[Via LA] will continue not to charge royalties for Internet Video that is free to end users (known as 'Internet Broadcast AVC Video')," Countercls. ¶¶ 38, 41; and (2) a March 2018 statement by Access Advance made "for the pool and therefore for its licensors collectively" that "[Access Advance] will no longer license nor seek royalty fees for *non-physical HEVC content distribution*," *Id.* ¶¶ 22, 24 (emphasis in original).

These statements cannot support a claim for unenforceability due to express waiver. Even if Access Advance and Via LA were Dolby's agents in certain contexts (such as pool licensing), Via LA's and Access Advance's statements at most bear on Dolby's licensing *through the pools*. *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1209 (Fed. Cir. 2022) ("[J]ust because a party may be a principal's agent for a particular purpose does not mean that the party is the principal's agent for another."). However, Dolby has multiple avenues to license its patents, including bilaterally or through patent pools. Via LA's or Access Advance's statements do not purport to speak to Dolby's ability to pursue bilateral licensing or enforce its patents, nor could they. The Third Circuit has listed "several indicia for when a sales representative is an agent." *Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 87 (3d Cir. 2025). These indicia include that a sales representative is "empowered to conduct and conclude transactions for the principal" and "speak as the principal." *Id*. at 88 (internal quotations omitted). Here, Snap does not and cannot allege that Via LA or Access Advance have any authority to conclude bilateral licensing transactions for Dolby, dispose of Dolby's patents, or otherwise speak on Dolby's behalf outside of Snap's allegations about the narrow patent pool context. Further, an agent can only bind a principal when acting within the scope of its authority. *Interfaith Hous. Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1399 (D. Del. 1994). Snap has not plausibly alleged that Via LA or Access Advance had any alleged "authority" that included the right to dispose of Dolby's patent rights or

-15-

even bilaterally license them. Even putting aside these issues, the "touchstone" of an agency relationship is the principal's "control" over the agent, which Snap has not adequately alleged. *Jack Eckerd Corp. v. Dart Grp. Corp.*, 621 F. Supp. 725, 732 (D. Del. 1985). Finally, as for Via LA, Snap cannot rely on its allegations that Via LA is Dolby's subsidiary, as a parent corporation "is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

Even as a patent pool participant, Dolby—the patent owner—holds "all the exclusionary rights" in its patents and is "entitled to sue for infringement in its own name." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339–40 (Fed. Cir. 2007). Therefore, Via LA's and Access Advance's statements did not "intentionally relinquish" Dolby's complete patent rights, nor render Dolby's patents unenforceable against Snap. And Dolby's purported "years of acquiescence and acceptance of benefits" regarding alleged patent pool statements are insufficient to support a finding of "express waiver." *See Valli*, 162 F.4th at 409; *Sprint Commc'ns Co. L.P. v. Cequel Commc'ns*, LLC, 2022 WL 609213, at *4 (D. Del. Jan. 27, 2022) ("Silence, even misleading silence, is not enough for acquiescence and waiver.").

In addition, the scope of Snap's waiver claim is impermissibly broad. Access Advance is the licensing administrator for more than 40,000 patents belonging to dozens of entities. Most of these patents are foreign patents. At minimum, this Court should decline jurisdiction over these foreign patents and other patents not asserted in this case. *See Voda v. Cordis Corp.*, 476 F.3d 887, 901 (Fed. Cir. 2007) ("[W]e see no reason why American courts should supplant British, Canadian, French, or German courts in interpreting and enforcing British, Canadian, European, French, or German patents."); *see also* 28 U.S.C. § 1367(c)(4) (courts may decline supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction").

**C.** **Snap's Counterclaim Count XX is Improperly Based on the Same Conduct as Count XIX**

Snap's breach of duty of good faith and fair dealing counterclaim (Count XX) is improperly duplicative of its breach of RAND counterclaim (Count XIX) and conclusory. Under Third Circuit law, an implied covenant is "necessarily mutually exclusive" with an express contractual obligation. *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993). In other words, Snap "cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants." *See id.* at 439. Further, as this Court has held, the covenant of good faith and fair dealing is a "limited and extraordinary legal remedy," "rarely invoked successfully," and requires alleging a "specific obligation implied in the contract, a breach of that obligation, and resulting damages," none of which Snap has adequately alleged. *Truinject Corp. v. Nestle Skin Health*, 2020 U.S. Dist. LEXIS 2541, *40 (Hall, Mag J.) (citations omitted).

Snap's breach of RAND claim (Count XIX) is for breach of contract. The basis of Snap's claim is the allegation that Dolby has failed to properly negotiate with Snap and offer Snap a license to its video coding patents on RAND terms. Snap alleges Dolby entered a RAND commitment with the ITU whereby Dolby was "prepared to grant licenses for implementations of the H.264 and H.265 Standards to any patent claims essential to the H.264 or H.265 Standard on reasonable and non-discriminatory (RAND) terms and conditions." Countercls. ¶¶ 51–52 (quoting Amend. Compl. ¶ 44). Snap alleges Dolby breached its express, written "RAND commitments" by failing to offer Snap a license on "RAND terms and conditions" to patents "allegedly covering video coding" related to H.264, H.265 and AV1. *Id.* ¶¶ 189–90.

Snap's good faith and fair dealing counterclaim (Count XX) involves an alleged implied covenant arising from Dolby's same "contractual commitments to the ITU." Countercls. ¶ 199. This is not a viable legal theory. If a matter is "specifically covered by the written contract between the parties," then "[t]here can be no implied covenant." *USX*, 988 F.2d at 438 (citation omitted).

-17-

Count XX fails because the alleged breach of an implied covenant is based on the same alleged conduct that underlies a breach of contract claim. The basis of Count XX is Snap's allegation that Dolby has not offered Snap a license on RAND terms consistent with Dolby's alleged "RAND obligations" and "contractual commitments." Countercls. ¶¶ 199 (referring to "express or implied contractual commitments to abide by the ITU's Patent Policy and Guidelines"), 204 (Dolby allegedly breached by "refusing to offer Snap a license on RAND terms"). This is the same alleged conduct underlying Snap's breach of contract claim (Count XIX). Where, as here, an implied covenant claim "does nothing more than duplicate the conduct alleged in the breach of contract claim, it must be dismissed." *Zinetti v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 409725, at *10 (D. Del. Jan. 24, 2020); *Rheault v. Halma Holdings Inc.*, 2023 WL 8005318, at *13 (D. Del. Nov. 7, 2023) (dismissing an "impermissibly duplicative" implied covenant claim).

### D.    Snap's Noninfringement and Invalidity Counterclaims Lack Sufficient Factual Support

To survive a motion to dismiss, Snap is required to make "plausible" allegations. *Iqbal*, 556 U.S. at 678. A plausible allegation must do more than "recit[e] the claim elements and merely conclud[e] that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Courts routinely dismiss counterclaims that lack sufficient factual allegations. *See, e.g.*, *Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, 2017 WL 239326, at *6 (D. Del. Jan. 19, 2017) (dismissing noninfringement counterclaim where counterclaim "contain[ed] no facts of any kind, let alone sufficient facts to make out a plausible claim"); *Alexander v. BMW of N. Am. LLC*, 2023 WL 6066563, at *2 (D. Del. Sept. 18, 2023) (same). Snap's noninfringement and invalidity Counterclaims (Counts I through XVIII) are conclusory and unsupported by factual allegations and should be dismissed.

#### 1.    Snap's noninfringement Counterclaims lack sufficient factual support.

-18-

Snap's noninfringement Counterclaims (Counts I, III, V, VII, IX, XI, XIII, XV, and XVII) include the threadbare allegation that "Snap's Accused Services do not practice any claim" of the Asserted Patents. Countercls. ¶¶ 62, 76, 90, 104, 118, 132, 146, 160, 175. Snap argues that it "does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim" of the Asserted Patents. This is just the statutory language from Section 271, not a factual basis for a declaratory judgment of noninfringement. *See* 35 U.S.C. § 271(a). Mere recitation of the statutory language does not create a plausible claim. *See Bot M8*, 4 F.4th at 1355.

Snap's sole arguably specific allegation is that the Asserted Patents are allegedly unenforceable due to waiver. *See, e.g.*, Countercls. ¶¶ 63, 77, 91, 105, 119, 133, 147, 161, 176. However, waiver is an affirmative defense. Fed. R. Civ. P. 8(c)(1). An affirmative defense is one that negates liability without contesting the underlying claim (here, infringement). *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015) (determining that the affirmative defense of invalidity "is not a defense to infringement, it is a defense to liability"). As such, waiver cannot be the basis of a noninfringement counterclaim. *Id*. Again, Snap must allege facts sufficient to make out a plausible case that Snap does not infringe the Asserted Patents—that is, that Snap's accused services do not meet each limitation of the asserted claims. *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("If even one limitation is missing or not met as claimed, there is no literal infringement."). Snap has not done so. Thus, this Court should dismiss Snap's Counterclaims Counts I, III, V, VII, IX, XI, XIII, XV, and XVII.

### 2.      Snap's invalidity Counterclaims lack sufficient factual support.

Snap's invalidity Counterclaims allege that the Asserted Patents "are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112." Countercls. ¶¶ 67, 81, 95, 109, 123, 137, 151, 166, 180. Snap's invalidity Counterclaims fail to include "at least enough 'supporting factual allegations' to render

-19-

the claims plausible." *See Idenix Pharms., Inc. v. Gilead Scis., Inc.*, 2014 WL 4222902, at *6 (D. Del. Aug. 25, 2014) (citation omitted). Snap's mere legal conclusions lack sufficient support.

Snap's § 101 assertion for each Asserted Patent is a single sentence: "The claims of the [] Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C § 101, including abstract ideas implemented on generic computer components without an inventive concept." Countercls. ¶¶ 69, 83, 97, 111, 125, 139, 153, 168, 182. This is just a recitation of the holding from *Alice. Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 212 (2014). Snap's invalidity claims under §§ 102 and 103 fare no better. Snap's allegations occupy a single sentence that the claims "are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s)." Countercls. ¶ 70. These conclusory allegations do not pass the plausibility standard and should be dismissed.

Snap's invalidity assertions under § 112 also fail. Snap repeats a single sentence that each Asserted Patent "fail[s] to satisfy the requirements of written description, enablement, and definiteness," Countercls. ¶¶ 71, 85, 99, 113, 127, 141, 155, 170, 184. Snap does not allege any facts supporting those assertions. These are exactly the "threadbare recitals" that do not pass muster under *Twombly* and *Iqbal. See Iqbal*, 556 U.S. at 678. For these reasons, Snap's Counterclaims Counts II, IV, VI, VIII, X, XII, XIV, XVI, and XVIII should be dismissed.

## V.    CONCLUSION

For the above reasons, Dolby requests that the Court (a) dismiss–in–part Snap's Counts XIX and XX as they relate to the AV1 Specification; (b) dismiss Count XX as improperly duplicative of Count XIX; (c) dismiss Count XXI for failure to join required parties, because it is an improper counterclaim, and for failure to state a plausible claim for relief; and (d) dismiss Snap's noninfringement and invalidity Counterclaims (Counts I through XVIII) for failure to state a plausible claim for relief.

-21-

Dated: August 10, 2026.

Of Counsel:                                              Respectfully submitted,

**McKOOL SMITH P.C.**                                    **FARNAN LLP**

Kevin Schubert                                           */s/ Brian E. Farnan*
kschubert@mckoolsmith.com                                Brian E. Farnan (Bar No. 4089)
Robert Burns                                             Michael J. Farnan (Bar No. 5165)
rburns@mckoolsmith.com                                   919 North Market Street, 12th Floor
McKool Smith P.C.                                        Wilmington, DE 19801
1301 6th Ave, 32nd Floor                                 Phone: (302) 777-0300
New York, NY 10019                                       bfarnan@farnanlaw.com
                                                         mfarnan@farnanlaw.com
Warren Lipschitz
wlipschitz@mckoolsmith.com                               ***Attorneys for Plaintiff***
Greg Saltz
gsaltz@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court
Dallas, TX 75201

Mitch Verboncoeur
mverboncoeur@mckoolsmith.com
McKool Smith P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701

Christopher McNett
cmcnett@mckoolsmith.com
McKool Smith P.C.
1717 K Street, NW, Suite 1000
Washington, DC 20006