# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

DOLBY VIDEO COMPRESSION, LLC, *et. al.*

Plaintiff,

vs.

SNAP INC.,

Defendant,

Civil Action No. 26-317 (JLH)

SNAP INC.,

Counterclaim-Plaintiff,

vs.

DOLBY VIDEO COMPRESSION, LLC,
DOLBY LABORATORIES, INC., AND
ACCESS ADVANCE LLC,

Counterclaim-Defendants,

## COUNTERCLAIM-DEFENDANT ACCESS ADVANCE LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS SNAP INC.'S <u>COUNTERCLAIMS</u>

Dated: August 10, 2026

Kevin Schubert
kschubert@mckoolsmith.com
Robert Burns
rburns@mckoolsmith.com
McKool Smith P.C.
1301 6th Ave, 32nd Floor
New York, NY 10019

Warren Lipschitz
wlipschitz@mckoolsmith.com
Greg Saltz
gsaltz@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court
Dallas, TX 75201

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
Phone: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

Mitch Verboncoeur
mverboncoeur@mckoolsmith.com
McKool Smith P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND...................................................................................2

III.   LEGAL STANDARD ............................................................................................4

IV.   ARGUMENT.........................................................................................................5

       A.     Snap's Count XXI against Access Advance Fails Under Rules 12(b)(7), 12(b)(1), and 12(b)(6) ................................................................................................. 5

              1.    Snap's Express Waiver Counterclaim Fails for Failure to Join Under Rule 12(b)(7)......................................................................... 6

              2.    Snap's Express Waiver Counterclaim Fails Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction and Under Rule 12(b)(6) for Failure to State a Claim...................................................................... 7

       B.     Snap's Counts XIX and XX Against Access Advance Fail Under Rules 12(b)(6) and 12(b)(1) ................................................................................................ 9

              1.    Snap's Counts XIX and XX Against Access Advance Fail Under Rule 12(b)(6) for Failure to State a Claim.................................................... 9

              2.    Snap's Counts XIX and XX  Against Access Advance Lack Subject Matter Jurisdiction under Rule 12(b)(1) ........................................... 16

       C.     Under Third Circuit Precedent, Snap's Claims Against Access Advance Are Duplicative and Conclusory................................................................................ 19

V.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bell Inc. v. Fed'n of Tel. Workers of Pennsylvania*,
  736 F.2d 879 (3d Cir. 1984)..................................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................5

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007)..................................................................................................5

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*,
  181 F.3d 435 (3d Cir. 1999)................................................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................................5

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340 (Fed. Cir. 2007).......................................................................................8, 17

*Dow Chem. Canada Inc. v. HRD Corp.*,
  656 F. Supp. 2d 427 (D. Del. 2009)......................................................................................9

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols. L.L.C.*,
  248 F. Supp. 3d 570 (D. Del. 2017)....................................................................................17

*Erie Telecommunications, Inc. v. City of Erie, Pa.*,
  853 F.2d 1084 (3d Cir. 1988)................................................................................................9

*Genentech, Inc. v. Amgen Inc.*,
  310 F. Supp. 3d 467 (D. Del. 2018).......................................................................................5

*Haier Am. Trading, LLC v. Samsung Elecs., Co.*,
  2018 WL 4288617 (N.D.N.Y. Sept. 7, 2018).......................................................................11

*In re Indus. Print Techs.*,
  2015 U.S. Dist. LEXIS 137238 (N.D. Tex. Oct. 7, 2015)......................................................18

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
  11 F.3d 399 (3d Cir. 1993)....................................................................................................6

*Johnson & Johnson v. Coopervision, Inc.*,
  720 F. Supp. 1116 (D. Del. 1989).....................................................................................6, 7

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007).................................................................................5, 7

*Microsoft Corp. v. Motorola, Inc.*,
    2011 WL 11480223 (W.D. Wash. June 1, 2011).....................................................8

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012) .................................................................................11

*Miller v. Trimont Glob. Real Est. Advisors LLC*,
    587 F. Supp. 3d 170 (D. Del. 2022)........................................................................14

*Milton Roy Co. v. Bausch & Lomb Inc.*,
    418 F. Supp. 975 (D. Del. 1976)..............................................................................4

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022)................................................................................................8, 9

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007)............................................................................8, 14

*MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc*
    2015 WL 6685523 (S.D.N.Y. Oct. 29, 2015) ...........................................................6

*Muskrat v. United States*,
    219 U.S. 346 (1911).................................................................................................7

*Norman IP Holdings, LLC v. Lexmark Int'l*,
    2014 U.S. Dist. LEXIS 191720 (E.D. Tex. Feb. 28, 2014) .....................................11

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
    52 F.3d 1026 (Fed. Cir. 1995).................................................................................8

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
    117 F. Supp. 3d 613 (D. Del. 2015)......................................................................9, 13

*Rheault v. Halma Holdings Inc.*,
    2023 WL 8005318 (D. Del. Nov. 7, 2023) ..............................................................20

*Roku v. Access Advance*,
    24-cv-13217, Dkt. No. 52 (D. Mass. July 22, 2025)..................................................7

*Sanyo Elec. Co., Ltd v. Intel Corp.*,
    2019 WL 1650067 (D. Del. Apr. 17, 2019).........................................................8, 17

*St. Thomas--St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*,
    218 F.3d 232 (3d Cir. 2000)................................................................................5, 17

*Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*,
  2023 WL 5554644 (3d Cir. Aug. 29, 2023)................................................................14

*Truinject Corp. v. Nestle Skin Health, S.A.*,
  2020 U.S. Dist. LEXIS 2541 (D. Del. Jan. 7, 2020) (Hall, Mag. J.) ................................15, 20

*USX Corp. v. Prime Leasing Inc.*,
  988 F.2d 433 (3d Cir. 1993).............................................................................19, 20

*Voda v. Cordis Corp.*,
  476 F.3d 887 (Fed. Cir. 2007)..............................................................................7

*Warth v. Seldin*,
  422 U.S. 490 (1975)......................................................................................17

*Zinetti v. Deutsche Bank Nat'l Tr. Co.*,
  2020 WL 409725 (D. Del. Jan. 24, 2020)...................................................................20

**Statutes**

28 U.S.C. §§ 2201...........................................................................................4

28 U.S.C. §§ 2202...........................................................................................4

Del. Code Ann. tit. 8, § 203 ...............................................................................16

**Other Authorities**

Restatement (Second) of Agency § 320, Comment A (1958) ....................................................15

Rule 12(b)(1)....................................................................................... *passim*

Rule 12(b)(6)....................................................................................... *passim*

Rule 12(b)(7).......................................................................................1, 4, 5, 6, 19

Rule 19 ...............................................................................................6, 7

iv

## I.   INTRODUCTION

This is a patent infringement case between Dolby Video Compression, LLC and Dolby International AB (collectively, "Dolby") and Snap Inc. ("Snap"). Dolby accuses Snap of infringing its patents, patents that Dolby owns and has the exclusive right to assert. Snap disputes Dolby's allegations and contends the asserted patents are invalid. Dolby, an owner of standard-essential patent claims, and Snap, an accused infringer, are parties with a dispute involving straightforwardly adverse legal interests. Access Advance LLC ("Access Advance"), by contrast, is a patent pool administrator that provides licensing options for patent owners and technology implementers. Access Advance does not own, and cannot enforce, the patents-in-suit or any patents. Snap's counterclaims against Access Advance are an attempt to entangle Access Advance in a dispute properly between Dolby and Snap. This Court should not allow Snap to do so.

Snap's express waiver counterclaim Count XXI seeks a declaration that "[a]ll claims of all patents that are licensed through Access Advance" are unenforceable against Snap. This claim is untenable under Rule 12(b)(7) for failure to join dozens of required parties. Many companies that are not parties to this litigation participate in Access Advance licensing pools. If Snap wants to litigate the unenforceability of *all* claims of *all* patents licensed through Access Advance, scores of additional patent owners must be joined—at least 43 more if Count XXI is limited to the Video Distribution Patent Pool ("VDP Pool"). Even putting aside the impermissibly broad declaration Snap seeks and the joinder issue, Snap's express waiver claim against Access Advance fails under Rules 12(b)(6) and 12(b)(1). For there to be a dispute over whether a party waived a legal right, a party must possess a right. Here, the right in question is patent enforcement. But Access Advance does not own patents or have rights to enforce patents. Snap does not and cannot allege otherwise.

Snap's counterclaims Counts XIX and XX likewise fail. Each alleges that Snap is a third-party beneficiary to a contract between Dolby and the International Telecommunication Union

1

("ITU"), a standard-setting organization responsible for the H.264 and H.265 video coding standards. Snap alleges Dolby breached that contract (Count XIX) or otherwise failed to comply with its contractual obligations to negotiate in good faith and fair dealing (Count XX). Snap seeks a declaration that Dolby has failed to comply with its obligations, a declaration that Dolby's patents are unenforceable as a result, and a declaration that Dolby is obligated to offer Snap a license on reasonable and non-discriminatory terms (which Snap alleges Dolby has not yet done). The alleged controversy, and the relief Snap seeks, involves Dolby and Dolby's patents, not Access Advance.

Counts XIX and XX against Access Advance fail under Rules 12(b)(6) and 12(b)(1). Snap fails to state a claim against Access Advance under Rule 12(b)(6) because Snap does not allege any relevant contract to which Access Advance is a party. Rather, Snap only alleges a contract to which Dolby is a contracting party. Moreover, Snap's allegations as to the AV1 Specification fail to allege any relevant contract at all. Counts XIX and XX against Access Advance fail under Rule 12(b)(1) for lack of subject matter jurisdiction. There is no actual controversy between Snap and Access Advance justifying Article III jurisdiction. Access Advance is not a party to Dolby's ITU commitments, and Access Advance does not own or have a legal interest in the asserted patents.

Finally, Count XX, an implied covenant claim, is improperly duplicative of Count XIX, a breach of contract claim, under Third Circuit precedent.

This Court should thus dismiss Counts XIX, XX, and XXI against Access Advance.

## II.    FACTUAL BACKGROUND

Dolby filed this litigation against Snap in March 2026, alleging patent infringement. D.I. 1. Snap answered Dolby's Complaint and brought counterclaims against Dolby and against Access Advance as a Counterclaim Defendant. These counterclaims are for (1) "declaratory judgment of breach of RAND obligations" (Count XIX), (2) "breach of duty of good faith and fair dealing"

(Count XX), and "unenforceability due to express waiver" (Count XXI).[1] D.I. 25 (hereafter, "Countercls.") ¶¶ 187–211.

Snap alleges Access Advance is liable as an administrator of the VDP Pool that allegedly "administer[s] licensing on [Dolby's] behalf." *Id*. ¶¶ 18, 36, 59, 196. Snap alleges that Dolby "retains ownership of its patents and the economic and strategic interests in their monetization," and Access Advance "serves as the centralized vehicle through which licensing terms are presented and enforcement positions are communicated to the market." *Id*. ¶ 36. Snap alleges that a March 2018 statement by HEVC Advance (the administrator, now Access Advance), who does not own patents, on behalf of HEVC Advance (the patent pool) should render "all claims of all patents licensed through Access Advance" unenforceable—including patents owned by dozens of non-Dolby entities. *Id*. ¶¶ 22, 211.

Counts XIX and XX are based on Dolby's alleged commitments to the ITU. *Id*. ¶¶ 51–52, 57–59, 195–97, 199–200. The ITU is a specialized agency of the United Nations which develops video coding standards, including the H.264/AVC and H.265/HEVC video coding standards. *Id*. ¶ 51. The ITU created and maintains several key documents related to ITU participants' obligations, including the (1) Common Patent Policy, (2) Guidelines, and (3) Patent Declaration forms. *Id*. The Patent Declaration forms provide different types of licensing commitments. *Id*. Dolby, or the original patent owners, committed that they were prepared to license the relevant H.264/AVC and H.265/HEVC standard essential patent claims on reasonable and non-discriminatory ("RAND") terms under the ITU's Common Patent Policy. *Id*. ¶ 52. Prior to this litigation, Access Advance made Snap an offer to join the VDP Pool as a licensee. *Id*. ¶ 54. Snap alleges that the VDP Pool offer, which "includes not only certain Asserted Patents but additional

---

[1] Snap also brings counterclaims against Dolby alone, which are not addressed here.

patents owned by other licensors," would require "payments that far exceed a RAND license rate to any of the Asserted Patents." *Id.* ¶ 54.

Dolby's Complaint accuses Snap of infringing the Asserted Patents through encoding and decoding H.264, H.265, and AV1-compliant video formats. D.I. 21 (hereafter, "Amend. Compl.") ¶ 24. Snap raises two theories for why Dolby has allegedly violated its commitments to the ITU. For H.264/AVC and H.265/HEVC, Snap alleges that "Dolby's conduct, directly and (for patents allegedly essential to HEVC) through its licensing agent Access Advance, violates its obligations under at least the ITU Common Patent Policy and Guidelines." Countercls. ¶ 57. For AV1, Snap alleges that "Dolby is further prohibited, directly or through its licensing agent Access Advance, from refusing to license patents allegedly essential to the AV1 standard to Snap on RAND terms and conditions to the extent that Dolby and/or Access Advance have included licenses to such patents on RAND terms and conditions as part of any licenses to third parties for patents essential to the HEVC standard." *Id.* ¶ 58. As for Access Advance, Snap's theory appears to be that Dolby's contractual commitments allegedly bind Access Advance as an "agent" or because Access Advance is "part-owned by Dolby." *Id.* ¶ 59.

### III.    LEGAL STANDARD

Snap brings its declaratory judgment Counterclaims against Access Advance under 28 U.S.C. §§ 2201 and 2202. Countercls. ¶ 8. Access Advance moves to dismiss Snap's Counterclaims for failure to state a claim and for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).

A motion to dismiss for failure to state a claim is brought under Rule 12(b)(6). Counterclaims are held to the same pleadings standards as affirmative claims. *Milton Roy Co. v. Bausch & Lomb Inc.*, 418 F. Supp. 975, 978 (D. Del. 1976).  The Court accepts "all well-pleaded allegations in the complaint as true, and view[s] them in the light most favorable to the plaintiff."

4

*Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citation omitted). The facts pled "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must dismiss any claim that fails as a matter of law or does not contain sufficient factual matter to state a claim to relief that is plausible on its face. *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A declaratory judgment can issue "only when the constitutional standing requirements of a 'case' or 'controversy' are met." *St. Thomas--St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000). In a declaratory judgment action, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). "The party asserting subject matter jurisdiction has the burden of proving its existence." *Genentech, Inc. v. Amgen Inc.*, 310 F. Supp. 3d 467, 469 (D. Del. 2018).

## IV.    ARGUMENT

### A.    Snap's Count XXI against Access Advance Fails Under Rules 12(b)(7), 12(b)(1), and 12(b)(6)

Snap's Count XXI asserts a counterclaim for "unenforceability due to express waiver" and seeks a declaration that "[a]ll claims of all patents that are licensed through Access Advance, including all of Dolby's patents that are licensed through Access Advance, are unenforceable against Snap's non-physical HEVC content distribution" because (1) Access Advance "as Dolby's authorized licensing agent, irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming," and (2) because Dolby "ratified that waiver through years of acquiescence and acceptance of benefits." Countercls. ¶¶ 207, 209–10.

5

This claim fails under both Rules 12(b)(7) and 12(b)(6).

### 1.    Snap's Express Waiver Counterclaim Fails for Failure to Join Under Rule 12(b)(7)

Rule 12(b)(7) provides for dismissal for failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). Snap's waiver counterclaim clearly violates Rule 19 by raising allegations against "[a]ll claims of all patents that are licensed through Access Advance." Countercls. ¶ 209. Under Rule 19, a party "must be joined" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Here, the Court cannot accord complete relief without joinder of non-parties. Access Advance does not own patents but instead administers licensing pools. Access Advance's VDP Pool alone licenses patents on behalf of 45 entities, only two of which are Dolby entities. Snap's allegations against "[a]ll claims of all patents" threatens the rights of all licensors who license through Access Advance without allowing these licensors to protect their own unique interests. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993). There is a substantial risk that, if bound by this Court's declaratory judgment, the licensors' ability to protect their interest in their patents—including their ability to assert and collect royalties for their patents—would be "seriously impaired." *Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1122 (D. Del. 1989).  For example, in *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, the court ordered a patent pool plaintiff to show cause why its unjust enrichment claim should not be dismissed for failure to join licensors as required parties because "the patent holders presumably share an interest in seeing their patents adjudicated" as the claim at issue "would necessarily require." 2015 WL 6685523, at *5 (S.D.N.Y. Oct. 29, 2015). Here, any adjudication of waiver or unenforceability beyond Dolby's patents would require joinder of additional licensors.

A party also "must be joined" if "disposing of the action" in that party's absence may

6

"impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurrent double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). That is the case here. Snap alleges that "[a]ll claims of all patents that are licensed through Access Advance . . . are unenforceable." Countercls. ¶ 209. As the other licensors are not joined to this litigation, these other licensors might not be bound by the outcome and would remain "would remain free to sue" Snap in another forum for infringement. *Johnson & Johnson*, 720 F. Supp. at 1122.

Moreover, Snap's waiver counterclaim is impermissibly overbroad. Access Advance is a licensing administrator for over 40,000 patents across scores of entities. Most patents are foreign patents, over which this Court should decline to exercise jurisdiction. *See Voda v. Cordis Corp.*, 476 F.3d 887, 901 (Fed. Cir. 2007); *Roku v. Access Advance*, 24-cv-13217, Dkt. No. 52 (D. Mass. July 22, 2025) ("The court lacks jurisdiction to determine the FRAND rate as . . . [t]he U.S. patents constitute only a fraction of the larger portfolio which includes hundreds of foreign patents.").

### 2. Snap's Express Waiver Counterclaim Fails Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction and Under Rule 12(b)(6) for Failure to State a Claim

Beyond Snap's failure to join necessary parties, Snap does not and cannot plead a tenable "case or controversy" against Access Advance. Under Article III, the exercise of the judicial power extends only to "cases" and "controversies." *Muskrat v. United States*, 219 U.S. 346, 356 (1911). In a declaratory judgment action, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). To determine if there is an "actual controversy," there must be "an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the

7

declaratory plaintiff has preempted it." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) (citation omitted). Courts have framed this as a standing issue and declined jurisdiction when the declaratory judgment defendant would lack standing had it attempted to bring suit on the subject matter at issue. *See Sanyo Elec. Co., Ltd v. Intel Corp.*, 2019 WL 1650067, at *10 (D. Del. Apr. 17, 2019) ("Just as Sanyo lacks standing to bring an infringement suit against Intel, so too does Intel lack standing to seek a declaratory judgment against Sanyo.").

Snap's Count XXI seeks a finding that patents are unenforceable against Snap, but Access Advance does not own patents and cannot enforce any patents against Snap or even join a patent infringement claim against Snap. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339–40 (Fed. Cir. 2007) ("[A] patentee who holds all the exclusionary rights and suffers constitutional injury in fact from infringement is one entitled to sue for infringement in its own name."); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995) ("A holder of such a nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee."). Access Advance would lack standing to assert patents against Snap. There is no "underlying legal cause of action" that Access Advance "could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it." *Benitec*, 495 F.3d at 1344. This Court should dismiss Count XXI against Access Advance under Rule 12(b)(1).

Moreover, Snap's express waiver claim against Access Advance fails under Rule 12(b)(6). As a threshold matter, waiver is an affirmative defense, not a proper counterclaim. *See Microsoft Corp. v. Motorola, Inc.*, 2011 WL 11480223, at *4 (W.D. Wash. June 1, 2011) ("[T]he Court is unaware of[] any legal authority allowing waiver as a cause of action."). However, even if this Court permits waiver as a counterclaim, such a claim cannot stand against Access Advance. Waiver is "the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance,*

8

*Inc.*, 596 U.S. 411, 417 (2022) (citation omitted). An essential element of a waiver defense (or counterclaim, as Snap has pled it) is a "known right." *Id*. Snap cannot satisfy this element as to Access Advance because, as explained, Access Advance does not own patents and cannot enforce any patents against Snap. Put simply, Access Advance cannot waive rights it does not possess. *Id*. ("To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right."); *Erie Telecommunications, Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1096 (3d Cir. 1988) (determining that rights may be waived where "the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition").

**B.      Snap's Counts XIX and XX Against Access Advance Fail Under Rules 12(b)(6) and 12(b)(1)**

Snap brings two counterclaims related to Dolby's ITU obligations: breach of RAND (Count XIX) and breach of the duty of good faith and fair dealing (Count XX). Both Counterclaims are based on Dolby's alleged contractual commitments to the ITU. Countercls. ¶¶ 188, 199. Count XIX involves an alleged express contractual obligation. Count XX involves an alleged implied contractual obligation. Both counts fail under Rules 12(b)(6) and 12(b)(1).

**1.      Snap's Counts XIX and XX Against Access Advance Fail Under Rule 12(b)(6) for Failure to State a Claim**

To survive a motion to dismiss for failure to state a breach of contract claim, Snap must first demonstrate "the existence of the contract, whether express or implied." *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015) (citation omitted). For "implied" commitments, Snap must show that the parties "clearly would have [] included" the term, "had the parties negotiated with respect to them." *Dow Chem. Canada Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 445 (D. Del. 2009) (citation omitted). Next, regardless of whether the contract is express or implied, Snap must show "the breach of an obligation imposed by that contract." *Phunware*, 117 F. Supp. at 625. Finally, Snap must demonstrate "the resultant damage to [Snap]." *Id*.

9

Counts XIX and XX against Access Advance fail because Snap fails to identify a contractual obligation belonging to Access Advance (not Dolby) that Access Advance has allegedly breached. Snap's position appears to be that Counts XIX and XX against Access Advance should be heard notwithstanding this deficiency because Access Advance is allegedly either a "licensing agent" or "an affiliate that is part-owned by Dolby." Countercls. ¶ 59. However, Snap's "licensing agent" and "affiliate that is part-owned" theories are legally nonviable and cannot cure Snap's underlying failure to state a claim.

As for Snap's "licensing agent" theory, Snap provides no basis to ignore the basic principle of contract law that only a party to a contract may be liable for breach and the basic principle of agency law that an action for breach of contract lies only against a disclosed principal (Dolby), not an alleged agent (Access Advance) acting within the scope of its authority.

As for Snap's "affiliate that is part-owned" theory, Snap does not (because it cannot) sufficiently plead an affiliate relationship. Mere partial ownership, as Snap alleges, does not by itself establish an affiliate relationship. Rather, whether a company is an "affiliate" is a question of control—a topic on which Snap provides no allegations. Even assuming away this fatal problem, Snap pleads no basis on which the Court can ignore the formal differences between Dolby (who owns the patents-in-suit) and Access Advance (who does not own and has no legal interest in the patents-in-suit or any Dolby patents).

### a. Snap fails to allege a valid contract—express or implied—that Access Advance breached.

Snap's contractual claims against Access Advance rely on Dolby's RAND commitment to the ITU. Snap does not and cannot point to a contract, nor an attendant express or implied contractual obligation, that binds Access Advance. Because Snap does not plausibly allege that Access Advance has any relevant contractual obligations, its Counterclaims against Access

10

Advance must be dismissed.

Snap's Counterclaims against Access Advance are based on Dolby's RAND commitment to the ITU. *See* Countercls. ¶ 188 ("Dolby and/or its predecessors-in-interest entered into express or implied contractual commitments to the ITU relating to the licensing of patents essential to the AVC and HEVC standards on RAND terms. These commitments are valid, enforceable, and binding upon Dolby."). Access Advance does not have ITU commitments relating to the Asserted Patents (or any other patents). As Snap explains, Access Advance is a "licensing administrator company" that does not own or have a legal interest in Dolby's patents. Countercls. ¶¶ 18, 236 (stating that Dolby "retains ownership of its patents and the economic and strategic interests in their monetization," while Access Advance "serves as the centralized vehicle through which licensing terms are presented and enforcement positions are communicated to the market").

Snap cannot plausibly allege a breach of contract without a contract binding Access Advance. That is, Access Advance cannot breach a RAND commitment to the ITU if it does not have a RAND commitment in the first place. Access Advance cannot breach a duty of good faith and fair dealing without first entering a contract that explicitly or implicitly has such a duty. Courts routinely dismiss claims alleging a breach of F/RAND[2] obligations if those claims do not identify the specific agreement conferring a RAND obligation. *See Haier Am. Trading, LLC v. Samsung Elecs., Co.*, 2018 WL 4288617, at \*15 (N.D.N.Y. Sept. 7, 2018) (dismissing a breach of FRAND claim when the allegations did not "provide sufficient detail to make plausible that the Defendants and the . . . [standards-setting organization] even entered into a contract"); *Norman IP Holdings, LLC v. Lexmark Int'l*, 2014 U.S. Dist. LEXIS 191720 (E.D. Tex. Feb. 28, 2014) (dismissing

---

[2] "Instead of RAND, some courts and commentators use the alternative, legally equivalent abbreviation 'FRAND.'" *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 877 (9th Cir. 2012).

11

FRAND claims lacking a specific identification of any agreement that was purportedly breached).

Snap does not allege an agreement through which Access Advance made a RAND commitment.

Snap's Counts XIX and XX fare even worse with respect to AV1. Dolby's ITU RAND commitment is that it is "prepared to grant licenses *for implementations of the H.264 and H.265 Standards* to any patent claims essential to the H.264 and H.265 Standard on reasonable and non-discriminatory terms and conditions as set forth in the ITU Common Patent Policy." Countercls. ¶ 52 (quoting D.I. 1 ¶ 44) (emphasis added). Dolby's ITU RAND commitment (let alone any hypothetical commitment on Access Advance's part) does not apply to implementations of the AV1 Specification, which arose separate and apart from the standard-setting activities of the ITU. Indeed, Snap does not name any standards-setting organization responsible for creating AV1. Nor does Snap allege that Dolby, Dolby's predecessors in interest in the Asserted Patents, or Access Advance had any role in developing AV1. AV1 was developed through a non-public process by a private consortium of companies called the Alliance for Open Media.[3] Snap cannot plausibly (or credibly) claim that Dolby's ITU RAND commitment to license implementations of the H.264 and H.265 Standards somehow extends to implementations of the AV1 specification, which then somehow extends to Access Advance. And Snap fails to provide any factual support for these sorts of allegations.

Based on Dolby's RAND commitment relating to implementations of the H.264 and H.265 Standards, Snap tries to invent from whole cloth a backdoor RAND obligation for implementations of the AV1 specification. Snap alleges that, through the VDP Pool, Access Advance has bundled H.264 and H.265 with AV1 (among other video coding specifications) and requested supra-RAND rates. Countercls. ¶¶ 35, 54. Snap further alleges that Dolby breached its ITU (re: H.264/265-

---

[3] *See* https://aomedia.org/specifications/av1/.

related) commitments by conditioning "any license to patents essential to the AVC or HEVC standard" on "supra-RAND royalties for patents allegedly necessary for video coding in the AV1 standard." Countercls. ¶ 190. But this allegation does not give rise to an obligation for Dolby (or Access Advance for that matter) to license implementations of the AV1 specification to Snap. At best, this allegation goes to whether Dolby (not Access Advance) breached its obligations with respect to licensing implementations of the H.264 and H.265 Standards, and whether it is appropriate for Dolby to, allegedly, condition a license for implementations of the H.264 and H.265 Standards on a license for implementations of the AV1 specification. This is a different question from the relief Snap seeks. *See* Countercls. ¶ 196 (seeking declaration that Dolby "has not offered Snap a license to Dolby's patents allegedly covering [AV1] video coding"). Counts XIX and XX should be dismissed as they relate to AV1 for these additional reasons.

> ### b.   Snap fails to plead damages based on Access Advance's alleged breach.

Finally, Snap has not pled any resultant damage based on Access Advance's alleged breach. For breach of RAND (Count XIX), Snap does not allege any damages. *See* Countercls. ¶ 187–197. For breach of the duty of good faith and fair dealing (Count XX), Snap claims that it has "incur[red] unnecessary costs and unwarranted harm in defending this litigation." Countercls. ¶¶ 205. Snap's grievance is again with Dolby and the cost to Snap to defend against a litigation filed by Dolby (not Access Advance). Damages are a required element for a breach of contract claim. *Phunware*, 117 F. Supp. 3d at 625 ("A breach of contract complaint may be dismissed where the plaintiffs' claims are 'not tied to any damages.'") (citation omitted). For this reason, too, Snap has failed to state a plausible claim against Access Advance.

> ### c.   Snap's "agent" and "affiliate" theories are legally insufficient to bind Access Advance to Dolby's ITU obligations.

Snap fails to state a viable claim against Access Advance because Access Advance is not

13

bound by Dolby's ITU obligations. It is a basic principle of contract law that only a party to a contract may be liable for breach.[4] *Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*, 2023 WL 5554644, at *3 (3d Cir. Aug. 29, 2023). ("Privity of contract must exist for a defendant to be liable for a breach. In other words, both parties must be parties to the contract."); *Miller v. Trimont Glob. Real Est. Advisors LLC*, 587 F. Supp. 3d 170, 194 n.157 (D. Del. 2022) (stating that the duty of good faith and fair dealing requires a "party" to a contract to refrain from arbitrary or unreasonable conduct); *see Microsoft*, 864 F. Supp. 2d at 1029 ("Motorola's declarations to the ITU create enforceable contracts between Motorola and the [ITU].").

Still, Snap alleges that Access Advance should be liable as Dolby's "licensing agent" or "affiliate that is part-owned by Dolby." Even accepting this framing, Snap's claims do not pass the *Twombly*/*Iqbal* plausibility standard and are not legally tenable under Rule 12(b)(6). Accordingly, Snap's Counterclaims against Access Advance must be dismissed.

### d.  Even if Access Advance is Dolby's "agent", the ITU commitment does not bind Access Advance.

Because Access Advance is not a party to Dolby's ITU commitment, Snap cannot sustain its contractual counterclaims. Snap attempts to circumvent this fatal defect by claiming that Access Advance "acted as Dolby's agent," through "implementing Dolby's licensing programs, communicating licensing positions to implementers, issuing licensing demands, and seeking royalties on Dolby's behalf."[5] Countercls. ¶ 192. Snap alleges that Access Advance "participated directly" in Dolby's failure to negotiate in good faith, and declaratory relief "must run" against

---

[4] Snap's Counterclaims do not identify a proposed governing law for Dolby's contractual obligations to the ITU. For the purposes of this motion, Access Advance relies upon general principles of contract law.

[5] While not central to the legal deficiencies of Snap's argument, Access Advance denies Snap's allegation that it is acting as Dolby's agent. Access Advance denies that it implements Dolby's licensing programs, communicates Dolby's licensing positions to implementers, issues Dolby's licensing demands, and seeks royalties on Dolby's behalf. *See* Countercls. ¶ 192.

Access Advance to prevent Dolby from avoiding its ITU commitment, Countercls. ¶¶ 194, 202.

Snap's arguments are unavailing. An action for breach of contract lies only against the principal, not the agent. It is well-established that an agent of a disclosed principal—even if that agent "negotiates and signs a contract for [its] principal"—does not "become a party to the contract" if it is acting within the scope of its authority. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999); *see also Truinject Corp. v. Nestle Skin Health*, *S.A.,* 2020 U.S. Dist. LEXIS 2541 at *33–34 (D. Del. Jan. 7, 2020) (Hall, Mag. J.). Snap does not allege Access Advance was acting outside the scope of its arrangement with Dolby when it made the VDP Pool offer. *See, e.g.*, Countercls. ¶ 36; *see also* Restatement (Second) of Agency § 320, Comment A (1958) ("An agent . . . may become liable, although not a party to [the contract], if he purports to make a contract which he is not authorized to make."). Snap's pleadings describe the arrangement between Access Advance and Dolby that gave rise to the VDP Pool offer Snap complains about, claiming that Dolby "designated Access Advance to administer licensing on its behalf." Countercls. ¶ 36; *see also id.* ¶ 54. In fact, Snap describes that Access Advance's actions "advance[d]" and "implemented" Dolby's strategic objectives. Countercls. ¶¶ 36, 59.

**e.      Even if Access Advance is Dolby's affiliate, the ITU commitment does not bind Access Advance.**

Snap makes one final, desperate bid to manufacture liability for Access Advance: by claiming that Access Advance is "an affiliate" of Dolby. Countercls. ¶ 7, 59. Snap alleges that Dolby's RAND commitment should apply to Access Advance because Access Advance is "an affiliate that is part-owned by Dolby." Snap does not plead adequate facts to support this claim, and, regardless, this claim defies legals principles regarding the corporate form.

Snap has not sufficiently pled an affiliate relationship between Dolby and Access Advance. Mere partial ownership does not necessarily establish an affiliate relationship. Rather, being an

15

"affiliate" involves the concept of control. Del. Code Ann. tit. 8, § 203 (West) (defining "affiliate" as "a person that . . . controls, or is controlled by, or is under common control with, another person."); *Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs.*, Inc., 892 A.2d 1073, 1077 (Del. 2006). Snap has not raised allegations sufficient to support that Access Advance is an "affiliate" of Dolby.

But even if Snap had sufficiently pled an affiliate relationship between Dolby and Access Advance, "[a] court may not disregard at will the formal differences between affiliated corporations." *Am. Bell Inc. v. Fed'n of Tel. Workers of Pennsylvania*, 736 F.2d 879, 886 (3d Cir. 1984). In some "specific, unusual circumstances," the Court can "pierce the corporate veil, although the requirements for doing so "demanding." *Id.* The Third Circuit has endorsed a list of factors that must be considered to pierce the corporate veil.[6] *Id*. Snap does not identify a single factor that would support the "specific, unusual circumstances" to pierce a hypothetical corporate veil between Dolby and Access Advance. Snap's conclusory allegation that Access Advance should be bound to Dolby's contractual commitments as an "affiliate" should be dismissed.

### 2. Snap's Counts XIX and XX  Against Access Advance Lack Subject Matter Jurisdiction under Rule 12(b)(1)

#### a. There is a lack of case or controversy between Snap and Access Advance

Snap's Counts XIX and XX are based on Dolby's ITU obligations for Dolby's patents. Countercls. ¶¶ 188, 199. Snap and Access Advance are not parties with adverse legal interests giving rise to a sufficiently immediate case or controversy. Therefore, this Court lacks subject

---

[6] *Am. Bell Inc.*, 736 F.2d at 886 (citing factors including "gross undercapitalization," "failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.") (citation omitted).

16

matter jurisdiction over Access Advance, and Counterclaims XIX and XX must be dismissed.

There must be an "actual controversy" between Access Advance and Snap; that is, "an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it." *Benitec*, 495 F.3d at 1344 (citation omitted). There is no such "actual controversy" here. Access Advance is not a party to Dolby's ITU commitment, and Access Advance does not own or have a legal interest in the Asserted Patents or any of Dolby's patents. *See* Countercls. ¶ 188. There is no immediacy here, as Access Advance could not have asserted a claim for patent infringement, a claim of breach of RAND, or breach of the duty of good faith and fair dealing against Snap. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols. L.L.C.*, 248 F. Supp. 3d 570, 576 (D. Del. 2017) (limiting recovery under a contract to signatories and intended beneficiaries).

Without this underlying cause of action, any adverse interest that Snap has against Access Advance "is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction." *Benitec*, 495 F.3d at 1344 (dismissing patent unenforceability counterclaim where counterclaim plaintiff did not carry its burden of showing counterclaim defendant had a viable patent infringement claim). Snap's claims against Access Advance must, therefore, be dismissed.

### b. Snap lacks standing to bring these claims against Access Advance

Courts have also evaluated the lack of subject-matter jurisdiction through the lens of standing. *See Sanyo Elec. Co., Ltd v. Intel Corp.*, 2019 WL 1650067, at *10 (D. Del. Apr. 17, 2019); *St. Thomas*, 218 F.3d at 240 ("[S]tanding requirements are satisfied when there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy

17

and reality to warrant the issuance of a declaratory judgment.") (citation omitted).

Here, Access Advance lacks standing to bring the inverse of either Counterclaim against Snap (or any claim of patent infringement for that matter). Access Advance is not a party to Dolby's ITU commitment, and Access Advance does not own or have a legal interest in the Asserted Patents or any of Dolby's patents. *See* Countercls. ¶ 89. *In re Indus. Print Techs.*, 2015 U.S. Dist. LEXIS 137238 at *7 (N.D. Tex. Oct. 7, 2015) ("Defendants have pled counterclaims only for declaratory judgements of non-infringement and invalidity of the asserted patents. Relief on these counterclaims does not depend on ARG, which has no legal interest in the asserted patents."). Therefore, Snap lacks standing.

Further, Snap cannot allege that declaratory judgment against Access Advance would confer any recovery benefits. Snap claims that "declaratory relief must run against Access Advance" to prevent Dolby from "circumventing its RAND commitments" and "this Court's judgment." Countercls. ¶ 194. But Snap fails to provide any reason that the proper parties to this dispute, Dolby and Snap, would not abide by any judgment of this Court or that this Court does not possess means to enforce such a judgment against Dolby or Snap to the extent they did not.

Any relief that Snap seeks from Access Advance can be obtained from Dolby. *In re Indus. Print Techs.*, 2015 U.S. Dist. LEXIS 137238 at *7 ("To the extent Defendants contend that 'complete relief' includes recovery of fees and costs incurred in this litigation, they have not shown that-if they were to prevail-IPT is so undercapitalized that it would be unable to satisfy any award of fees or costs."). Snap has other means of obtaining relevant information from Access Advance in this litigation. *Id.* (declining to add an entity as a party to the litigation, as "[t]he Federal Rules provide sufficient means for Defendants to obtain relevant discovery from ARG as a nonparty."). Accordingly, Snap lacks standing to bring these declaratory actions against Access Advance.

18

> **c.**  **If Snap's claims extend beyond Dolby's patents, they must be dismissed for failure to join required parties under Rule 12(b)(7).**

Snap's Counts XIX and XX against Access Advance overlap entirely with its claims against Dolby based on Dolby's patents. *See, e.g.*, Countercls. ¶ 195 ("Dolby, directly and through its licensing agent Access Advance, has not offered Snap a license to Dolby's alleged HEVC standard-essential patents on RAND terms and conditions."); ¶ 196 ("Dolby, directly and through its licensing agent Access Advance, has not offered Snap a license to Dolby's patents allegedly covering video coding in the AV1 standard on RAND terms and conditions."); ¶ 197 ("Snap seeks a judgment . . . that all claims of the Asserted Patents are unenforceable"). To the extent Snap argues, notwithstanding the scope of its pleadings, in response to this motion that its claims against Access Advance extend beyond Dolby's patents such that they are not duplicative of its claims against Dolby, Snap introduces an extreme impracticality that also warrants dismissal.

> **C.**  **Under Third Circuit Precedent, Snap's Claims Against Access Advance Are Duplicative and Conclusory**

This Court should dismiss Counts XIX and XX against Access Advance under Rules 12(b)(6) and 12(b)(1). If the Court disagrees, however, Access Advance moves to dismiss Snap's breach of duty of good faith and fair dealing counterclaim (Claim XX) on the additional ground that it is improperly duplicative of Snap's breach of RAND claim (Claim XIX) and conclusory.

The duty of good faith and fair dealing "involves an *implied* duty to bring about a condition or to exercise discretion in a reasonable way." *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438-439 (3d Cir. 1993) (cleaned up). "Implied covenants" are "necessarily mutually exclusive" with express contractual terms. *Id.* That is, Snap "cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants." *Id.* If a matter is "specifically covered by the written contract between the parties,"

then "[t]here can be no implied covenant." *Id.* (citation omitted). Further, as this Court has held, breach of the covenant of good faith and fair dealing is a "limited and extraordinary legal remedy," "rarely invoked successfully," and requires allegations of a "specific obligation implied in the contract, a breach of that obligation, and resulting damages," none of which has been shown. *Truinject*, 2020 U.S. Dist. LEXIS 2541, *40 (citations omitted).

In its breach of RAND claim, Snap alleges that Dolby entered a RAND commitment with the ITU. Countercls. ¶ 51. Snap alleges that Access Advance—as Dolby's alleged "agent"—facilitated Dolby's breach of its RAND commitments by "transmitting licensing demands, proposing licensing terms, and implementing licensing programs that demand supra-RAND royalties, attempt to impose unreasonable terms and conditions, and discriminate against Snap, including through the VDP Pool." Countercls. ¶¶ 193, 197.

Snap does not allege any express provision that binds Dolby (let alone Access Advance). Even so, Snap relies on the exact same conduct for its breach of the duty of good faith and fair dealing claim. Snap alleges that Access Advance "advanc[ed] licensing demands, propos[ed] non-RAND terms, and faciliat[ed] enforcement actions without first offering Snap a license on RAND terms." Countercls. ¶ 202. Further, Snap "does not indicate any way in which the factual bases for the two claims differ." *Rheault v. Halma Holdings Inc.*, 2023 WL 8005318, at *13 (D. Del. Nov. 7, 2023). Snap's claim for breach of the duty of good faith and fair dealing "does nothing more than duplicate the conduct alleged in the breach of contract claim" and should be dismissed. *Zinetti v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 409725, at *10 (D. Del. Jan. 24, 2020).

## V.    CONCLUSION

This Court should not allow Snap to improperly implicate Access Advance as a Counterclaim Defendant in this dispute. For the foregoing reasons, this Court should dismiss Snap's Counterclaims against Access Advance with prejudice.

Dated: August 10, 2026.

Of Counsel:                                          Respectfully submitted,

**McKOOL SMITH P.C.**                                **FARNAN LLP**

Kevin Schubert                                       */s/ Brian E. Farnan*
kschubert@mckoolsmith.com                            Brian E. Farnan (Bar No. 4089)
Robert Burns                                         Michael J. Farnan (Bar No. 5165)
rburns@mckoolsmith.com                               919 North Market Street, 12th Floor
McKool Smith P.C.                                    Wilmington, DE 19801
1301 6th Ave, 32nd Floor                             Phone: (302) 777-0300
New York, NY 10019                                   bfarnan@farnanlaw.com
                                                     mfarnan@farnanlaw.com
Warren Lipschitz
wlipschitz@mckoolsmith.com                           ***Attorneys for Plaintiff***
Greg Saltz
gsaltz@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court
Dallas, TX 75201                                     Christopher McNett
                                                     cmcnett@mckoolsmith.com
Mitch Verboncoeur                                    McKool Smith P.C.
mverboncoeur@mckoolsmith.com                         1717 K Street, NW, Suite 1000
McKool Smith P.C.                                    Washington, DC 20006
303 Colorado Street, Suite 2100
Austin, TX 78701

21