IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOLBY VIDEO COMPRESSION, LLC and DOLBY INTERNATIONAL AB,<br><br>Plaintiffs,<br><br>v.<br><br>SNAP INC.,<br><br>Defendant. | ) | C.A. No. 26-317 (JLH) |
| SNAP INC.<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>DOLBY VIDEO COMPRESSION, LLC, DOLBY LABORATORIES, INC., DOLBY INTERNATIONAL AB, AND ACCESS ADVANCE LLC,<br><br>Counterclaim-Defendants | ) | |

**DEFENDANT SNAP INC.'S ANSWER AND AMENDED COUNTERCLAIMS TO THE FIRST AMENDED COMPLAINT**

Defendant and Counterclaimant Snap Inc. ("Snap"), by and through its undersigned counsel, hereby answers and asserts the following Amended Counterclaims to the First Amended Complaint ("Complaint") (D.I. 21) and against Counterclaim-Defendants Dolby Video Compression LLC ("DVC"), Dolby International AB ("DIAB"), and Dolby Laboratories, Inc. (collectively, "Dolby") and Access Advance LLC ("Access Advance"), as follows. All allegations not expressly admitted are denied.

## NATURE OF THE ACTION[1]

1. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and therefore denies them.

2. Denied.

3. Denied.

## PARTIES

4. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint, and therefore denies them.

5. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint, and therefore denies them.

6. Snap admits that Plaintiffs' Complaint purports to allege infringement of the Asserted Patents, but denies that Snap has committed any act of infringement of any Asserted Patent, in this District or elsewhere.

7. Snap admits that it is a corporation organized under the laws of the State of Delaware.

8. Snap admits that it has places of business at 2772 Donald Douglas Loop N, Santa Monica, CA 90405 and 3000 31st Street, Santa Monica, CA 90405. Snap denies the remaining allegations in Paragraph 8 of the Complaint.

## JURISDICTION AND VENUE

9. Paragraph 9 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap admits that this Court has subject matter jurisdiction over patent

[1] For ease of reference, Snap has reproduced the headings in the Complaint in this answer. To the extent that the headings in the Complaint contain factual or legal allegations, Snap denies such allegations.

infringement claims under 28 U.S.C. §§ 1331 and 1338, but denies that Snap has committed any acts of infringement. Snap denies any remaining allegations in Paragraph 9 of the Complaint.

10. Paragraph 10 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap denies the allegations in Paragraph 10 of the Complaint, including any allegation that Dolby has complied with its reasonable and nondiscriminatory ("RAND")[2] commitments.

11. Paragraph 11 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap does not contest that this Court has personal jurisdiction over Snap for purposes of this action only. Snap further admits that it appointed Corporation Service Company as its registered agent. Snap denies the remaining allegations of Paragraph 11 of the Complaint.

12. Paragraph 12 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap does not contest that this Court has personal jurisdiction over Snap for purposes of this action only. Snap denies the remaining allegations of Paragraph 12 of the Complaint.

13. Denied.

14. Paragraph 14 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap admits that it conducts business in Delaware. Snap denies the remaining allegations in Paragraph 14 of the Complaint.

15. Denied.

16. Denied.

---

[2] Snap uses the term "RAND" throughout its Answer and Defenses interchangeably with the term "FRAND" for Fair, Reasonable, and Nondiscriminatory.

17. Paragraph 17 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap does not contest that venue is proper in this judicial district based on Snap's incorporation in Delaware for purposes of this action only. Snap denies the remaining allegations of Paragraph 17 of the Complaint.

18. Snap lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 18 of the Complaint, and therefore denies them.

**DOLBY'S [ALLEGED] TECHNOLOGY**

19. Snap lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 19 of the Complaint, and therefore denies them.

20. Snap lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 20 of the Complaint, and therefore denies them.

21. Snap lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 21 of the Complaint, and therefore denies them.

**SNAP'S [ALLEGED] USE OF VIDEO CODING**

22. Denied.

23. To the extent the allegations in Paragraph 23 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap admits that a user can post a Story to share a photo or video for viewing by other users of the Snapchat app. Snap denies the remaining allegations in Paragraph 23 of the Complaint.

24. To the extent the allegations in Paragraph 24 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 24 of the Complaint.

25. To the extent the allegations in Paragraph 25 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 25 of the Complaint, including any characterization or suggestion of its services as infringing any patents.

26. To the extent the allegations in Paragraph 26 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 26 of the Complaint, including any characterization or suggestion of its services as infringing any patents.

27. Snap admits that it joined the Alliance for Open Media as a Promoter member. To the extent the allegations in Paragraph 27 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 27 of the Complaint.

28. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint, and therefore denies them.

29. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint, and therefore denies them.

30. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint, and therefore denies them.

31. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint, and therefore denies them.

32. Snap denies that its services are infringing any patents. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 32 of the Complaint, and therefore denies them.

33. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint, and therefore denies them.

34. Snap denies any allegation in Paragraph 34 of the Complaint characterizing or suggesting its services as infringing any patents. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 34 of the Complaint, and therefore denies them.

35. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint, and therefore denies them.

36. Denied.

37. Denied.

## THE ITU'S COMMON PATENT POLICY

38. Snap admits that the International Telecommunication Union (ITU) is a specialized agency of the United Nations responsible for coordinating certain global issues related to information and communication technologies. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 38 of the Complaint, and therefore denies them.

39. Snap admits that one of the ITU's sectors is known as ITU-T, which develops certain telecommunications standards. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 39 of the Complaint, and therefore denies them.

40. Snap admits that part of the ITU-T's work has involved the development of video coding standards, including the AVC (H.264) and HEVC (H.265) video coding standards. Snap

lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 40 of the Complaint, and therefore denies them.

41. Snap admits that the ITU has a Common Patent Policy and Guidelines that require participants to disclose patents potentially essential to implementing ITU standards and to provide licensing declarations committing to RAND terms. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 41 of the Complaint, and therefore denies them.

42. Snap admits that Paragraph 42 reproduces an excerpt of the ITU's Common Patent Policy included in Exhibit 10 to the Complaint. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 42 of the Complaint, and therefore denies them.

43. Snap admits that Paragraph 43 quotes an excerpt of the ITU's Patent Policy Guidelines included in Exhibit 11 to the Complaint. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 43 of the Complaint, and therefore denies them.

44. Snap admits that Dolby is required to grant licenses for implementations of the H.264 and H.265 standards to any patent claims essential to the H.264 and H.265 standards on RAND terms and conditions. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 44 of the Complaint, and therefore denies them.

**<u>LICENSE OFFERS TO SNAP</u>**

45. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 45 of the Complaint, and therefore denies them.

46. Snap admits that Access Advance contacted Snap regarding licensing. Snap denies the remaining allegations in Paragraph 46 of the Complaint.

47. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 47 of the Complaint, and therefore denies them.

48. Snap admits that Access Advance and Snap held a telephone call on or about November 24, 2025. Snap denies the remaining allegations in Paragraph 48 of the Complaint.

49. Snap admits that Access Advance and Snap held a call on January 14, 2026, and that Access Advance sent an email attaching several documents on January 15, 2026. To the extent the allegations in Paragraph 49 purport to characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 49 of the Complaint.

50. Snap admits that Access Advance sent an email to Snap on January 30, 2026, to which Snap responded. Snap denies the remaining allegations in Paragraph 50 of the Complaint.

51. Snap admits that Access Advance sent emails on February 9, 2026, and February 25, 2026. Snap admits that, on March 3, 2026, Snap sent an email to Access Advance attaching a draft NDA and proposed a call. Snap denies the remaining allegations in Paragraph 51 of the Complaint.

52. Snap admits that Access Advance informed Snap of lawsuits Dolby filed in Brazil in an email to Snap on March 25, 2026, and that Snap responded on March 27, 2026. To the extent the remaining allegations in Paragraph 52 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 52 of the Complaint.

53. Denied.

54. Denied.

55. Snap admits that Access Advance and Snap continued negotiating following Access Advance's initial outreach to Snap. Snap denies the remaining allegations in Paragraph 55 of the Complaint.

56. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 56 of the Complaint, and therefore denies them.

57. Denied.

58. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 58 of the Complaint, and therefore denies them.

59. Snap denies the receipt or existence of "Via LA's November 11, 2025, email." Snap denies the remaining allegations in Paragraph 59 of the Complaint.

60. Denied.

61. Paragraph 61 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 61 of the Complaint, and therefore denies them.

## DOLBY'S ASSERTED PATENTS

62. Paragraph 62 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 62 of the Complaint, and therefore denies them.

63. Snap admits that it is a licensee of the HEVC Advance pool. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 63 of the Complaint, and therefore denies them.

**A. U.S. Patent No. 10,855,990**

64. Snap admits that the document attached as Exhibit 1 to the Complaint purports on its face to be a copy of U.S. Patent No. 10,855,990 (the "'990 Patent"). Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 64 of the Complaint, and therefore denies them.

65. To the extent the allegations in Paragraph 65 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 65 of the Complaint.

66. To the extent the allegations in Paragraph 66 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 66 of the Complaint, and therefore denies them.

67. To the extent the allegations in Paragraph 67 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 67 of the Complaint, and therefore denies them.

68. To the extent the allegations in Paragraph 68 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 68 of the Complaint, and therefore denies them.

69. To the extent the allegations in Paragraph 69 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient

knowledge or information to form a belief as to the remaining allegations in Paragraph 69 of the Complaint, and therefore denies them.

70. To the extent the allegations in Paragraph 70 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 70 of the Complaint, and therefore denies them.

71. To the extent the allegations in Paragraph 71 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 71 of the Complaint, and therefore denies them.

72. To the extent the allegations in Paragraph 72 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 72 of the Complaint, and therefore denies them.

73. To the extent the allegations in Paragraph 73 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the ’990 Patent provides an “unconventional solution.” Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 73 of the Complaint, and therefore denies them.

74. To the extent the allegations in Paragraph 74 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the ’990 Patent provides a “specific technological improvement to the functionality and capabilities of video encoding technology.” Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 74 of the Complaint, and therefore denies them.

75. Denied.

76. Denied.

77. Paragraph 77 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 77 of the Complaint, and therefore denies them.

**B. U.S. Patent No. 9,924,193**

78. Snap admits that the document attached as Exhibit 2 to the Complaint purports on its face to be a copy of U.S. Patent No. 9,924,193 (the "'193 Patent"). Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 78 of the Complaint, and therefore denies them.

79. To the extent the allegations in Paragraph 79 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 79 of the Complaint.

80. To the extent the allegations in Paragraph 80 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 80 of the Complaint, and therefore denies them.

81. To the extent the allegations in Paragraph 81 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 81 of the Complaint, and therefore denies them.

82. To the extent the allegations in Paragraph 82 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient

knowledge or information to form a belief as to the remaining allegations in Paragraph 82 of the Complaint, and therefore denies them.

83. To the extent the allegations in Paragraph 83 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 83 of the Complaint, and therefore denies them.

84. To the extent the allegations in Paragraph 84 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 84 of the Complaint, and therefore denies them.

85. To the extent the allegations in Paragraph 85 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '193 Patent provides an "unconventional solution." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 85 of the Complaint, and therefore denies them.

86. To the extent the allegations in Paragraph 86 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '193 Patent provides a "specific technological improvement to the functionality and capabilities of video encoding technology." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 86 of the Complaint, and therefore denies them.

87. Denied.

88. Denied.

89. Denied.

90. Paragraph 90 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 90 of the Complaint, and therefore denies them.

**C. U.S. Patent No. 9,596,469**

91. Snap admits that the document attached as Exhibit 3 to the Complaint purports on its face to be a copy of U.S. Patent No. 9,596,469 (the "'469 Patent"). Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 91 of the Complaint, and therefore denies them.

92. To the extent the allegations in Paragraph 92 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 92 of the Complaint.

93. To the extent the allegations in Paragraph 93 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 93 of the Complaint, and therefore denies them.

94. To the extent the allegations in Paragraph 94 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 94 of the Complaint, and therefore denies them.

95. To the extent the allegations in Paragraph 95 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 95 of the Complaint, and therefore denies them.

96. To the extent the allegations in Paragraph 96 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 96 of the Complaint, and therefore denies them.

97. Snap lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 97 of the Complaint, and therefore denies them.

98. To the extent the allegations in Paragraph 98 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '469 Patent employs an "unconventional method of probability estimation." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 98 of the Complaint, and therefore denies them.

99. To the extent the allegations in Paragraph 99 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '469 Patent provides a "specific technological improvement to the functionality and capabilities of video encoding technology." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 99 of the Complaint, and therefore denies them.

100. Denied.

101. Denied.

102. Paragraph 102 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 102 of the Complaint, and therefore denies them.

**D. U.S. Patent No. 10,404,272**

103. Snap admits that the document attached as Exhibit 4 to the Complaint purports on its face to be a copy of U.S. Patent No. 10,404,272 (the "'272 Patent"). Snap lacks sufficient

knowledge or information to form a belief as to the remaining allegations in Paragraph 103 of the Complaint, and therefore denies them.

104. To the extent the allegations in Paragraph 104 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 104 of the Complaint.

105. To the extent the allegations in Paragraph 105 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 105 of the Complaint, and therefore denies them.

106. To the extent the allegations in Paragraph 106 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 106 of the Complaint, and therefore denies them.

107. Snap lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 107 of the Complaint, and therefore denies them.

108. To the extent the allegations in Paragraph 108 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 108 of the Complaint, and therefore denies them.

109. Snap lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 109 of the Complaint, and therefore denies them.

110. To the extent the allegations in Paragraph 110 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the ’272

Patent employs an "unconventional solution of partitioning." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 110 of the Complaint, and therefore denies them.

111. To the extent the allegations in Paragraph 111 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '272 Patent provides a "specific technological improvement to the functionality and capabilities of video encoding technology." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 111 of the Complaint, and therefore denies them.

112. Denied.

113. Denied.

114. Paragraph 114 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 114 of the Complaint, and therefore denies them.

**E. U.S. Patent No. 9,894,368**

115. Snap admits that the document attached as Exhibit 25 to the Complaint purports on its face to be a copy of U.S. Patent No. 9,894,368 (the "'368 Patent"). Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 115 of the Complaint, and therefore denies them.

116. To the extent the allegations in Paragraph 116 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 116 of the Complaint.

117. To the extent the allegations in Paragraph 117 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 117 of the Complaint.

118. To the extent the allegations in Paragraph 118 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 118 of the Complaint.

119. To the extent the allegations in Paragraph 119 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 119 of the Complaint.

120. To the extent the allegations in Paragraph 120 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 120 of the Complaint.

121. To the extent the allegations in Paragraph 121 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 121 of the Complaint.

122. To the extent the allegations in Paragraph 122 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 122 of the Complaint.

123. Denied.

124. Denied.

125. Paragraph 125 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 125 of the Complaint, and therefore denies them.

**F. U.S. Patent No. 11,734,714**

126. Snap admits that the document attached as Exhibit 26 to the Complaint purports on its face to be a copy of U.S. Patent No. 11,734,714 (the "'714 Patent"). Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 126 of the Complaint, and therefore denies them.

127. To the extent the allegations in Paragraph 127 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 127 of the Complaint.

128. To the extent the allegations in Paragraph 128 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 128 of the Complaint.

129. To the extent the allegations in Paragraph 129 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 129 of the Complaint.

130. To the extent the allegations in Paragraph 130 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 130 of the Complaint.

131. To the extent the allegations in Paragraph 131 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 131 of the Complaint.

132. Denied.

133. Denied.

134. Paragraph 134 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 134 of the Complaint, and therefore denies them.

**G. U.S. Patent No. 9,729,883**

135. Snap admits that the document attached as Exhibit 27 to the Complaint purports on its face to be a copy of U.S. Patent No. 9,729,883 (the "'883 Patent"). Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 135 of the Complaint, and therefore denies them.

136. Paragraph 136 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 136 of the Complaint, and therefore denies them.

137. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 137 of the Complaint, and therefore denies them.

138. To the extent the allegations in Paragraph 138 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 138 of the Complaint.

139. To the extent the allegations in Paragraph 139 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 139 of the Complaint.

140. Denied.

141. To the extent the allegations in Paragraph 141 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 141 of the Complaint.

142. To the extent the allegations in Paragraph 142 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 142 of the Complaint.

143. Denied.

144. Denied.

145. Denied.

146. Denied.

147. Paragraph 147 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 147 of the Complaint, and therefore denies them.

**H. U.S. Patent No. 11,343,535**

148. Snap admits that the document attached as Exhibit 28 to the Complaint purports on its face to be a copy of U.S. Patent No. 11,343,535 (the "'535 Patent"). Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 148 of the Complaint, and therefore denies them.

149. Paragraph 149 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 149 of the Complaint, and therefore denies them.

150. To the extent the allegations in Paragraph 150 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 150 of the Complaint.

151. To the extent the allegations in Paragraph 151 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 151 of the Complaint.

152. To the extent the allegations in Paragraph 152 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 152 of the Complaint.

153. To the extent the allegations in Paragraph 153 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 153 of the Complaint.

154. Denied.

155. Denied.

156. Denied.

157. Paragraph 157 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 157 of the Complaint, and therefore denies them.

**I. U.S. Patent No. 8,798,173**

158. Snap admits that the document attached as Exhibit 29 to the Complaint purports on its face to be a copy of U.S. Patent No. 8,798,173 (the "'173 Patent"). Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 158 of the Complaint, and therefore denies them.

159. Paragraph 159 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 159 of the Complaint, and therefore denies them.

160. To the extent the allegations in Paragraph 160 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 160 of the Complaint.

161. To the extent the allegations in Paragraph 161 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 161 of the Complaint.

162. To the extent the allegations in Paragraph 162 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 162 of the Complaint.

163. To the extent the allegations in Paragraph 163 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 163 of the Complaint.

164. Denied.

165. Denied.

166. Denied.

167. Paragraph 167 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 167 of the Complaint, and therefore denies them.

**COUNT I: [ALLEGED] PATENT INFRINGEMENT OF THE ’990 PATENT**

168. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

169. Denied.

170. Denied.

171. Denied.

172. To the extent the allegations in Paragraph 172 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 172 of the Complaint.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

177. To the extent the allegations in Paragraph 177 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 177 of the Complaint.

178. Denied.

179. Denied.

180. Denied.

181. Denied.

182. Denied.

183. To the extent the allegations in Paragraph 183 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 183 of the Complaint.

184. Denied.

185. Denied.

186. Denied.

187. To the extent the allegations in Paragraph 187 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 187 of the Complaint.

188. Denied.

189. Denied.

190. Denied.

191. Denied.

192. Denied.

193. Denied.

194. To the extent the allegations in Paragraph 194 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 194 of the Complaint.

195. Denied.

196. Denied.

197. Denied.

198. To the extent the allegations in Paragraph 198 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 198 of the Complaint.

199. Denied.

200. Denied.

201. Denied.

202. Denied.

203. To the extent the allegations in Paragraph 203 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 203 of the Complaint.

204. Denied.

205. Denied.

206. To the extent the allegations in Paragraph 206 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 206 of the Complaint.

207. Denied.

208. Denied.

209. Denied.

210. Denied.

211. Denied.

212. Denied.

213. Denied.

**COUNT II: [ALLEGED] PATENT INFRINGEMENT OF THE '193 PATENT**

214. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

215. Denied.

216. Denied.

217. Denied.

218. To the extent the allegations in Paragraph 218 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 218 of the Complaint.

219. Denied.

220. Denied.

221. Denied.

222. Denied.

223. To the extent the allegations in Paragraph 223 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 223 of the Complaint.

224. Denied.

225. Denied.

226. Denied.

227. Denied.

228. Denied.

229. To the extent the allegations in Paragraph 229 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 229 of the Complaint.

230. Denied.

231. Denied.

232. Denied.

233. Denied.

234. To the extent the allegations in Paragraph 234 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 234 of the Complaint.

235. To the extent the allegations in Paragraph 235 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 235 of the Complaint.

236. Denied.

237. Denied.

238. Denied.

239. Denied.

240. To the extent the allegations in Paragraph 240 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 240 of the Complaint.

241. Denied.

242. Denied.

**COUNT III: [ALLEGED] PATENT INFRINGEMENT OF THE ’469 PATENT**

243. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

244. Denied.

245. Denied.

246. Denied.

247. Denied.

248. To the extent the allegations in Paragraph 248 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 248 of the Complaint.

249. Denied.

250. Denied.

251. Denied.

252. To the extent the allegations in Paragraph 252 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 252 of the Complaint.

253. Denied.

254. Denied.

255. Denied.

256. Denied.

257. Denied.

258. Denied.

259. To the extent the allegations in Paragraph 259 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 259 of the Complaint.

260. To the extent the allegations in Paragraph 260 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 260 of the Complaint.

261. To the extent the allegations in Paragraph 261 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 261 of the Complaint.

262. Denied.

263. Denied.

264. Denied.

265. Denied.

266. To the extent the allegations in Paragraph 266 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 266 of the Complaint.

267. To the extent the allegations in Paragraph 267 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 267 of the Complaint.

268. Denied.

269. Denied.

270. Denied.

271. To the extent the allegations in Paragraph 271 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 271 of the Complaint.

272. Denied.

273. Denied.

274. To the extent the allegations in Paragraph 274 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 274 of the Complaint.

275. To the extent the allegations in Paragraph 275 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 275 of the Complaint.

276. Denied.

277. Denied.

278. Denied.

279. To the extent the allegations in Paragraph 279 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 279 of the Complaint.

280. Denied.

281. Denied.

282. Denied.

283. To the extent the allegations in Paragraph 283 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 283 of the Complaint.

284. Denied.

**COUNT IV: [ALLEGED] PATENT INFRINGEMENT OF THE ’272 PATENT**

285. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

286. Denied.

287. Denied.

288. Denied.

289. To the extent the allegations in Paragraph 289 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 289 of the Complaint.

290. Denied.

291. Denied.

292. Denied.

293. Denied.

294. To the extent the allegations in Paragraph 294 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 294 of the Complaint.

295. Denied.

296. Denied.

297. Denied.

298. Denied.

299. Denied.

300. Denied.

301. To the extent the allegations in Paragraph 301 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 301 of the Complaint.

302. To the extent the allegations in Paragraph 302 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 302 of the Complaint.

303. To the extent the allegations in Paragraph 303 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 303 of the Complaint.

304. To the extent the allegations in Paragraph 304 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 304 of the Complaint.

305. Denied.

306. Denied.

307. To the extent the allegations in Paragraph 307 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 307 of the Complaint.

308. To the extent the allegations in Paragraph 308 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 308 of the Complaint.

309. Denied.

310. To the extent the allegations in Paragraph 310 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 310 of the Complaint.

311. Denied.

312. Denied.

313. Denied.

314. To the extent the allegations in Paragraph 314 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 314 of the Complaint.

315. To the extent the allegations in Paragraph 315 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 315 of the Complaint.

**COUNT V: [ALLEGED] PATENT INFRINGEMENT OF THE ’368 PATENT**

316. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

317. Denied.

318. Denied.

319. Denied.

320. To the extent the allegations in Paragraph 320 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 320 of the Complaint.

321. Denied.

322. Denied.

323. Denied.

324. Denied.

325. To the extent the allegations in Paragraph 325 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 325 of the Complaint.

326. Denied.

327. Denied.

328. Denied.

329. Denied.

330. To the extent the allegations in Paragraph 330 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 330 of the Complaint.

331. To the extent the allegations in Paragraph 331 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 331 of the Complaint.

332. Denied.

333. Denied.

334. To the extent the allegations in Paragraph 334 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 334 of the Complaint.

335. To the extent the allegations in Paragraph 335 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 335 of the Complaint.

336. To the extent the allegations in Paragraph 336 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 336 of the Complaint.

337. To the extent the allegations in Paragraph 337 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 337 of the Complaint.

338. Denied.

339. Denied.

340. Denied.

341. To the extent the allegations in Paragraph 341 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 341 of the Complaint.

342. Denied.

343. Denied.

344. To the extent the allegations in Paragraph 344 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 344 of the Complaint.

345. To the extent the allegations in Paragraph 345 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 345 of the Complaint.

346. To the extent the allegations in Paragraph 346 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 346 of the Complaint.

347. To the extent the allegations in Paragraph 347 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 347 of the Complaint.

348. To the extent the allegations in Paragraph 348 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 348 of the Complaint.

349. To the extent the allegations in Paragraph 349 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 349 of the Complaint.

350. To the extent the allegations in Paragraph 350 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 350 of the Complaint.

351. To the extent the allegations in Paragraph 351 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 351 of the Complaint.

352. To the extent the allegations in Paragraph 352 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 352 of the Complaint.

353. Denied.

354. Denied.

355. Denied.

356. Denied.

357. Denied.

358. Denied.

**COUNT VI: [ALLEGED] PATENT INFRINGEMENT OF THE ’714 PATENT**

359. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

360. Denied.

361. Denied.

362. Denied.

363. To the extent the allegations in Paragraph 363 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 363 of the Complaint.

364. Denied.

365. Denied.

366. Denied.

367. Denied.

368. To the extent the allegations in Paragraph 368 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 368 of the Complaint.

369. Denied.

370. Denied.

371. Denied.

372. Denied.

373. Denied.

374. To the extent the allegations in Paragraph 374 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 374 of the Complaint.

375. Denied.

376. Denied.

377. Denied.

378. To the extent the allegations in Paragraph 378 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 378 of the Complaint.

379. Denied.

380. Denied.

381. To the extent the allegations in Paragraph 381 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 381 of the Complaint.

382. Denied.

383. Denied.

384. Denied.

385. To the extent the allegations in Paragraph 385 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 385 of the Complaint.

386. To the extent the allegations in Paragraph 386 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 386 of the Complaint.

387. Denied.

388. Denied.

389. Denied.

390. To the extent the allegations in Paragraph 390 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 390 of the Complaint.

391. To the extent the allegations in Paragraph 391 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 391 of the Complaint.

392. To the extent the allegations in Paragraph 392 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 392 of the Complaint.

393. Denied.

394. Denied.

395. Denied.

396. To the extent the allegations in Paragraph 396 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 396 of the Complaint.

397. Denied.

398. Denied.

399. Denied.

400. Denied.

401. To the extent the allegations in Paragraph 401 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 401 of the Complaint.

402. To the extent the allegations in Paragraph 402 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 402 of the Complaint.

403. Denied.

404. Denied.

**COUNT VII: [ALLEGED] PATENT INFRINGEMENT OF THE ’883 PATENT**

405. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

406. Denied.

407. Denied.

408. Denied.

409. To the extent the allegations in Paragraph 409 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 409 of the Complaint.

410. Denied.

411. Denied.

412. Denied.

413. Denied.

414. To the extent the allegations in Paragraph 414 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 414 of the Complaint.

415. Denied.

416. Denied.

417. Denied.

418. Denied.

419. Denied.

420. To the extent the allegations in Paragraph 420 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 420 of the Complaint.

421. To the extent the allegations in Paragraph 421 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 421 of the Complaint.

422. To the extent the allegations in Paragraph 422 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 422 of the Complaint.

423. Denied.

424. Denied.

425. Denied.

426. To the extent the allegations in Paragraph 426 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 426 of the Complaint.

427. To the extent the allegations in Paragraph 427 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 427 of the Complaint.

428. To the extent the allegations in Paragraph 428 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 428 of the Complaint.

429. Denied.

430. Denied.

431. To the extent the allegations in Paragraph 431 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 431 of the Complaint.

432. To the extent the allegations in Paragraph 432 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 432 of the Complaint.

433. To the extent the allegations in Paragraph 433 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 433 of the Complaint.

434. To the extent the allegations in Paragraph 434 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 434 of the Complaint.

435. Denied.

436. To the extent the allegations in Paragraph 436 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 436 of the Complaint.

437. To the extent the allegations in Paragraph 437 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 437 of the Complaint.

438. Denied.

439. To the extent the allegations in Paragraph 439 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 439 of the Complaint.

440. To the extent the allegations in Paragraph 440 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 440 of the Complaint.

441. To the extent the allegations in Paragraph 441 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 441 of the Complaint.

442. Denied.

**COUNT VIII: [ALLEGED] PATENT INFRINGEMENT OF THE '535 PATENT**

443. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

444. Denied.

445. Denied.

446. Denied.

447. Denied.

448. To the extent the allegations in Paragraph 448 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 448 of the Complaint.

449. Denied.

450. Denied.

451. Denied.

452. To the extent the allegations in Paragraph 452 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 452 of the Complaint.

453. Denied.

454. Denied.

455. Denied.

456. Denied.

457. Denied.

458. Denied.

459. Denied.

460. To the extent the allegations in Paragraph 460 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 460 of the Complaint.

461. Denied.

462. Denied.

463. To the extent the allegations in Paragraph 463 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 463 of the Complaint.

464. Denied.

465. Denied.

466. To the extent the allegations in Paragraph 466 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 466 of the Complaint.

467. Denied.

468. To the extent the allegations in Paragraph 468 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 468 of the Complaint.

469. To the extent the allegations in Paragraph 469 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 469 of the Complaint.

470. Denied.

471. Denied.

472. To the extent the allegations in Paragraph 472 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 472 of the Complaint.

473. Denied.

474. Denied.

475. To the extent the allegations in Paragraph 475 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 475 of the Complaint.

476. Denied.

477. Denied.

478. To the extent the allegations in Paragraph 478 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 478 of the Complaint.

479. Denied.

480. Denied.

481. To the extent the allegations in Paragraph 481 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 481 of the Complaint.

482. To the extent the allegations in Paragraph 482 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 482 of the Complaint.

483. Denied.

484. Denied.

485. To the extent the allegations in Paragraph 485 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 485 of the Complaint.

486. Denied.

487. Denied.

488. To the extent the allegations in Paragraph 488 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 488 of the Complaint.

489. Denied.

490. To the extent the allegations in Paragraph 490 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 490 of the Complaint.

491. Denied.

492. To the extent the allegations in Paragraph 492 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 492 of the Complaint.

493. Denied.

494. Denied.

495. To the extent the allegations in Paragraph 495 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 495 of the Complaint.

496. To the extent the allegations in Paragraph 496 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 496 of the Complaint.

497. Denied.

**COUNT IX: [ALLEGED] PATENT INFRINGEMENT OF THE ’173 PATENT**

498. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

499. Denied.

500. Denied.

501. Denied.

502. To the extent the allegations in Paragraph 502 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 502 of the Complaint.

503. Denied.

504. Denied.

505. Denied.

506. Denied.

507. To the extent the allegations in Paragraph 507 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 507 of the Complaint.

508. Denied.

509. Denied.

510. Denied.

511. Denied.

512. Denied.

513. Denied.

514. Denied.

515. To the extent the allegations in Paragraph 515 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 515 of the Complaint.

516. To the extent the allegations in Paragraph 516 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 516 of the Complaint.

517. To the extent the allegations in Paragraph 517 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 517 of the Complaint.

518. To the extent the allegations in Paragraph 518 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 518 of the Complaint.

519. Denied.

520. To the extent the allegations in Paragraph 520 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 520 of the Complaint.

521. To the extent the allegations in Paragraph 521 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 521 of the Complaint.

522. Denied.

523. To the extent the allegations in Paragraph 523 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 523 of the Complaint.

524. To the extent the allegations in Paragraph 524 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 524 of the Complaint.

525. Denied.

526. Denied.

527. To the extent the allegations in Paragraph 527 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 527 of the Complaint.

528. To the extent the allegations in Paragraph 528 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 528 of the Complaint.

529. Denied.

530. To the extent the allegations in Paragraph 530 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 530 of the Complaint.

531. To the extent the allegations in Paragraph 531 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 531 of the Complaint.

532. Denied.

533. Denied.

534. To the extent the allegations in Paragraph 534 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 534 of the Complaint.

535. To the extent the allegations in Paragraph 535 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 535 of the Complaint.

536. Denied.

537. To the extent the allegations in Paragraph 537 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 537 of the Complaint.

538. To the extent the allegations in Paragraph 538 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 538 of the Complaint.

539. Denied.

540. Denied.

541. To the extent the allegations in Paragraph 541 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 541 of the Complaint.

542. To the extent the allegations in Paragraph 542 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 542 of the Complaint.

543. Denied.

544. To the extent the allegations in Paragraph 544 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 544 of the Complaint.

545. To the extent the allegations in Paragraph 545 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 545 of the Complaint.

546. Denied.

547. Denied.

548. To the extent the allegations in Paragraph 548 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 548 of the Complaint.

549. To the extent the allegations in Paragraph 549 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 549 of the Complaint.

550. Denied.

551. To the extent the allegations in Paragraph 551 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 551 of the Complaint.

552. To the extent the allegations in Paragraph 552 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 552 of the Complaint.

553. Denied.

554. Denied.

555. To the extent the allegations in Paragraph 555 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 555 of the Complaint.

556. To the extent the allegations in Paragraph 556 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 556 of the Complaint.

557. Denied.

558. To the extent the allegations in Paragraph 558 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 558 of the Complaint.

559. To the extent the allegations in Paragraph 559 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 559 of the Complaint.

560. Denied.

561. Denied.

562. To the extent the allegations in Paragraph 562 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 562 of the Complaint.

563. To the extent the allegations in Paragraph 563 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 563 of the Complaint.

564. Denied.

565. To the extent the allegations in Paragraph 565 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 565 of the Complaint.

566. To the extent the allegations in Paragraph 566 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 566 of the Complaint.

567. Denied.

568. Denied.

569. To the extent the allegations in Paragraph 569 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 569 of the Complaint.

570. To the extent the allegations in Paragraph 570 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 570 of the Complaint.

571. Denied.

572. To the extent the allegations in Paragraph 572 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 572 of the Complaint.

573. To the extent the allegations in Paragraph 573 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 573 of the Complaint.

574. Denied.

## COUNT X: DECLARATORY JUDGMENT THAT DOLBY HAS [ALLEGEDLY] COMPLIED WITH ITS RAND COMMITMENTS

575. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

576. Snap admits that it makes and uses products that use and comply with the H.264 and H.265 video coding standard. Snap denies the remaining allegations in Paragraph 576 of the Complaint.

577. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 577 of the Complaint, and therefore denies them.

578. Denied.

579. Snap admits that it is a licensee to the HEVC Advance pool. Snap denies any remaining allegations in Paragraph 579 of the Complaint.

580. Denied.

581. Snap admits that it contends Dolby has not satisfied its RAND obligations. Snap denies the remaining allegations in Paragraph 581 of the Complaint, and specifically denies that Dolby has complied with its RAND commitments.

582. Paragraph 582 is a statement of declaratory relief that Dolby is seeking, for which no response is required. To the extent a response is required, Snap denies that Dolby has negotiated in good faith toward a license with Snap for any alleged essential patent claims and further denies that Dolby has complied with its obligations under the ITU IPR Policy and Dolby's relevant Patent Statement and Licensing declarations.

## ATTORNEYS' FEES

583. Denied.

**DEMAND FOR JURY TRIAL**

584. Paragraph 584 consists of a jury demand for which no response is required.

**RESPONSE TO PRAYER FOR RELIEF**

The remainder of Plaintiffs' Complaint recites a prayer for relief for which no response is required. To the extent a response is required, Snap denies that Plaintiffs are entitled to any remedy or relief, including but not limited to any finding of infringement, any finding of willfulness, any award of damages (actual or enhanced), any injunctive relief, any declaration that Dolby has complied with its RAND obligations, or any award of attorneys' fees or costs.

**SNAP'S DEFENSES**

Snap asserts the following defenses in response to the allegations in Plaintiffs' Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. Snap reserves the right to assert any additional defenses as they become known during the course of this action.

**FIRST DEFENSE: NONINFRINGEMENT**

Snap has not (i) directly infringed, either literally or under the doctrine of equivalents, or (ii) indirectly infringed, by inducement or contributory infringement, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '990 Patent, the '193 Patent, the '469 Patent, the '272 Patent, the '368 Patent, the '714 Patent, the '883 Patent, the '535 Patent, or the '173 Patent (collectively, the "Asserted Patents"), and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

**SECOND DEFENSE: INVALIDITY**

Plaintiffs' claims for infringement of the Asserted Patents are barred because every asserted claim of the Asserted Patents is invalid for failing to comply with the requirements of Title 35 of the United States Code, including at least Sections 101, 102, 103, 112, and/or 116, or

judicially created doctrines of invalidity, including, but not limited to, obviousness-type double patenting, or the Rules and Regulations of the United States Patent and Trademark Office relating thereto.

**THIRD DEFENSE: LIMITATION ON DAMAGES**

Plaintiffs' claims for relief are barred, in whole or in part, by operation of the applicable statutes that limit damages and other relief, including, but not limited to, 35 U.S.C. §§ 286, 287, and 288.

**FOURTH DEFENSE: PROSECUTION HISTORY ESTOPPEL**

Plaintiffs are estopped based on any amendments, arguments, statements, representations, concessions, and/or admissions made during prosecution of the applications that led to Asserted Patents from asserting any interpretation of the claims of the Asserted Patents that would be broad enough to cover any of Snap's products or methods alleged to infringe the Asserted Patents.

**FIFTH DEFENSE: EXPRESS WAIVER**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of express waiver.

On March 13, 2018, Access Advance (then known as HEVC Advance) announced that it "will no longer license nor seek royalty fees for *non-physical HEVC content distribution* including Internet streaming," and that it was doing so explicitly "in an effort to further accelerate HEVC adoption and support streaming . . . distributors to bring the best video experience to consumers."[3] As of the time of this announcement and at all times thereafter, Plaintiffs were licensors for the HEVC Advance Patent Pool and benefited from royalties received through the HEVC Advance Patent Pool. On information and belief, Access Advance is owned in part by Plaintiffs' parent entity, Dolby Laboratories, Inc. All claims of all patents that are licensed through Access Advance,

[3] https://accessadvance.com/2018/03/13/hevc-advance-eliminates-content-distribution-royalty-fees-and-reduces-certain-royalty-rates-and-caps/

including all Asserted Patents licensed through Access Advance, are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because Access Advance, as Plaintiffs' authorized licensing agent, irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because Plaintiffs adopted and ratified that express waiver through years of acquiescence and acceptance of benefits.

Similarly, on August 26, 2010, MPEG LA (the predecessor-in-interest of Via LA) announced that it "will continue not to charge royalties for Internet Video that is free to end users (known as 'Internet Broadcast AVC Video')," noting that while "MPEG LA previously announced it would not charge royalties for such video through December 31, 2015," its August 2010 "announcement makes clear that royalties will continue not to be charged for such video beyond that time" in perpetuity.[4] The '173 patent was originally assigned to Sharp Kabushiki Kaisha ("Sharp"), which was a participant and Licensor of the MPEG LA patent pool for AVC. Thereafter, Sharp adopted and ratified MPEG LA's express waiver through years of acquiescence and acceptance of benefits. On September 30, 2015, on information and belief, Sharp assigned the '173 patent to Dolby. Sharp's prior express waiver not to charge royalties for Internet Broadcast AVC Video that is free to end users ran with the patent and therefore bound Dolby, because Sharp had irrevocably relinquished a portion of the exclusionary rights embodied in the patent before the assignment occurred. On information and belief, MPEG LA was acquired by Via Licensing and renamed to Via LA, which is a subsidiary of Plaintiffs' parent entity, Dolby Laboratories, Inc. Plaintiffs are and have been licensors of Via LA and benefited from royalties received through the Via LA (f/k/a MPEG LA) patent pool. All claims of all patents that are licensed through Via LA, including the '173 patent, are thus unenforceable against Snap's Internet

[4] https://web.archive.org/web/20101011225715/http://www.mpegla.com/main/Pages/Media.aspx

Broadcast AVC Video that is free to end users because Sharp's express waiver ran with the patent and because MPEG LA (n/k/a Via LA), as Plaintiffs' authorized licensing agent, irrevocably waived the right to charge royalties for Internet Broadcast AVC Video that is free to end users, and because Plaintiffs adopted and ratified that express waiver through years of acquiescence and acceptance of benefits.

## SIXTH DEFENSE: OTHER EQUITABLE DOCTRINES

Plaintiffs' claims are barred, in whole or in part, by the doctrines of acquiescence, legal estoppel, equitable estoppel, promissory estoppel, and/or implied license.

## SEVENTH DEFENSE: FAILURE TO COMPLY WITH RAND OBLIGATIONS

Plaintiffs' claims are barred, in whole or in part, for failure to comply with and corresponding breach of the undertakings and obligations to standard-setting organizations ("SSOs") related to the Asserted Patents. By way of example, Plaintiffs' claims for injunctive relief and damages are barred, in whole or in part, for failure to comply with, and corresponding breach of obligations to license the Asserted Patents in the Complaint on, RAND terms and conditions.

## EIGHTH DEFENSE: IMPLIED WAIVER FOR FAILURE TO DISCLOSE TO STANDARD-SETTING ORGANIZATIONS

Plaintiffs' claims are barred, in whole or in part, for failure to timely disclose the Asserted Patents, including parent patents and patent applications, to SSOs related to the AVC, HEVC, and/or AV1 video coding standards during the development of those standards. Plaintiffs and prior assignees of the Asserted Patents had an express or implied duty to disclose to an SSO the Asserted Patents or related patents and patent applications. Plaintiffs, their affiliates, and/or prior assignees of the Asserted Patents breached that duty by failing to timely disclose the Asserted Patents, including parent patents and patent applications, to SSOs of which Plaintiffs or prior assignees

were a member or were aware. That breach renders the Asserted Patents unenforceable under the doctrine of implied waiver.

**NINTH DEFENSE: LICENSE AND EXHAUSTION**

Plaintiffs' claims are exhausted to the extent that Snap, or any of its affiliates, subsidiaries, suppliers, providers, customers, or manufacturers of third-party devices on which Snap's accused products and services are used, have received a license to the Asserted Patents. By way of example, Snap's accused Snapchat application runs on third-party user devices. To the extent those devices are licensed to any Asserted Patent, Plaintiffs' claims are entirely licensed or at least exhausted with respect to that Asserted Patent for acts of alleged infringement with respect to such licensed devices. By way of further example, to the extent that Snap's accused video coding activities are performed by third parties that have a license to any Asserted Patent, Plaintiffs' claims are exhausted with respect to that Asserted Patent for acts of alleged infringement committed by that third party.

**TENTH DEFENSE: NO WILLFUL INFRINGEMENT OR ENHANCEMENT**

Plaintiffs are not entitled to enhanced damages under 35 U.S.C. § 284 because Plaintiffs have failed to meet, and cannot meet as a matter of law, the requirements for willful infringement or enhancement of damages.

**ELEVENTH DEFENSE: NO EXCEPTIONAL CASE**

Plaintiffs' Complaint fails to state a claim for relief against Snap that would qualify as an exceptional case under 35 U.S.C. § 285.

**TWELFTH DEFENSE: NO INJUNCTIVE RELIEF**

Plaintiffs are not entitled to any injunctive relief for alleged infringement of the Asserted Patents because any alleged injury to Plaintiffs is not immediate or irreparable, the balance of

hardships and public interest weighs against the grant of an injunction, and Plaintiffs have an adequate remedy at law.

## THIRTEENTH DEFENSE: ENSNAREMENT

Plaintiffs' claims are barred, in whole or in part, by the ensnarement doctrine. To the extent that Plaintiffs seek to extend the scope of the Asserted Patents to cover subject matter that was known or would have been obvious to a person of ordinary skill in the art at the time of the alleged invention(s), application of the doctrine of equivalents to the Accused Services would impermissibly ensnare the prior art.

## RESERVATION OF RIGHTS

Snap reserves the right to assert any additional defenses that may be determined during the course of discovery.

## JURY DEMAND

Snap demands a jury trial of all issues so triable under Federal Rule of Civil Procedure 38(b).

## COUNTERCLAIMS

Counterclaimant Snap Inc. ("Snap"), by and through its undersigned counsel, hereby asserts the following amended counterclaims against Counterclaim-Defendants Dolby Video Compression LLC ("DVC"), Dolby International AB ("DIAB"), and Dolby Laboratories, Inc. (collectively, "Dolby") and Access Advance LLC ("Access Advance"), as follows.

## PARTIES

1. Snap is a corporation organized under the laws of the State of Delaware, with places of business at 2772 Donald Douglas Loop N, Santa Monica, CA 90405, and 3000 31st Street, Santa Monica, CA 90405.

2. According to the First Amended Complaint (D.I. 21 at ¶ 4), Dolby Video Compression LLC is a limited liability company organized under the laws of the State of Delaware.

3. According to the First Amended Complaint (D.I. 21 at ¶ 18) and its corporate disclosure statement filed in this action (D.I. 4), Dolby Video Compression LLC is a wholly owned subsidiary of Dolby Laboratories, Inc.

4. According to the First Amended Complaint (D.I. 21 at ¶ 5), Dolby International AB is a corporation organized under the laws of Sweden.

5. According to the First Amended Complaint (D.I. 21 at ¶ 18), Dolby Laboratories, Inc. is a corporation organized under the laws of the State of Delaware and upon information and belief has a principal place of business at 1275 Market Street, San Francisco, CA 94103. Upon information and belief, Dolby Laboratories, Inc. has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, as its registered agent.

6. According to Dolby's original Complaint (D.I. 1 at ¶ 17), Access Advance is a limited liability company organized under the laws of the State of Delaware and has a principal place of business at 100 Cambridge Street, Suite 21400, Boston, MA 02114. Upon information and belief, Access Advance has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, as its registered agent.

7. Upon information and belief, Access Advance is owned in part by Dolby Laboratories, Inc.

**JURISDICTION AND VENUE**

8. These are counterclaims for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 concerning patent non-infringement, patent invalidity, patent unenforceability, and breach of reasonable and nondiscriminatory ("RAND")[5] obligations as to U.S. Patent Nos. 10,855,990; 9,924,193; 9,596,469; 10,404,272; 9,894,368; 11,734,714; 9,729,883; and 8,798,173 (collectively, the "Asserted Patents").

9. This Court has subject matter jurisdiction over Snap's counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over Snap's additional counterclaims pursuant to 28 U.S.C. § 1367, because those claims arise out of facts that are directly related to Snap's claims such that they form part of the same case or controversy within this Court's original jurisdiction.

10. This Court has personal jurisdiction over Dolby Video Compression LLC because it is a limited liability company organized under the laws of Delaware and has submitted to the jurisdiction of this Court by bringing the present action through the filing of the original Complaint and First Amended Complaint.

11. This Court has personal jurisdiction over Dolby International AB because it has submitted to the jurisdiction of this Court by bringing the present action through the filing of the First Amended Complaint.

12. This Court has personal jurisdiction over Dolby Laboratories, Inc. because it is a corporation organized under the laws of Delaware and, on information and belief, controlled, coordinated, and contributed to Dolby Video Compression LLC's actions in bringing the present

---

[5] Snap uses the term "RAND" throughout its Counterclaims interchangeably with the term "FRAND" for Fair, Reasonable, and Nondiscriminatory.

action through the filing of Dolby Video Compression LLC's Complaint and First Amended Complaint.

13. This Court has personal jurisdiction over Access Advance because Access Advance is a limited liability company organized under the laws of Delaware, and Access Advance acted as Dolby's agent in connection with the enforcement campaign giving rise to these counterclaims, including the patent-enforcement action pending in this Court.

14. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).

15. Dolby Video Compression LLC has consented to venue in this Court because it is a limited liability company organized under the laws of Delaware, and because it has filed its claims for patent infringement in this Court, in response to which these Counterclaims are asserted.

16. Venue is proper in this District as to Dolby Laboratories, Inc. under 28 U.S.C. § 1391 because Dolby Laboratories, Inc. resides in the State of Delaware.

17. Venue is proper in this District as to Access Advance under 28 U.S.C. § 1391 because Access Advance resides in the State of Delaware.

**DOLBY'S AND ACCESS ADVANCE'S WAIVER OF RIGHTS AS TO H.265 (HEVC)**

18. Access Advance is a licensing administrator company established in 2015 that offers licenses in relation to three patent pools of alleged standard-essential patents for standards-based video codec technologies.

19. Access Advance contends that its licensing approach is market-driven, modern, efficient, and transparent, and that its licensing offers are at RAND rates.

20. Access Advance historically offered, and continues to offer, licenses to the HEVC Advance Patent Pool for patents allegedly essential to the HEVC/H.265 standard. Under its HEVC

Advance Patent Pool, Access Advance licenses HEVC Decoders and HEVC Encoders in consumer HEVC products, including mobile phones, TVs, video game consoles, and desktop PCs.

21. On March 26, 2015, Access Advance (then known as HEVC Advance) launched the HEVC Advance Patent Pool and announced Dolby as among the list of expected licensors.[6]

22. On March 13, 2018, Access Advance (then known as HEVC Advance) announced that it "will no longer license nor seek royalty fees for *non-physical HEVC content distribution* including Internet streaming," and that it was doing so explicitly "in an effort to further accelerate HEVC adoption and support streaming . . . distributors to bring the best video experience to consumers."[7] As of the time of this announcement and at all times thereafter, Dolby was a licensor for the HEVC Advance Patent Pool.

23. Access Advance's March 13, 2018, announcement was unconditional. It contained no temporal limitation, no sunset provision, no reservation of the right to seek royalty fees for Internet streaming at a future date, and no qualification limiting the commitment to any particular licensing mechanism or enforcement vehicle. The announcement stated that Access Advance "will no longer" seek streaming royalties—language that is permanent and forward-looking on its face.

24. Access Advance made the March 13, 2018, announcement in its capacity as licensing administrator on behalf of the HEVC Advance pool's licensors, including Dolby. Access Advance did not purport to speak solely for itself—it spoke for the pool and therefore for its licensors collectively, as it was authorized to do in its role as licensing administrator.

25. At the time of the March 13, 2018, announcement, Access Advance had the authority, as Dolby's authorized licensing agent, to define the scope of licensing activities

---

[6] https://accessadvance.com/2015/03/26/hevc-advance-launches-to-rally-critical-mass-of-stakeholders-to-deliver-next-generation-video-experiences/

[7] https://accessadvance.com/2018/03/13/hevc-advance-eliminates-content-distribution-royalty-fees-and-reduces-certain-royalty-rates-and-caps/

undertaken on Dolby's behalf, to communicate licensing positions to the market on behalf of Dolby and other pool licensors, and to commit to the terms and conditions under which royalties would or would not be sought for uses of the patents contributed to the pool. On information and belief, Access Advance at all relevant times has been authorized, on behalf of itself, its pool licensors (including Dolby), and its pool licensors' affiliates (including Dolby's affiliates), to grant releases from all claims, demands, actions, and rights of action based on acts of alleged infringement of the patents in the patent pools administered by Access Advance. The decision to not seek royalty fees for Internet streaming was within the scope of Access Advance's authority as Dolby's licensing agent.

26. Dolby knew of Access Advance's March 13, 2018, announcement at the time it was made or shortly thereafter. Dolby did not object to the announcement, did not publicly or privately disavow it, did not withdraw its patents from the HEVC Advance pool, and did not communicate to Snap or to any other market participant that Dolby reserved any right to seek royalties for Internet streaming notwithstanding Access Advance's public commitment.

27. Dolby's silence, continued participation in the pool, and acceptance of distributions of royalty revenue generated under the post-2018 licensing structure constituted ratification of Access Advance's waiver.

28. Three weeks later, on April 3, 2018, Access Advance (then known as HEVC Advance) announced that twelve new entities had joined as licensors and licensees, and stated that this "follows on the positive market reaction to HEVC Advance's recent decision to no longer license or seek royalty fees for *non-physical HEVC content distribution* including Internet streaming, cable, over-the-air broadcast, and satellite."[8]

---

[8] https://accessadvance.com/2018/04/03/hevc-advance-highlights-momentum-with-

29. As of today, Access Advance claims to have more than 400 licensees of its HEVC Advance Patent Pool, including Snap, which is a current licensee.

30. Following Access Advance's announcement to "no longer license nor seek royalty fees for non-physical HEVC content distribution including Internet streaming" in order to "accelerate HEVC adoption," the adoption rate of consumer products supporting HEVC increased from the time of Access Advance's announcement to today.

31. From March 13, 2018 through at least January 16, 2025—a period of nearly seven years—neither Access Advance nor Dolby sought royalty fees from Snap, or upon information and belief from any other entity, for non-physical HEVC content distribution including Internet streaming. During this entire period, on information and belief, Dolby continued to serve as a licensor in the HEVC Advance pool and accepted distributions of royalty revenue generated under the post-2018 licensing structure.

32. After relinquishing streaming royalties, Access Advance and its licensors—including Dolby—received the benefit of continued HEVC adoption. As alleged above, the adoption rate of consumer products supporting HEVC increased following the March 2018 announcement. Each additional HEVC-capable device entering the market generated device-side royalties payable to the HEVC Advance pool for distribution to licensors including Dolby. On information and belief, Access Advance's elimination of streaming royalties was a strategic decision to forgo one revenue stream in order to enhance another.

33. Access Advance and Dolby cannot unilaterally revoke a commitment that was followed by market-wide adoption of HEVC and years of enhanced device royalty revenue for Dolby and other pool licensors. During the seven-year period referenced above, an ecosystem of

newest-licensors-and-licensees/

HEVC-based streaming services, infrastructure, and device support was built. Permitting Access Advance and Dolby to reimpose streaming royalties retroactively on participants in this ecosystem—including Snap—would impose liability for conduct that Access Advance and Dolby represented to be royalty-free.

34. On January 16, 2025, Access Advance changed course and announced the introduction of its Video Distribution Patent ("VDP") Pool through which Access Advance now seeks to license and seek royalty fees for non-physical HEVC content distribution including Internet streaming.

35. The VDP Pool is not limited to patents that are allegedly essential to the HEVC (H.265) video coding standard but instead bundles patents that are allegedly essential to each of the HEVC (H.265), AV1, VVC (H.266), and VP9 video coding standards.

36. Dolby is a principal architect and driving force behind Access Advance's licensing and enforcement programs. As a major holder of allegedly-standard-essential patents, Dolby is a licensor in multiple Access Advance-administered pools, including the HEVC Advance Patent Pool and the VDP Pool, and has designated Access Advance to administer licensing on its behalf. Through these arrangements, Dolby retains ownership of its patents and the economic and strategic interests in their monetization, while Access Advance serves as the centralized vehicle through which licensing terms are presented and enforcement positions are communicated to the market. Dolby's participation across multiple pools, combined with its aligned enforcement activity and coordination with Access Advance's licensing framework, as well as Dolby's ownership-in-part of Access Advance, reflects that Access Advance's programs advance and implement the strategic objectives of its most significant licensors, including Dolby.

## DOLBY'S WAIVER OF RIGHTS AS TO AVC (H.264)

37. In addition to the Asserted Patents that Dolby licenses through Access Advance, Dolby licenses U.S. Patent No. 8,798,173 (the "'173 patent") for AVC (H.264) encoding through Via LA (f/k/a MPEG LA), which is a subsidiary of Dolby Laboratories, Inc.

38. On August 26, 2010, MPEG LA (the predecessor-in-interest of Via LA) announced that it "will continue not to charge royalties for Internet Video that is free to end users (known as 'Internet Broadcast AVC Video')," noting that while "MPEG LA previously announced it would not charge royalties for such video through December 31, 2015," its August 2010 "announcement makes clear that royalties will continue not to be charged for such video beyond that time" in perpetuity.[9]

39. MPEG LA's August 26, 2010, announcement was unconditional. The announcement contained no sunset provision, no reservation of rights, no limitation tied to any particular license structure, and no statement that royalties could later be imposed on such Internet video distribution. By its terms, the announcement conveyed a permanent and forward-looking commitment that royalties would never be charged for Internet Broadcast AVC Video that is free to end users.

40. At the time of MPEG LA's August 26, 2010, announcement, the '173 patent was assigned to Sharp Kabushiki Kaisha ("Sharp"), which was a participant and licensor of the MPEG LA patent pool for AVC.

41. MPEG LA made the August 26, 2010, announcement in its capacity as licensing administrator for the AVC Patent Portfolio License and on behalf of the patent owners participating in the AVC patent pool, including Sharp. MPEG LA did not purport to speak solely

[9] https://web.archive.org/web/20101011225715/http://www.mpegla.com/main/Pages/Media.aspx

for itself. Rather, it communicated the licensing position of the pool and its licensors collectively, as it was authorized to do in its role as licensing administrator.

42. At the time of the August 26, 2010 announcement, MPEG LA had authority, as Sharp's authorized licensing agent, to define the scope of licensing activities undertaken on Sharp's behalf, to communicate licensing positions to the marketplace regarding patents included in the AVC patent pool, and to determine when royalties would or would not be sought for uses covered by those patents under the AVC Patent Portfolio License. The decision to continue not charging royalties for Internet Broadcast AVC Video that is free to end users was within the scope of MPEG LA's authority as Sharp's licensing agent.

43. Sharp knew of MPEG LA's August 26, 2010, announcement at the time it was made or shortly thereafter. Sharp did not object to the announcement, did not publicly or privately disavow it, did not withdraw the '173 patent or other AVC patents from the AVC patent pool, and did not communicate to market participants that it reserved any right to seek royalties for Internet Broadcast AVC Video that is free to end users notwithstanding MPEG LA's public commitment.

44. Thereafter, Sharp adopted and ratified MPEG LA's express waiver through years of silence, continued participation in the AVC patent pool, acquiescence, and acceptance of benefits including revenues generated under the pool's post-announcement licensing structure.

45. On September 30, 2015, Sharp assigned the '173 patent to Dolby. Sharp's prior express waiver to not charge royalties for Internet Broadcast AVC Video that is free to end users ran with the patent and therefore bound Dolby, because Sharp had irrevocably relinquished a portion of the exclusionary rights embodied in the patent before the assignment to Dolby occurred.

46. After acquiring the '173 patent, Dolby continued to participate in and benefit from the AVC patent pool licensing framework administered by MPEG LA and later Via LA.

47. After publicly committing not to charge royalties for Internet Broadcast AVC Video that is free to end users, and after licensors including Sharp and later Dolby received the benefits of adoption of the AVC standard for video streaming and associated licensing revenues, neither Dolby nor its agents may revoke or disregard that commitment.

48. On information and belief, MPEG LA was acquired by Via Licensing and renamed to Via LA, which is a subsidiary of Plaintiffs' parent entity, Dolby Laboratories, Inc. Dolby is and has been a licensor of Via LA and benefited from royalties received through the Via LA (f/k/a MPEG LA) patent pool.

**DOLBY'S RAND OBLIGATIONS AND FAILURE TO MAKE A RAND OFFER**

49. Dolby's First Amended Complaint alleges that Snap infringes the Asserted Patents through alleged use of the AVC (H.264), HEVC (H.265), and AV1 video coding standards.

50. Standard-setting organizations ("SSOs") have developed policies requiring participants to disclose patents that may be essential to implementing proposed standards and to commit to licensing those patents on reasonable and nondiscriminatory ("RAND") terms. Courts have recognized that such policies create enforceable obligations that run with the patents to successors and assignees.

51. The International Telecommunication Union ("ITU"), a specialized agency of the United Nations, develops telecommunications standards including the AVC (H.264) and HEVC (H.265) video coding standards. The ITU maintains a Common Patent Policy and Guidelines that require participants to disclose patents potentially essential to implementing ITU standards and to provide licensing declarations committing to RAND terms. These declarations create binding commitments for the benefit of all implementers of the standard.

52. Dolby's Complaint acknowledges that "Dolby has committed that it is prepared to grant licenses for implementations of the H.264 and H.265 Standards to any patent claims essential to the H.264 or H.265 Standard on reasonable and non-discriminatory (RAND) terms and conditions as set forth in the ITU Common Patent Policy." D.I. 21 at ¶ 44. Dolby further acknowledges that it and the original patent owners, including Fraunhofer, "submitted Patent Statement and Licensing Declarations to the ITU." *Id*. These commitments are binding on Dolby with respect to any patents it asserts as essential to the AVC or HEVC standards.

53. Dolby has failed to offer a license to the Asserted Patents to Snap on RAND terms and conditions. Indeed, Dolby itself has not offered any license to the Asserted Patents to Snap.

54. The only offer made to Snap prior to the filing of the Complaint that would have included a license to any Asserted Patents for the conduct that Dolby accuses of infringement is a demand by Access Advance that Snap join the VDP Pool, which includes not only certain Asserted Patents but additional patents owned by other licensors and that purportedly cover four different video coding standards, HEVC (H.265), AV1, VVC (H.266), and VP9. The VDP Pool does not cover AVC (H.264). Access Advance's offer to join the VDP Pool is not an offer to license any Asserted Patents on RAND terms and conditions, including because the rates that Access Advance charges for the VDP Pool are supra-RAND—e.g., by requiring payments that far exceed a RAND license rate to any of the Asserted Patents.

55. Apart from Dolby's silence and failure to make any offer to Snap, Access Advance's course of conduct in communications with Snap also shows an absence of any effort to negotiate in good faith or any effort to meet the RAND obligations that encumber the Asserted Patents. As non-limiting examples, on February 5, 2026, after Access Advance had contacted Snap about the VDP Pool, Snap indicated by email that the parties would need a non-disclosure

agreement ("NDA"), as is commonplace in patent licensing negotiations. Access Advance confirmed by email on February 9, 2026, that an NDA "shouldn't be an issue." On March 3, 2026, Snap provided a draft NDA to Access Advance. On March 10, 2026, Access Advance provided initial redlined edits to Snap's draft NDA. On March 17, 2026, Snap provided Access Advance with additional redlines to the NDA in response to Access Advance's comments. On March 18, 2026, instead of providing any feedback or additional revisions to the draft NDA that Snap provided, Access Advance threatened that one of Access Advance's licensors was "imminently" preparing to initiate litigation against Snap, in an effort to pressure Snap to join the VDP Pool "ASAP." Dolby filed this suit shortly afterwards on March 25, 2026, without any outreach by Dolby to Snap and no further revisions or communications from Access Advance or Dolby regarding the proposed NDA.

56. Since Dolby filed this suit, Snap has continued to communicate with Access Advance. On June 12, 2026, Snap reiterated by email that it would be willing to pay a RAND rate for a license of appropriate scope but disagreed that Access Advance's license structure and rate card meet the RAND criteria, including without limitation because it is arbitrary, too high considering the percentage of alleged HEVC patents that Access Advance's licensors own, and bundles together codecs that Snap does not and has not used. Snap also reiterated that Access Advance had failed to provide the terms of its licenses to other licensors, which are important to assess the purported bases for Access Advance's offer and whether it complies with the non-discrimination requirement of RAND. Snap noted that Access Advance had still not responded to Snap on the NDA revisions, nearly three months after Snap provided them. Access Advance then waited more than a week, until June 22, 2026, to respond and provide a redline to the NDA, but the version that Access Advance sent did not reflect all of Snap's changes to the last draft.

Nevertheless, on July 3, 2026, Snap provided another draft of the NDA to Access Advance and offered to discuss Access Advance's pool license offer again once the NDA is executed. As of the filing of these amended counterclaims, Snap and Access Advance continue to negotiate the NDA to advance licensing discussions, reflecting the premature nature of Dolby's lawsuit that is designed to coerce Snap into a non-RAND license.

57. To the extent any Asserted Patent is found valid and essential to the AVC or HEVC standards, Dolby's conduct, directly and (for patents allegedly essential to HEVC) through its licensing agent Access Advance, violates its obligations under at least the ITU Common Patent Policy and Guidelines. Snap, as an implementer of the AVC and HEVC standards, is an intended third-party beneficiary of Dolby's RAND commitments and is entitled to enforce those commitments.

58. Dolby's RAND obligation to license any patents essential to the AVC and HEVC standards on fair, reasonable, and non-discriminatory terms further prohibits Dolby, directly or through its licensing agent Access Advance, from discriminating against Snap in demanding that Snap pay additional royalties for patents allegedly covering video coding in the AV1 standard. For example, by virtue of its RAND obligation, Dolby is prohibited, directly or through its licensing agent, Access Advance, from conditioning a license to patents essential to the HEVC standard on Snap paying additional royalties for patents allegedly essential to the AV1 standard. Dolby is further prohibited, directly or through its licensing agent Access Advance, from refusing to license patents allegedly essential to the AV1 standard to Snap on RAND terms and conditions to the extent that Dolby and/or Access Advance have included licenses to such patents on RAND terms and conditions as part of any licenses to third parties for patents essential to the HEVC standard.

59. The RAND obligations that bind Dolby and require it to offer licenses to any patents essential to the HEVC and/or AV1 standards on RAND terms and conditions apply equally to Access Advance by virtue of its role as the licensing agent for Dolby, as the administrator of a patent pool that includes certain Asserted Patents, and as an affiliate that is part-owned by Dolby. For any Asserted Patent encumbered by a RAND obligation, Access Advance is legally obligated to license any such patent on RAND terms and conditions. Despite this obligation, Access Advance has failed to offer a license to the Asserted Patents to Snap on RAND terms and conditions.

**COUNT I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,855,990**
**(Against Dolby)**

60. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

61. Through its Complaint, Dolby alleges that Snap infringes the ’990 Patent.

62. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the ’990 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the ’990 Patent.

63. Snap’s Accused Services do not practice any claim of the ’990 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the ’990 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap’s Accused Services fail to satisfy at least the steps of “copying . . . the first intra coding parameter as the second intra coding parameter,” “inter-plane interchange information . . . signals whether a second intra coding parameter . . . is to be derived

based on the first intra coding parameter," "predicting the second coding block based on the second set of coding parameters including the second intra coding parameter to generate a predicted second coding block," and "a spatial resolution of the first array is twice a spatial resolution of the second array."

64. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance's HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

65. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement.

66. In addition, all claims of the '990 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because Dolby's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because Dolby ratified that waiver through seven years of acquiescence and acceptance of benefits.

67. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the '990 Patent.

68. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the '990 Patent.

**COUNT II: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 10,855,990**
**(Against Dolby)**

69. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

70. Snap seeks a declaratory judgment that the claims of the '990 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

71. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the '990 Patent.

72. The claims of the '990 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the '990 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of reusing duplicative data and do not recite any inventive concept sufficient to confer patent eligibility, as the additional claim limitations merely apply that mathematical formula within a conventional video encoder or decoder architecture using standard processing hardware.

73. The claims of the ’990 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’990 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including U.S. Patent Application Publication No. 2006/0153295 to Wang et al., entitled “Method and System for Inter-Layer Prediction Mode Coding in Scalable Video Coding,” published July 13, 2006, U.S. Patent No. 8,861,594 to Kim et al., entitled “Method and Apparatus for Processing Video Data,” issued October 14, 2014, International Publication No. WO 2006/112997 A1 to Yu, entitled “Luma and Chroma Encoding Using a Common Predictor,” published October 26, 2006, and Sekiguchi et al., “On Separate Color-Plane Prediction for Direct 4:4:4 Video Coding,” IEEE International Conference on Image Processing (ICIP), 2006.

74. The claims of the ’990 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the ’990 Patent are invalid under 35 U.S.C. § 112 as indefinite because the scope of the phrase “copying . . . the first intra coding parameter as the second intra coding parameter such that the first and second intra coding parameters are equal, wherein a spatial resolution of the first array is twice a spatial resolution of the second array, the first intra coding parameter indicates an angle of direction of intra prediction used in the intra coding mode within the first array and the second intra coding parameter indicates an angle of direction of intra prediction used in the intra coding mode within the second array,” cannot be determined with reasonable certainty by a person of ordinary skill. The claim is irresolvably ambiguous as to what it means for the two parameters to be “equal” given that they indicate angles within arrays having different spatial resolutions. The claims are also invalid for

lacking written description for failing to disclose or support the claimed "angle of direction of intra prediction used in the intra coding mode" and in particular lacking any disclosure for the claimed "copying . . . such that the first and second intra coding parameters are equal" when the intra coding parameters indicate angles of direction of intra prediction used in the intra coding mode.

75. Snap has been and continues to be threatened with enforcement of the '990 Patent, and Dolby's allegations will continue to harm Snap unless the Court declares the '990 Patent invalid.

76. Snap seeks a judicial declaration that all asserted claims of the '990 Patent are invalid and unenforceable.

**COUNT III: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 9,924,193**
**(Against Dolby)**

77. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

78. Through its Complaint, Dolby alleges that Snap infringes the '193 Patent.

79. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the '193 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the '193 Patent.

80. Snap's Accused Services do not practice any claim of the '193 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the '193 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap's Accused Services fail to satisfy at least the steps of "first information . . . has first or second states, the first state indicates that (1) the coding block is to be reconstructed based on one or more coding parameters of a merge candidate coding block and (2)

the coding block is to be reconstructed without residual data," "when the first information is in the second state, coding, into the data stream, third information associated with the coding block, the third information having first and second states," "reconstructed based on one or more coding parameters of a merge candidate coding block," "reconstructed using the at least one coding parameter coded in the data stream," "coding, into the data stream, . . . the one or more coding parameters associated with the merge candidate coding block so that the one or more coding parameters of the merge candidate coding block can be used to reconstruct the coding block," and "another merge candidate coding block."

81. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance's HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

82. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement.

83. In addition, all claims of the '193 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because Dolby's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content

distribution including Internet streaming, and because Dolby ratified that waiver through seven years of acquiescence and acceptance of benefits.

84. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the ’193 Patent.

85. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’193 Patent.

**COUNT IV: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 9,924,193**
**(Against Dolby)**

86. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

87. Snap seeks a declaratory judgment that the claims of the ’193 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

88. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’193 Patent.

The claims of the ’193 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’193 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of using all, none, or some of previous data and do not recite any inventive concept beyond the abstract idea itself, as the remaining claim elements merely invoke generic video encoding and decoding components to

perform the mathematical prediction in a conventional manner.

89. The claims of the ’193 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’193 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including JCTVC-C403, Wiegand et al., “WD1: Working Draft 1 of High-Efficiency Video Coding,” Joint Collaborative Team on Video Coding, 3rd Meeting, Guangzhou, China, October 7–15, 2010, U.S. Patent Application Publication No. 2010/0086052 A1 to Park et al., entitled “Method and an Apparatus for Processing a Video Signal,” published April 8, 2010, U.S. Patent Application Publication No. 2008/0198926 A1 to Bordes et al., entitled “Bitrate Reduction Method by Requantization,” published August 21, 2008, U.S. Patent Application Publication No. 2009/0304084 A1 to Hallapuro et al., entitled “Combined Motion Vector and Reference Index Prediction for Video Coding,” published December 10, 2009, U.S. Patent Application Publication No. 2008/0063072 A1 to Suzuki, entitled “Moving Picture Encoding Method and Decoding Method,” published March 13, 2008, and U.S. Patent Application Publication No. 2009/0052543 A1 to Wu et al., entitled “Method and Apparatus for Redundant Video Encoding,” published February 26, 2009.

90. The claims of the ’193 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the ’193 Patent are invalid under 35 U.S.C. § 112 as indefinite because the scope of the phrase “the first state indicates that (1) the coding block is to be reconstructed based on one or more coding parameters of a merge candidate coding block and (2) the coding block is to be reconstructed without residual data,” cannot be

determined with reasonable certainty by a person of ordinary skill. The phrase "another merge candidate coding block" is also indefinite for lack of antecedent basis. Nor does the specification disclose "one or more coding parameters of a merge candidate coding block . . . the one or more coding parameters associated with the merge candidate coding block," which is vague as to its antecedent or lack thereof, and due to lack of written description for reciting "when the first information is in the first state, coding, into the data stream . . . the one or more coding parameters associated with the merge candidate coding block," as recited in the claims.

91. Snap has been and continues to be threatened with enforcement of the '193 Patent, and Dolby's allegations will continue to harm Snap unless the Court declares the '193 Patent invalid.

92. Snap seeks a judicial declaration that all asserted claims of the '193 Patent are invalid and unenforceable.

**COUNT V: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 9,596,469**
**(Against Dolby)**

93. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

94. Through its Complaint, Dolby alleges that Snap infringes the '469 Patent

95. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the '469 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the '469 Patent.

96. Snap's Accused Services do not practice any claim of the '469 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the '469 Patent, either literally or under the doctrine of equivalents. In particular, for

example and without limitation, Snap's Accused Services fail to satisfy at least the steps of "entropy encoding the plurality of entropy slices sequentially using an entropy slice order," "entropy encoding a current part of the predetermined entropy slice based on . . . probability estimations as used in the entropy encoding of a spatially neighboring, in the entropy slice order, preceding entropy slice at a neighboring part of the spatially neighboring preceding entropy slice," "entropy slices," and "portions corresponding to the entropy slices comprise a same number of blocks."

97. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance's HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

98. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement.

99. In addition, all claims of the '469 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because Dolby's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content

distribution including Internet streaming, and because Dolby ratified that waiver through seven years of acquiescence and acceptance of benefits.

100. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the ’469 Patent.

101. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’469 Patent.

**COUNT VI: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 9,596,469**
**(Against Dolby)**

102. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

103. Snap seeks a declaratory judgment that the claims of the ’469 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

104. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’469 Patent.

105. The claims of the ’469 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’469 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of reusing prior calculations and do not recite any inventive concept sufficient to transform that abstraction into patent-eligible subject matter, as the additional claim elements amount to no more than

implementing the abstract idea on conventional computer hardware using well-understood, routine, and conventional techniques long known in the video coding art.

106. The claims of the ’469 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’469 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including JCTVC-E196, “Wavefront Parallel Processing,” Félix Henry and Stéphane Pateux, 5th JCT-VC Meeting, Geneva, March 16–23, 2011, WO 2010/063184 A1, “Method for Performing Parallel CABAC Processing with Ordered Entropy Slices, and Associated Apparatus,” Yu-Wen Huang and Xun Guo, filed August 31, 2009, published June 10, 2010, Jie Zhao and Andrew Segall, “Parallel Entropy Decoding for High Resolution Video Coding,” Proc. SPIE-IS&T Electronic Imaging, Vol. 7257, Article 725706, January 19, 2009, WO 2008/047300 A2, “System and Method for Using Parallelly Decodable Slices for Multi-View Video Coding,” Kemal Ugur, Jani Lainema, and Miska Hannuksela, filed October 15, 2007, published April 24, 2008, JCTVC-D243, “Analysis of Entropy Slices Approaches,” Vivienne Sze and Madhukar Budagavi, 4th JCT-VC Meeting, Daegu, January 20–28, 2011.

107. The claims of the ’469 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the ’469 Patent are invalid under 35 U.S.C. § 112 as indefinite. For example, the scope of the phrase “performing, in entropy encoding a predetermined entropy slice, entropy encoding a current part of the predetermined entropy slice based on the respective probability estimations of the predetermined entropy slice as adapted using the previously encoded part of the predetermined entropy slice, and probability estimations as used

in the entropy encoding of a spatially neighboring, in the entropy slice order, preceding entropy slice at a neighboring part of the spatially neighboring preceding entropy slice," cannot be determined with reasonable certainty by a person of ordinary skill because the phrase "and probability estimations" is ambiguous and not described in the specification. The scope of the phrase "a neighboring part" cannot be determined with reasonable certainty by a person of ordinary skill in the art because it is not supported by any objective standard set forth in the specification. The claims also fail to satisfy the written description requirement for the claimed "entropy encoding the plurality of entropy slices sequentially using an entropy slice order," because the specification discloses only parallel execution.

108. Snap has been and continues to be threatened with enforcement of the '469 Patent, and Dolby's allegations will continue to harm Snap unless the Court declares the '469 Patent invalid.

109. Snap seeks a judicial declaration that all asserted claims of the '469 Patent are invalid and unenforceable.

**COUNT VII: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,404,272**
**(Against Dolby)**

110. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

111. Through its Complaint, Dolby alleges that Snap infringes the '272 Patent.

112. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the '272 Patent and alleges that Snap has not, and

does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the ’272 Patent.

113. Snap’s Accused Services do not practice any claim of the ’272 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the ’272 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap’s Accused Services fail to satisfy at least the steps of “sub-divided into a plurality of disjoint portions,” “a decomposer configured to . . . obtain a sequence of source symbols based on the sequence of syntax elements by decomposing each syntax element into a corresponding set of source symbols based on a portion of the plurality of disjoint portions associated with the syntax element,” “a combination of values of the source symbols of the set yields the value of the syntax element,” “sub-divide the sequence of source symbols into a first sequence of source symbols and a second sequence of source symbols,” “encode a source symbol of the . . . second sequence using Exp-Golomb coding,” and “a value range which is sub-divided into a plurality of disjoint portions.”

114. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance’s HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

115. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices’ built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend

transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement.

116. In addition, all claims of the ’272 Patent are unenforceable against Snap’s non-physical HEVC content distribution including Internet streaming because Dolby’s authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because Dolby ratified that waiver through seven years of acquiescence and acceptance of benefits.

117. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the ’272 Patent.

118. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’272 Patent.

**COUNT VIII: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 10,404,272**
**(Against Dolby)**

119. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

120. Snap seeks a declaratory judgment that the claims of the ’272 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

121. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’272 Patent.

122. The claims of the ’272 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’272 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of splitting a number into parts and treating small parts different than large parts, and do not recite any inventive concept beyond these mathematical operations, as the recited encoder and decoder components are generic computing elements performing conventional functions.

123. The claims of the ’272 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’272 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including U.S. Patent No. 6,900,748, “Method and Apparatus for Binarization and Arithmetic Coding of a Data Value,” Marpe et al., issued May 31, 2005, Marpe et al., “Context-Based Adaptive Binary Arithmetic Coding in the H.264/AVC Video Compression Standard,” IEEE Transactions on Circuits and Systems for Video Technology, Vol. 13, No. 7, July 2003, U.S. Patent No. 7,702,013, “Method and Arrangement for Coding Transform Coefficients in Picture and/or Video Coders and Decoders and a Corresponding Computer Program and a Corresponding Computer-Readable Storage Medium,” Schwarz et al., issued April 20, 2010, JCTVC-B088, “Parallel Context Processing Techniques for High Coding Efficiency Entropy Coding in HEVC,” Budagavi et al., 2nd JCT-VC Meeting, Geneva, July 21–28, 2010, U.S. Patent No. 5,574,449, “Signal Processing with Hybrid Variable-Length and Entropy Encoding,” Golin, issued November 12, 1996, Xi et al., “Probability Updating-based Adaptive Hybrid Coding

(PUAHC)," ISCAS 2006, Liu et al., "VLD Design for AVS and H.264 Dual Standards Video Decoder," IEEE, October 30, 2009.

124. The claims of the '272 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the '272 Patent are invalid under 35 U.S.C. § 112 as indefinite for reciting "a decomposer," which is subject to § 112, ¶ 6, but lacks sufficient structure disclosed in the specification.

125. Snap has been and continues to be threatened with enforcement of the '272 Patent, and Dolby's allegations will continue to harm Snap unless the Court declares the '272 Patent invalid.

126. Snap seeks a judicial declaration that all asserted claims of the '272 Patent are invalid and unenforceable.

**COUNT IX: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 9,894,368**
**(Against Dolby)**

127. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

128. Through its Complaint, Dolby alleges that Snap infringes the '368 Patent.

129. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the '368 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the '368 Patent.

130. Snap's Accused Services do not practice any claim of the '368 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any

claim of the ’368 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap’s Accused Services fail to satisfy at least the steps of “selected in accordance with a combination of the scan order and a number of positions of the significant transform coefficients within the transform coefficient block,” “related to previously extracted first-type syntax elements in a neighborhood the current first-type syntax element,” “[a] method for encoding . . . using contexts . . . selected in accordance with . . . previously-extracted first-type elements,” “coding first-type syntax elements . . . indicating, for associated positions within the transform coefficient block, whether at each respective associated position a significant transform coefficient is situated,” and “a neighborhood [of] the current first-type syntax element.”

131. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance’s HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

132. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices’ built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement.

133. In addition, all claims of the ’368 Patent are unenforceable against Snap’s non-physical HEVC content distribution including Internet streaming because Dolby’s authorized

licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because Dolby ratified that waiver through seven years of acquiescence and acceptance of benefits.

134. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the ’368 Patent.

135. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’368 Patent.

**COUNT X: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 9,894,368**
**(Against Dolby)**

136. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

137. Snap seeks a declaratory judgment that the claims of the ’368 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

138. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’368 Patent.

139. The claims of the ’368 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’368 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract ideas of only communicating unexpected information and reusing previous results, and do not recite any

inventive concept beyond these abstract mathematical operations, as the recited encoder, decoder, and memory components are generic computing elements that perform conventional functions.

140. The claims of the ’368 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’368 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including “Context-Based Entropy Coding of Block Transform Coefficients for Image Compression,” Tu et al., November 2002, U.S. Patent No. 7,054,493, “Context Generation,” to Schwartz, May 30, 2006, Impoco, “JPEG2000—A Short Tutorial,” April 1, 2004, Taubman, “High Performance Scalable Image Compression with EBCOT,” July 2000, Marpe et al., “Context-Based Adaptive Binary Arithmetic Coding in the H.264/AVC Video Compression Standard,” July 2003, Wu, “High-Order Context Modeling and Embedded Conditional Entropy Coding of Wavelet Coefficients for Image Compression,” November 1997.

141. The claims of the ’368 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the ’368 Patent are invalid under 35 U.S.C. § 112 as indefinite as the scope of the phrase “[a] method for encoding . . . using contexts . . . selected in accordance with . . . previously-extracted first-type elements,” which is incoherent, for reciting “a neighborhood of the current first-type syntax element,” cannot be determined with reasonable certainty by a person of ordinary skill and is not supported by any objective standard set forth in the specification. The phrase “a number of positions of the . . . within the . . . related to . . . in a,” is also indefinite as a person of ordinary skill would not be able to determine the scope of this phrase with reasonable certainty due to grammatic ambiguity.

142. Snap has been and continues to be threatened with enforcement of the ’368 Patent, and Dolby’s allegations will continue to harm Snap unless the Court declares the ’368 Patent invalid.

143. Snap seeks a judicial declaration that all asserted claims of the ’368 Patent are invalid and unenforceable.

**COUNT XI: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 11,734,714**
**(Against Dolby)**

144. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

145. Through its Complaint, Dolby alleges that Snap infringes the ’714 Patent.

146. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the ’714 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the ’714 Patent.

147. Snap’s Accused Services do not practice any claim of the ’714 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the ’714 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap’s Accused Services fail to satisfy at least the steps of “based on a determination that a number of regions in the plurality of candidate regions is greater than one and coding parameters associated with the plurality of candidate regions are not identical to each other, encoding into the data stream a candidate identifier,” “processing the merge indicator to determine copying or computing a first coding parameter associated with the current region based on a second coding parameter associated with the candidate region,” “encoding, into the

data stream, the second coding parameter," and "[a]n encoder . . . comprising a subdivider . . . and a data stream generator."

148. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance's HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

149. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement.

150. In addition, all claims of the '714 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because Dolby's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because Dolby ratified that waiver through seven years of acquiescence and acceptance of benefits.

151. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the '714 Patent.

152. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’714 Patent.

**COUNT XII: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 11,734,714**
**(Against Dolby)**

153. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

154. Snap seeks a declaratory judgment that the claims of the ’714 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

155. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’714 Patent.

156. The claims of the ’714 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, one or more claims of the '714 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract ideas of breaking a larger task into smaller pieces and reusing prior results, and do not recite any inventive concept sufficient to transform that abstraction into patent-eligible subject matter, as the additional claim elements invoke only generic video coding apparatus performing well-understood functions.

157. The claims of the ’714 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’714 Patent

are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including International Application Publication No. WO 2008/127597 A2, "Method and Apparatus for Context Dependent Merging for Skip-Direct Modes for Video Encoding and Decoding," Escoda et al., filed April 9, 2008, pub. October 23, 2008, Tagliasacchi et al., "Motion Estimation by Quadtree Pruning and Merging," 2006, U.S. Patent Application Publication No. 2009/0304084, "Combined Motion Vector and Reference Index Prediction for Video Coding," Hallapuro et al., filed March 19, 2009, pub. December 10, 2009, Shukla et al., "Rate-Distortion Optimized Tree Structured Compression Algorithms for Piecewise Polynomial Images," 2005, Marpe et al., "Context-Based Adaptive Binary Arithmetic Coding in the H.264/AVC Video Compression Standard," July 2003, Wang et al., JVT-W030, "CE2 Report: Improvement of Macroblock Mode Prediction in ESS," April 2007.

158. The claims of the '714 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the '714 Patent are invalid under 35 U.S.C. § 112 as indefinite because a person of ordinary skill would not be able to determine with reasonable certainty the scope of the phrase "[a]n encoder . . . comprising . . . a data stream generator configured for . . . processing the merge indicator to determine copying or computing," as it is incoherent because the data stream generator is elsewhere recited as encoding the "merge indicator." Nor would a person of ordinary skill be able to determine with reasonable certainty the scope of the phrase "encoding into the data stream, the second coding parameter," as it is incoherent given that the "second coding parameter" is "associated with the candidate region." a person of ordinary skill would not be able to determine with reasonable certainty the scope of the phrase "has a spatial relationship," as it is not supported by any objective standard set forth in the

specification. The claims also fail to satisfy the written description requirement as "[a]n encoder . . . comprising . . . a data stream generator configured for . . . processing the merge indicator to determine copying or computing," does not appear, nor is it supported by, the specification.

159. Snap has been and continues to be threatened with enforcement of the '714 Patent, and Dolby's allegations will continue to harm Snap unless the Court declares the '714 Patent invalid.

160. Snap seeks a judicial declaration that all asserted claims of the '714 Patent are invalid and unenforceable.

**COUNT XIII: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 9,729,883**
**(Against Dolby)**

161. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

162. Through its Complaint, Dolby alleges that Snap infringes the '883 Patent.

163. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the '883 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the '883 Patent.

164. Snap's Accused Services do not practice any claim of the '883 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the '883 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap's Accused Services fail to satisfy at least the steps of "encode, into the data stream, a truncated unary code," "[a]n encoder . . . comprising a constructor . . . and an entropy encoder," "exactly one context per bin position of the truncated unary code,"

and "an entropy encoder configured to, for horizontal and vertical components of each of the motion vector differences . . . and encode, into the data stream, an Exp-Golomb code."

165. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance's HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

166. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement.

167. In addition, all claims of the '883 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because Dolby's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because Dolby ratified that waiver through seven years of acquiescence and acceptance of benefits.

168. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the '883 Patent.

169. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’883 Patent.

**COUNT XIV: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 9,729,883**
**(Against Dolby)**

170. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

171. Snap seeks a declaratory judgment that the claims of the ’883 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

172. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’883 Patent.

173. The claims of the ’883 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’883 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract ideas of only communicating unexpected information and treating small parts different than large parts, and do not recite any inventive concept that transforms this abstraction into patent-eligible subject matter, as the remaining claim elements merely recite generic entropy coding hardware and software performing conventional operations.

174. The claims of the ’883 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’883 Patent

are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including Nguyen et al., JCTVC-F455, "Modified Binarization and Coding of MVD for PIPE/CABAC," July 2011, Chen et al., JCTVC-F497, "Simplified Context Model Selection for Block Level Syntax Coding," July 2011, Sasai et al., JCTVC-F423, "Modified MVD Coding for CABAC," July 2011, U.S. Patent No. 7,535,387, "Methods and Systems for Implementing Context Adaptive Binary Arithmetic Coding," Delva, May 19, 2009.

175. The claims of the '883 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the '883 Patent are invalid under 35 U.S.C. § 112 as indefinite because "a constructor" is subject to § 112, ¶ 6, but lacks sufficient structure disclosed in the specification. The claims are also indefinite for reciting "a constructor configured to predictively code the video," which is not reasonably certain and incoherent in view of the separate "entropy encoder" configured to "encode." The phrase "exactly one context per bin position . . . wherein the context is shared" is self-contradictory and therefore indefinite. The claims are also invalid for failure to satisfy the written description as to the phrase "an entropy encoder configured to, for horizontal and vertical components of each of the motion vector differences . . . encode, into the data stream, an Exp-Golomb code," because the specification fails to reasonably disclose encoding an Exp-Golomb code for components of "each" of the motion vector differences.

176. Snap has been and continues to be threatened with enforcement of the '883 Patent, and Dolby's allegations will continue to harm Snap unless the Court declares the '883 Patent invalid.

177. Snap seeks a judicial declaration that all asserted claims of the ’883 Patent are invalid and unenforceable.

**COUNT XV: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,798,173 (Against Dolby)**

178. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

179. Through its Complaint, Dolby alleges that Snap infringes the ’173 Patent.

180. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the ’173 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the ’173 Patent.

181. Snap’s Accused Services do not practice any claim of the ’173 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the ’173 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap’s Accused Services fail to satisfy at least the steps of “said boundary strength is a first value when said adjacent blocks of said frame have an absolute difference of motion vector components which is greater than or equal to a threshold value in either the vertical direction or the horizontal direction,” and “said conditions of coding parameters include whether said adjacent blocks of said frame have an absolute difference of motion vector components which is less than a threshold value in both vertical direction and horizontal direction.”

182. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance’s HEVC Advance patent pool, where the videos at issue

were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

183. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement.

184. In addition, all claims of the '173 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because Dolby's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because Dolby ratified that waiver through seven years of acquiescence and acceptance of benefits.

185. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under the Via LA (fka MPEG LA) AVC/H.264 patent pool, where the videos at issue were encoded into the AVC format on devices authorized under the '173 Patent, and any subsequent actions occur in response to and at the direction of those licensed users

186. In addition, all claims of the '173 Patent are unenforceable against Snap's AVC Internet video that is free to end users because Dolby's authorized licensing agent irrevocably waived the right to seek royalty fees for such video content, and because Dolby ratified that waiver through more than a decade of acquiescence and acceptance of benefits.

187. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the ’173 Patent.

188. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’173 Patent.

**COUNT XVI: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 8,798,173**
**(Against Dolby)**

189. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

190. Snap seeks a declaratory judgment that the claims of the ’173 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

191. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’173 Patent.

192. The claims of the ’173 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’173 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of threshold-based filtering and do not recite any inventive concept sufficient to transform that abstraction into patent-eligible subject matter, as the remaining claim elements recite only generic image processing hardware performing conventional operations.

193. The claims of the '173 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the '173 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including Bjontegaard et al., "H.26L Test Model Long Term Number 8 (TML-8) draft0," June 28, 2001, Bjontegaard et al., "Possible Simplifications of the Present Deblocking Filter in TML 5.9," March 2001, "Report of the Ad Hoc Committee on Loop Filter Improvement," August 2001, U.S. Patent No. 5,787,207 "Method and Apparatus for Minimizing Blockiness in Reconstructed Images," Golin, July 28, 1998.

194. The claims of the '173 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the '173 Patent are invalid under 35 U.S.C. § 112 as indefinite for reciting "pixel value adaptation range," because this term lacks reasonable certainty to a person of ordinary skill. The claims are also indefinite for reciting "a threshold value" twice, because a person of ordinary skill would be unable to determine with reasonable certainty whether the claims encompass one or two threshold values.

195. Snap has been and continues to be threatened with enforcement of the '173 Patent, and Dolby's allegations will continue to harm Snap unless the Court declares the '173 Patent invalid.

196. Snap seeks a judicial declaration that all asserted claims of the '173 Patent are invalid and unenforceable.

**COUNT XVII: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 11,343,535**
**(Against Dolby)**

197. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

198. Through its Complaint, Dolby alleges that Snap infringes the ’535 Patent.

199. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the ’535 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the ’535 Patent.

200. Snap’s Accused Services do not practice any claim of the ’535 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the ’535 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap’s Accused Services fail to satisfy at least the steps of “grouping the plurality of blocks into a number of subsets of blocks,” “entropy coding the block of quantized coefficients using a first set of probabilities of symbol occurrence, the first set of probabilities associated with a predetermined block of at least one other subset,” and “wherein the predetermined block of the at least one other subset is entropy coded using the second set of probabilities.”

201. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance’s HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

202. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement.

203. In addition, all claims of the '535 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because Dolby's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because Dolby ratified that waiver through seven years of acquiescence and acceptance of benefits.

204. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the '535 Patent.

205. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the '535 Patent.

**COUNT XVIII: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 11,343,535**
**(Against Dolby)**

206. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

207. Snap seeks a declaratory judgment that the claims of the ’535 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

208. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’535 Patent.

209. The claims of the ’535 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’535 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of reusing prior calculations, and do not recite any inventive concept beyond implementing that mathematical process on generic computing hardware, as the recited coding units, memory, and processors are conventional components performing routine functions.

210. The claims of the ’535 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’535 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including U.S. Patent Application Publication No. 2011/0317769, “Image Coding Method and Image Decoding Method,” Tanaka et al., published December 29, 2011, Sze et al., “A Highly Parallel and Scalable CABAC Decoder for Next Generation Video Coding,” ISSCC 2011, February 22, 2011, JCTVC-B111, Misra et al., “Entropy Slices for Parallel Entropy Coding,” July 2010, U.S. Patent Application Publication No. 2005/0259747, “Context Adaptive Binary Arithmetic Code Decoder for Decoding Macroblock Adaptive Field/Frame Coded Video

Data," Schumann, published November 24, 2005, Fuldseth, JCTVC-D227, "Replacing Slices with Tiles for High Level Parallelism," January 2011.

211. The claims of the '535 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the '535 Patent are invalid under 35 U.S.C. § 112 as indefinite because the phrase "the second set of probabilities associated with at least one other coded block belonging to the same subset . . . the predetermined block of the at least one other subset is entropy coded using the second set of probabilities" is contradictory and thus not reasonably certain to a person of ordinary skill. The claims are also indefinite because the phrase "coding in parallel the subsets of blocks . . . conditioned on determining that the current block is the first in the order of blocks in the subset of blocks, entropy coding the block of quantized coefficients using a first set of probabilities of symbol occurrence, the first set of probabilities associated with a predetermined block of at least one other subset" is contradictory and thus not reasonably certain to a person of ordinary skill.

212. Snap has been and continues to be threatened with enforcement of the '535 Patent, and Dolby's allegations will continue to harm Snap unless the Court declares the '535 Patent invalid.

213. Snap seeks a judicial declaration that all asserted claims of the '535 Patent are invalid and unenforceable.

## COUNT XIX: DECLARATORY JUDGMENT OF BREACH OF RAND OBLIGATIONS (Against Dolby and Access Advance)

214. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

215. Dolby and/or its predecessors-in-interest entered into express or implied contractual commitments to the ITU relating to the licensing of patents essential to the AVC and HEVC standards on RAND terms. These commitments are valid, enforceable, and binding upon Dolby. These RAND commitments are enforceable obligations that run with the patents. Snap is an intended third-party beneficiary of these RAND commitments. Because Access Advance was authorized to offer and grant licenses under Dolby's RAND-encumbered patents, it was subject to the RAND obligations that ran with and burdened those patents. Moreover, Access Advance exercised its licensing authority on Dolby's behalf and could not, through delegated authority, engage in conduct that would have been inconsistent with Dolby's RAND obligations had Dolby undertaken that conduct directly.

216. Dolby has breached its RAND commitments by failing to offer Snap a license to its alleged AVC and HEVC standard-essential patents on fair, reasonable and nondiscriminatory terms and conditions.

217. Dolby has further breached its RAND commitments by failing to offer Snap a license to its patents allegedly covering video coding in the AV1 standard on RAND terms and conditions. Dolby's obligation to license patents that are essential to implementing the AVC or HEVC standards on non-discriminatory terms prohibits Dolby from discriminating against Snap by demanding, as a condition to any license to patents essential to the AVC or HEVC standard, supra-RAND royalties for patents allegedly necessary for video coding in the AV1 standard.

218. Through its licensing agent, Access Advance, Dolby has attempted to coerce Snap into accepting licensing terms that do not comply with Dolby's RAND obligations, including because the royalties demanded exceed a RAND royalty rate for any Asserted Patents that are allegedly essential to implementing the HEVC standard and because the offered license ties such

patents to additional patents that cover video coding standards beyond HEVC, including AV1, VVC, and VP9, while not covering AVC. Further, Dolby itself has not made any licensing offer to Snap for the Asserted Patents apart from Access Advance's non-RAND licensing demand.

219. At all relevant times, Access Advance acted as Dolby's licensing agent and sub-licensor with respect to patents allegedly essential to the HEVC and/or AV1 standards, including by implementing Dolby's licensing programs, communicating licensing positions to implementers, issuing licensing demands, and seeking royalties on Dolby's behalf.

220. Access Advance directly participated in and facilitated Dolby's breach of its RAND commitments by transmitting licensing demands, proposing licensing terms, and implementing licensing programs that demand supra-RAND royalties, attempt to impose unfair and unreasonable terms and conditions, and discriminate against Snap, including through the VDP Pool.

221. On information and belief, Access Advance derives revenues from administering the VDP pool licensing program and relies on the enforceability of the Asserted Patents to carry out that licensing program. Therefore, Access Advance has a direct, concrete financial interest in the enforceability of the Asserted Patents.

222. Declaratory relief concerning Dolby's RAND obligations must run against both Dolby and Access Advance to prevent Dolby from enforcing or circumventing its RAND commitments through its licensing agent. Access Advance implemented, enforced, and sought to benefit from Dolby's RAND-encumbered licensing obligations as Dolby's authorized licensing agent, and declaratory relief must therefore run against Access Advance to prevent circumvention of this Court's judgment.

223. Snap is entitled to a judicial determination and declaration that Dolby, directly and through its licensing agent Access Advance, has not offered Snap a license to Dolby's alleged

AVC or HEVC standard-essential patents on RAND terms and conditions, and that Dolby, directly and through its licensing agent Access Advance, has breached its RAND commitments to the ITU.

224. Snap is entitled to a judicial determination and declaration that Dolby, directly and through its licensing agent Access Advance, has not offered Snap a license to Dolby's patents allegedly covering video coding in the AV1 standard on RAND terms and conditions, and that Dolby, directly and through its licensing agent Access Advance, has breached its RAND commitments to the ITU.

225. Snap seeks a judgment jointly against Dolby and Access Advance declaring that all claims of the Asserted Patents are unenforceable based upon Dolby's breach, directly and through its licensing agent Access Advance, of its RAND commitments.

226. As a direct and proximate result of Dolby's breaches of its RAND commitments, including the conduct undertaken by and through Access Advance as Dolby's licensing agent, Snap has suffered and continues to suffer injury. Among other harms, Snap has been required to expend substantial resources responding to and defending against non-RAND licensing demands, investigating and evaluating the licensing positions advanced by Access Advance, participating in licensing negotiations conducted on non-RAND terms, and defending against litigation that was initiated without first providing Snap a RAND license offer. Unless declaratory and other relief is granted, Snap will continue to suffer ongoing injury from Dolby's and Access Advance's efforts to coerce acceptance of licensing terms that do not comply with Dolby's RAND obligations.

**COUNT XX: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**
**(Against Dolby and Access Advance)**

227. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

228. Through its statements, conduct, and relationship with the ITU, Dolby has express or implied contractual commitments to abide by the ITU's Patent Policy and Guidelines, and to offer licenses on RAND terms to any patents essential to implement the AVC or HEVC standards. These RAND commitments are enforceable obligations that run with the patents. Dolby's RAND obligation includes a prohibition against demanding supra-RAND rates for patents allegedly essential to implement the AV1 standard as a condition for licensing patents allegedly essential to implement to the AVC or HEVC standards, which is unfair, unreasonable, and discriminatory.

229. Every party producing products or delivering services that support the AVC or HEVC standards, including Snap, is an intended third-party beneficiary of Dolby's contractual commitments to the ITU.

230. At all relevant times, Access Advance acted as Dolby's authorized licensing agent in connection with negotiations, licensing demands, and enforcement conduct relating to patents allegedly essential to the HEVC standard, including communications with Snap regarding licensing terms and enforcement risk. Because Access Advance was authorized to offer and grant licenses under Dolby's RAND-encumbered patents, it was subject to the RAND obligations that ran with and burdened those patents. Moreover, Access Advance exercised its licensing authority on Dolby's behalf and could not, through delegated authority, engage in conduct that would have been inconsistent with Dolby's RAND obligations had Dolby undertaken that conduct directly.

231. Access Advance participated directly in Dolby's failure to negotiate in good faith by advancing licensing demands, proposing non-RAND terms, and facilitating enforcement actions without first offering Snap a license on RAND terms consistent with Dolby's obligations.

232. Because Access Advance controlled and executed material aspects of the licensing process on Dolby's behalf, declaratory relief concerning the breach of the duty of good faith and fair dealing must apply jointly to both Dolby and Access Advance.

233. The duty of good faith and fair dealing required that Dolby and Access Advance conduct licensing discussions in a manner reasonably directed toward reaching a RAND license. That duty included refraining from tactics designed to short-circuit negotiations, withholding information necessary to evaluate licensing terms, or using the threat of litigation to obtain leverage unrelated to the merits of the licensing positions.

234. Dolby, directly and through its licensing agent Access Advance, breached its obligation to negotiate in good faith and with fair dealing by, instead of offering Snap a license on RAND terms before filing this litigation, using threats of litigation while licensing discussions remained ongoing, failing to reasonably participate in the exchange of information necessary to evaluate licensing terms, frustrating the licensing discussions, and pursuing injunctive relief and substantial damages as litigation pressure to coerce acceptance of proposed licensing terms rather than engaging in good-faith licensing negotiations as part of a meaningful negotiation process consistent with its RAND obligations.

235. As a result of Dolby's breach, directly and through its licensing agent Access Advance, of its duty to negotiate in good faith and fair dealing, Snap has been injured in its business and property. Dolby's refusal, directly and through its licensing agent Access Advance, to offer a license to Snap on RAND terms before filing this action has caused Snap to incur unnecessary costs and unwarranted harm in defending this litigation.

236. Snap is entitled to a declaratory judgment that Dolby and Access Advance have not complied with their obligations to negotiate in good faith and fair dealing toward a RAND license.

237. As a direct and proximate result of Dolby's and Access Advance's failure to negotiate in good faith toward a RAND license, Snap has incurred substantial and unnecessary costs, including attorneys' fees, expert-consulting expenses, internal business costs, and other expenditures associated with responding to licensing demands and defending this action. Had Dolby and Access Advance complied with their obligations to negotiate in good faith and on RAND terms before initiating litigation, some or all of these costs could have been avoided.

**COUNT XXI: DECLARATORY JUDGMENT**
**OF UNENFORCEABILITY DUE TO EXPRESS WAIVER**
**(Against Dolby and Access Advance)**

238. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

239. As evidenced by the allegations above, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the enforceability of the patent claims licensed through Access Advance.

240. All claims of all Asserted patents that are licensed through Access Advance are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because (1) Access Advance, as Dolby's authorized licensing agent, irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and (2) because Dolby ratified that waiver through years of acquiescence by remaining in the pool, not disavowing the waiver, continuing to authorize Access Advance to act as its licensing agent, and acceptance of benefits of the increased licensing revenues resulting from the waiver.

241. On information and belief, Access Advance derives revenues from administering the VDP pool licensing program and relies on the enforceability of the Asserted Patents to carry

out that licensing program. Therefore, Access Advance has a direct, concrete financial interest in the enforceability of the Asserted Patents.

242. In addition, all claims of the '173 Patent are unenforceable against Snap's AVC Internet video that is free to end users because Dolby's authorized licensing agent, Via LA (f/k/a MPEG LA) irrevocably waived the right to seek royalty fees for such video content, and because Sharp ratified that waiver through years of acquiescence and acceptance of benefits, that waiver then ran with the patent when Sharp assigned the '173 patent to Dolby, and Dolby additionally ratified that waiver through years of acquiescence and acceptance of benefits.

243. Snap is entitled to a declaratory judgment that all claims of all Asserted Patents that are licensed through Access Advance are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming due to express waiver.

244. Snap is further entitled to a declaratory judgment that all claims of the '173 Patent are unenforceable against Snap's AVC Internet video that is free to end users due to express waiver.

## EXCEPTIONAL CASE

245. On information and belief, this is an exceptional case entitling Snap to an award of its attorneys' fees incurred in connection with defending this action pursuant to 35 U.S.C. § 285, as a result of, inter alia, Dolby's assertion of the Asserted Patents against Snap with the knowledge that Snap does not infringe any valid or enforceable claim of the Asserted Patents and/or that the Asserted Patents are invalid and/or unenforceable.

## PRAYER FOR RELIEF

Snap hereby requests that the Court deny Plaintiffs all relief they seek, and award Snap the following relief:

A. Entry of judgment in Snap's favor and against Dolby on each and every cause of action in Dolby's Complaint;

B. Entry of judgment that the Asserted Patents, and each and every asserted claim thereof, are not infringed by Snap, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise;

C. Entry of judgment that the Asserted Patents, and each and every asserted claim thereof, are invalid and/or unenforceable;

D. Entry of judgment declaring that Dolby, directly and through its licensing agent Access Advance, has breached its RAND commitments to the ITU and has not offered Snap a license on fair, reasonable, and nondiscriminatory terms;

E. Entry of judgment that Dolby, directly and through its licensing agent Access Advance, has breached its duty of good faith and fair dealing to negotiate a RAND license with Snap prior to filing this lawsuit;

F. Entry of judgment declaring that the Asserted Patents are RAND-encumbered and that Dolby, directly and through its licensing agent Access Advance, is obligated to offer Snap a license on RAND terms;

G. Entry of judgment declaring that Dolby, directly and through its licensing agents Access Advance and Via LA, waived any ability to enforce the Asserted Patents against Snap;

H. Entry of judgment that Dolby's patent rights in the Asserted Patents have been exhausted and/or that Snap's Accused Services are licensed under Dolby's and/or Access Advance's agreements with third parties;

I. Entry of an order that Snap is the "prevailing party" and that this case is "exceptional" within the meaning of 35 U.S.C. § 285, and an award granting Snap its reasonable attorneys' fees and costs, as permitted by law or equity;

J. An award of prejudgment interest to Snap at the legal rate through the date of judgment; and

K. For any and all other legal and equitable relief, including injunctive relief and restitution, as may be available under law and that the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Snap demands a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendant and Counterclaim-Plaintiff Snap Inc.*

OF COUNSEL:

Kathi Vidal
Alexander P. Ott
Joseph C. Masullo
WINSTON TAYLOR LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000

Eimeric Reig-Plessis
WINSTON TAYLOR LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5891
(415) 591-1000

Carson Swope
WINSTON TAYLOR LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
(650) 858-6500

August 31, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 31, 2026, upon the following in the manner indicated:

Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
FARNAN LAW, LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Kevin Schubert, Esquire
Robert Burns, Esquire
MCKOOL SMITH P.C.
1301 6th Ave, 32nd Floor
New York, NY 10019
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Warren Lipschitz, Esquire
Greg Saltz, Esquire
MCKOOL SMITH P.C.
300 Crescent Court
Dallas, TX 75201
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Mitch Verboncoeur, Esquire
McKool Smith P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Christopher McNett, Esquire
Kyra Mouser, Esquire
McKool Smith P.C.
1717 K Street, NW, Suite 1000
Washington, DC 20006
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

*/s/ Jennifer Ying*
Jennifer Ying (#5550)