IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOLBY VIDEO COMPRESSION, LLC and DOLBY INTERNATIONAL AB,<br><br>Plaintiffs,<br><br>v.<br><br>SNAP INC.,<br><br>Defendant. | ) | C.A. No. 26-317 (JLH) |
| SNAP INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>DOLBY VIDEO COMPRESSION, LLC, DOLBY LABORATORIES, INC., DOLBY INTERNATIONAL AB, and ACCESS ADVANCE LLC,<br><br>Counterclaim-Defendants. | ) | |

**DEFENDANT SNAP INC.'S ANSWERING BRIEF IN OPPOSITION TO DOLBY COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS**

OF COUNSEL:

Kathi Vidal
Alexander P. Ott
Joseph C. Masullo
WINSTON TAYLOR LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000

Eimeric Reig-Plessis
WINSTON TAYLOR LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5891
(415) 591-1000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendant and Counterclaim-Plaintiff Snap Inc.*

Carson Swope
WINSTON TAYLOR LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
(650) 858-6500

September 28, 2026

**TABLE OF CONTENTS**


**Page**

I. STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ............................ 1

II. SUMMARY OF ARGUMENT ............................ 2

III. STATEMENT OF FACTS ............................ 3

IV. LEGAL STANDARD ............................ 5

V. ARGUMENT ............................ 6

A. Dolby's arguments for partial dismissal of Counts XIX (Breach of RAND Obligations) and XX (Breach of Duty of Good Faith and Fair Dealing) fail because they attack a theory that Snap is not advancing. ............................ 6

B. Dolby asks this Court to improperly resolve factual disputes over Count XXI for Declaratory Judgment of Unenforceability Due to Express Waiver. ........ 9

C. Dolby generalizes Snap's allegations to the point of abstraction to claim that Count XX (Breach of Duty of Good Faith and Fair Dealing) is improperly duplicative of Count XIX (Breach of RAND Obligations). ............................ 16

VI. CONCLUSION ............................ 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Apple, Inc. v. Motorola Mobility, Inc.*,
886 F. Supp. 2d 1061 (W.D. Wis. 2012) ....................4, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................... *passim*

*Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*,
979 F.3d 491 (6th Cir. 2020) ....................16

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016).................... *passim*

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
269 F.3d 187 (3d Cir. 2001)....................14

*Flora v. County of Luzerne*,
776 F.3d 169 (3d Cir. 2015).................... *passim*

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020)....................12

*HSMY, Inc. v. Getty Petrol. Mktg., Inc.*,
417 F. Supp. 2d 617 (D. Del. 2006)....................17

*Jack Eckerd Corp. v. Dart Grp. Corp.*,
621 F. Supp. 725 (D. Del. 1985)....................12

*Lony v. E.I. du Pont de Nemours & Co.*,
821 F. Supp. 956 (D. Del. 1993)....................11, 16

*Microsoft Corp. v. Motorola, Inc.*,
864 F. Supp. 2d 1023 (W.D. Wash. 2012)....................4, 8, 17, 20

*Migliore ex rel. Migliore v. Vision Solar LLC*,
160 F.4th 79 (3d Cir. 2025) ....................13

*Neitzke v. Williams*,
490 U.S. 319 (1989)....................5

*Opengate Cap. Grp. LLC v. Thermo Fisher Sci. Inc.*,
2014 WL 3367675 (D. Del. July 8, 2014) ....................17

*Qualcomm Inc. v. Broadcom Corp.*,
548 F.3d 1004 (Fed. Cir. 2008)....................9

*Realtek Semiconductor Corp. v. LSI Corp.*,
2012 WL 4845628 (N.D. Cal. Oct. 10, 2012)....................17

*Redwood Techs., LLC v. Netgear, Inc.*,
2024 WL 4591852 (D. Del. Oct. 28, 2024) ....................19

*Riverside Mem'l Mausoleum, Inc. v. UMET Tr.*,
581 F.2d 62 (3d Cir. 1978)....................9

*Rsch. In Motion Ltd. v. Motorola, Inc.*,
644 F. Supp. 2d 788 (N.D. Tex. 2008) ....................20

*Sprint Commc'ns Co. L.P. v. Cequel Commc'ns, LLC*,
2022 WL 609213 (D. Del. Jan. 27, 2022)....................15, 16

*TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*,
943 F.3d 1360 (Fed. Cir. 2019)....................4

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
563 F.3d 1271 (Fed. Cir. 2009)....................11

*USX Corp. v. Prime Leasing Inc.*,
988 F.2d 433 (3d Cir. 1993)....................17

*Valli v. Avis Budget Grp. Inc*,
162 F.4th 396 (3d Cir. 2025) ....................15

*In re Volkswagen Grp. of Am., Inc.*,
28 F.4th 1203 (Fed. Cir. 2022) ....................12

*W. Elec. Co. v. Pacent Reproducer Corp.*,
42 F.2d 116 (2d Cir. 1930)....................12

**Rules**

Fed. R. Civ. P. 12(b)(1)....................6

Fed. R. Civ. P. 12(b)(6)....................5, 6

## I. STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

This case is about Plaintiff Dolby's misguided attempt to hold Defendant Snap Inc. liable for alleged infringement of video coding patents that are invalid, that Snap never infringed, and for which Dolby's licensing agents—Access Advance LLC and Via LA—unequivocally and unconditionally relinquished the right to seek royalty fees for video streaming.[1]

On March 25, 2026, despite never having even attempted to negotiate any license, let alone on fair, reasonable, and nondiscriminatory ("RAND")[2] terms, Dolby sued Snap for infringement of four patents, as well as for a declaratory judgment that it has complied with its RAND obligations. *See* D.I. 1. After Snap answered and counterclaimed (D.I. 13), Dolby filed the operative First Amended Complaint, expanding its infringement allegations to five additional patents (collectively, with the original four, the "Asserted Patents"). *See* D.I. 21 ("FAC"). Snap again answered and counterclaimed (D.I. 25), and on August 31, 2026—after Dolby and Counter-Defendant Access Advance moved to dismiss Snap's counterclaims (D.I. 30, 31, 32, 33)—Snap filed its operative Answer and Amended Counterclaims. D.I. 37 ("CClaims").

Snap asserts counterclaims for non-infringement and invalidity of each of the Asserted Patents. *See id.*, Counts I to XVIII. Snap further seeks declaratory judgments that Dolby and Access Advance breached Dolby's RAND commitments (*id.*, Count XIX), as well as their associated duties of good faith and fair dealing. *Id.*, Count XX. Snap also seeks a declaratory judgment that Dolby's HEVC- and AVC-related patents are unenforceable due to express waiver. *Id.*, Count XXI. Dolby and Access Advance moved to dismiss Counts XIX, XX, and XXI. *See* D.I. 39, 40 ("MTD"); *see also* D.I. 41, 42 (Access Advance briefing). This is Snap's opposition.

[1] Snap uses "Dolby" to refer to Plaintiff and Counter-Defendants Dolby Video Compression, LLC and Dolby International AB, together with Counter-Defendant Dolby Laboratories, Inc.

[2] Snap uses the term "RAND" throughout this brief interchangeably with the term "FRAND" for Fair, Reasonable, and Nondiscriminatory.

## II. SUMMARY OF ARGUMENT

Dolby's motion misstates Snap's counterclaims and attacks strawman theories that Snap does not assert. As shown below, Dolby's arguments do not undermine Snap's actual legal theories, which are adequately pleaded. Moreover, Dolby seeks dismissal on classic fact questions—including over agency relationships and good faith—asking this Court to decide fact-intensive issues on the pleadings that require discovery. This is improper, as Snap's well-pleaded allegations must be taken as true at this stage. These problems permeate Dolby's motion, which must be denied for the following reasons.

***First***, Dolby attacks a contractual theory Snap is not advancing to argue Counts XIX and XX—for breach of RAND obligations and the duties of good faith and fair dealing—must fail as to Dolby's AV1-related patents. Dolby says Snap did not (and cannot) plead any contract requiring Dolby to license its AV1 patents on RAND terms. But that is not Snap's theory for seeking relief. Instead, Snap's counterclaims assert that, by offering only non-RAND licensing for HEVC-related patents that also bundle Dolby's AV1-related patents, Dolby has breached its RAND commitments, which require Dolby to make its HEVC-related patents "accessible to everybody without undue constraints"—as well as the implied duties of good faith and fair dealing that inhere in those contracts. Snap has adequately alleged facts that state claims for breach on this basis.

***Second***, Dolby makes multiple errors in seeking to dismiss Snap's counterclaim for waiver. Dolby asserts that waiver cannot form the basis for a declaratory judgment counterclaim, yet the Federal Circuit has implicitly recognized that a party can pursue a judgment of unenforceability by way of a counterclaim grounded in waiver. And Snap's counterclaim for waiver seeks broader relief than its affirmative defense, since the counterclaim would render additional Dolby patents in the VDP unenforceable. Dolby also improperly asks this Court to resolve a series of fact-intensive disputes in its favor to dismiss Snap's express-waiver counterclaim. Among these

disputes are whether Access Advance and Via LA are Dolby's agents, such that their patent-pool announcements bind Dolby; the scope of Dolby's agency relationships with, and delegated authority to, Access Advance and Via LA; and whether Dolby's acceptance of years of royalty distributions that omitted any royalties for streaming uses—coupled with its failure to protest or otherwise correct Access Advance's and Via LA's unambiguous announcements relinquishing the right to charge royalties for those uses—amounted to adoption or ratification of the patent-pool administrators' express waivers. Such factual disputes cannot be resolved at the motion to dismiss stage. *See Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015).

***Third***, Dolby constructs another strawman to argue that Snap's two counterclaims for breach—again, for breach of RAND obligations (Count XIX) and of the duties of good faith and fair dealing (Count XX)—are duplicative. Not so. Dolby claims Snap identified no implied contractual duties distinct from Dolby's RAND obligations, and Dolby generalizes the pleaded facts to abstraction to argue Count XX fails because it is "based on exactly the same acts" as Count XIX. But Snap pleaded good-faith and fair-dealing duties separate from Dolby's RAND obligations. And Snap pleaded conduct by both Dolby and its licensing agent, Access Advance, that demonstrates their failure to negotiate with Snap fairly and in good faith.

Dolby's motion to dismiss should be denied.

## III. STATEMENT OF FACTS

Snap is an American technology company and creator of the communication platform Snapchat and augmented reality smart glasses Specs. Dolby alleges it owns the Asserted Patents, one of which it claims is practiced by implementing a video coding standard called AV1, and the other eight it claims are practiced by implementing video coding standards called HEVC and/or AVC. *See* FAC ¶¶ 6, 31–32, 44; MTD at 4. Dolby committed to the International Telecommunication Union (the "ITU")—a standard-setting organization ("SSO")—that it would

license any standard-essential HEVC- and AVC-related patents on RAND terms and conditions. FAC ¶¶ 41–44; MTD at 1, 4; CClaims ¶¶ 51–52, 215. Snap is a third-party beneficiary of Dolby's RAND commitments to the ITU.[3]

Access Advance is a patent-pool administrator founded in 2015 and partially owned by Dolby that offers licenses to allegedly standard-essential video-coding technology patents. CClaims ¶¶ 7, 18, 36. Access Advance acts as Dolby's licensing agent, including with respect to Dolby's HEVC- and AV1-related patents. *Id.* ¶¶ 21, 25, 36, 215, 219, 230. Indeed, Dolby is among Access Advance's original licensors in its HEVC Advance Patent Pool, which licenses video-coding patents for devices that can play HEVC-encoded video. *Id.* ¶¶ 20–21, 31.

On March 13, 2018, Access Advance announced that it would "no longer license nor seek royalty fees for *non-physical HEVC content distribution* including Internet streaming." *Id.* ¶¶ 22–25, 240. Since then, Dolby continued to participate in, and accept royalty revenue distributions from, the HEVC Advance Patent Pool. *Id.* ¶¶ 27, 31, 240. Via LA, now a subsidiary of Dolby Laboratories, Inc., and the patent-pool administrator for Dolby's AVC-related patents, similarly announced in 2010, on behalf of itself and its licensors, that it would "continue," indefinitely, "not to charge royalties for Internet Video that is free to end users (known as 'Internet Broadcast AVC Video')." *Id.* ¶¶ 37–41, 242. As with the HEVC Advance Patent Pool, Dolby has continued to participate in, and accept royalty revenue from, Via LA's AVC patent pool. *Id.* ¶¶ 41, 44–46, 242.

Dolby alleges that Snap infringes each of the Asserted Patents. FAC ¶¶ 3, 13, 24, 37; MTD at 4. Snap does not practice any claim of the Asserted Patents (*see* CClaims ¶¶ 63, 80, 96, 113,

---

[3] *Cf. TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, 943 F.3d 1360, 1364 (Fed. Cir. 2019) ("Because th[e FRAND] obligation is intended to benefit implementers of [an SSO's] standards, the implementers may assert their rights created by the FRAND obligation as third-party beneficiaries."); *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1085 (W.D. Wis. 2012) (holding prospective licensee to be third party beneficiary of patent-holder's agreements with SSO); *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1032 (W.D. Wash. 2012) (same).

130, 147, 164, 181, 200), and Snap's uses of encoded video fall within the uses for which Access Advance and Via LA waived the right to seek royalties (*see id.* ¶¶ 240, 242). Dolby has never made an offer directly to Snap to license its patents, but Dolby's authorized licensing agent, Access Advance, has made an offer to Snap to join its Video Distribution Patent Pool (the "VDP"). *Id.* ¶¶ 34, 54. The VDP is not limited to the HEVC-related asserted patents but instead bundles those patents with "over 40,000" others, including patents for completely unrelated coding technologies, like AV1, VVC, and VP9. *See* MTD at 3–4; CClaims ¶¶ 35, 53–54, 57–59, 215–18. As detailed in Snap's counterclaims, neither Dolby nor Access Advance have negotiated fairly or in good faith with Snap for a license to any Asserted Patents. *Id.* ¶¶ 55–56, 218, 231, 233–34.

## IV. LEGAL STANDARD

A district court may not dismiss pursuant to Rule 12(b)(6) unless a claim lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Instead, "the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citation and marks omitted). Nor does the plausibility standard "impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556. Instead, a claim suffices as long as its "[f]actual allegations [are] enough to raise a right to relief above the speculative level." *Id.* at 555 (citation omitted). But "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting parenthetically *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). And a district court may not resolve factual disputes when adjudicating a Rule 12(b)(6) motion. *Flora*, 776 F.3d at 175. Rather, in evaluating a claim's sufficiency, a district court must

credit all well-pleaded facts, proceeding "on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citations omitted).

## V. ARGUMENT

### A. Dolby's arguments for partial dismissal of Counts XIX (Breach of RAND Obligations) and XX (Breach of Duty of Good Faith and Fair Dealing) fail because they attack a theory that Snap is not advancing.

Dolby does not dispute that Snap has pleaded viable counterclaims with respect to Dolby's HEVC- and AVC-related patents in Counts XIX and XX, which seek declaratory judgments that the Asserted Patents are unenforceable because Dolby (itself and through Access Advance) breached its RAND obligations and associated implied duties of good faith and fair dealing, respectively. *See* CClaims ¶¶ 225, 236. Dolby asserts, however, that Counts XIX and XX fail as to its AV1-related patents because Snap cannot plead a contractual RAND obligation as to those patents.[4] Dolby argues that "a valid contract and a breach of a corresponding contractual obligation are required elements of any breach of contract or breach of the duty of good faith and fair dealing claim." *See* MTD at 8. But Dolby's argument attacks a theory Snap is not advancing.

Contrary to Dolby's strawman argument, Snap's counterclaims are not premised on Dolby having contractual RAND obligations that encumber the alleged AV1-related patents. Instead, Snap is asserting that Dolby (through Access Advance) has breached its contractual commitments to license its allegedly standard-essential patents *for HEVC* on RAND terms by offering to license those patents only bundled with other, non-essential patents—related to entirely distinct video coding standards, like AV1—and charged at supra-RAND royalty rates. *See* CClaims ¶¶ 53–54, 57–59, 215–18. Likewise, Snap is asserting that Dolby (through Access Advance) has breached

[4] Dolby's Rule 12(b)(6) and 12(b)(1) arguments collapse into this single issue, as Dolby argues that lack of a contract both defeats Snap's claim on the merits and means there is "no actual case or controversy appropriate for declaratory judgment." *See* MTD at 7–8, 11.

the duties of good faith and fair dealing implied in its ITU contracts based on its conduct in negotiating a license to its *HEVC*-related patents. *See id.* ¶¶ 55–56, 218, 231, 233–34.

Snap has, to-date, received only one offer to license *any* of the Asserted Patents: Access Advance's offer to join the VDP. *Id.* ¶ 53–54, 218. As Dolby acknowledges, the VDP "includes 45 licensors, only two of whom are Dolby entities, and over 40,000 patents, many of which are foreign patents." MTD at 3–4. And those 40,000 patents pertain not only to the HEVC standard but also three other video coding standards: AV1, VVC, and VP9.[5] *See id.*; CClaims ¶¶ 35, 54.

Dolby's offer, through Access Advance, of a VDP license is not a RAND offer to Dolby's HEVC-related patents. Indeed, it cannot be—because it is conditioned on licensing AV1-related (and VVC- and VP9-related) patents too (among other reasons). *See* CClaims ¶ 217. This offer inherently exceeds RAND terms for licensing Dolby's HEVC-related patents because the offer tacks on the costs of also licensing AV1-related patents, among many others.

Dolby, through Access Advance, chose to offer a license its HEVC-related patents—as to which it admits it has RAND obligations (MTD at 4, 8)—solely in a bundle with, among other things, its AV1-related patents. Dolby, and its licensing agent Access Advance, are thus obligated to offer that HEVC-inclusive bundle on RAND terms and conditions. CClaims ¶¶ 52, 58. That means it cannot charge supra-RAND rates for a license to join the VDP. *Id.* ¶¶ 54, 216, 218. Dolby (or Access Advance, as its licensing agent) also cannot discriminate against Snap by conditioning licensing of its HEVC-related patents on also licensing patents for AV1 (or other, unnecessary video coding standards) at the supra-RAND rates that Access Advance has offered to Snap so far. *See id.* ¶¶ 58, 217–18. Nor can Dolby or Access Advance discriminate against Snap by refusing to

[5] The VDP does not cover Dolby's AVC (allegedly) standard-essential patents, which are instead licensed through another Dolby licensing agent, Via LA. CClaims ¶¶ 37, 46, 54; MTD at 4. Dolby has not made an offer to license its AVC-related patents to Snap at all, let alone on RAND terms, either directly or through Via LA. *See* CClaims ¶¶ 53–54, 218.

offer the same RAND terms and conditions for AV1-related patents that they have offered to other licensees as part of the VDP bundle including HEVC-related patents. *See id.* Indeed, Dolby (and any agent offering or negotiating licenses on its behalf) is bound by the ITU-T Common Patent Policy, which has as its "sole objective" ensuring that essential patents "be accessible to everybody *without undue constraints*." D.I. 21-10 at 2 (emphasis added); *accord Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1034 (W.D. Wash. 2012) (noting same).

Dolby says this bundling theory is inconsistent with Snap's requested relief: a declaration that Dolby "has not offered Snap a license to Dolby's patents allegedly covering video coding in the AV1 standard on RAND terms and conditions." MTD at 9; CClaims ¶ 224. As outlined above, however, that is not true. Dolby, through Access Advance, has bundled its AV1-related patents as required add-ons through the VDP for licensing its HEVC-related patents, which Dolby committed to licensing on RAND terms. And Dolby has yet to make any offer to Snap to license Dolby's HEVC-related patents separately from Access Advance's offer to join the VDP. The declaration Snap seeks is thus entirely consistent with Snap's pleaded theory of breach.

In sum, Snap does not need to claim that Dolby entered into and then breached contractual obligations specific to the alleged AV1-related patents. Instead, Snap's entitlement to a declaratory judgment with respect to any AV1-related patents arises from Dolby's (and its agent Access Advance's) contractual obligations to license Dolby's *HEVC-related* patents on RAND terms, which are included in the VDP. This is sufficient to state a claim on the pleadings, and the merits of Snap's bundling theory cannot be resolved without discovery. *See Connelly*, 809 F.3d at 789 ("[T]he post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].").

**B. Dolby asks this Court to improperly resolve factual disputes over Count XXI for Declaratory Judgment of Unenforceability Due to Express Waiver.**

Next, Dolby raises a series of factual disputes and then asks this Court to resolve those disputes in its favor to dismiss Count XXI (for declaratory judgment of unenforceability due to express waiver). MTD at 12–15. That is improper because, "insofar as there is a factual dispute" at the motion to dismiss stage, "the court may not resolve it." *Flora*, 776 F.3d at 175.

Equally misguided is Dolby's argument that Snap cannot bring a counterclaim for waiver merely because waiver is also an affirmative defense. Dolby's own case law recognizes that "the facts underlying some defenses might also support a counterclaim." *Riverside Mem'l Mausoleum, Inc. v. UMET Tr.*, 581 F.2d 62, 68 (3d Cir. 1978). Dolby also says Count XXI is a mispleaded affirmative defense because counterclaims entitle a defendant to "some amount of affirmative relief," whereas defenses "merely preclude[] or diminish[] the plaintiff's recovery." MTD at 12 (quoting *Riverside*, 581 F.2d at 68). But Snap is not asserting express waiver solely to nullify Dolby's infringement claims.[6] To the contrary, Snap's counterclaim seeks "some amount of affirmative relief," in the form of a declaration that Dolby's HEVC and AVC standard-essential patents are unenforceable due to express waiver—including as to other patents that Dolby licenses through the VDP. *See* CClaims ¶¶ 243–44. For this reason alone, the relief that Snap seeks in its counterclaim for waiver is broader than the relief it seeks in its affirmative defense.

The Federal Circuit has implicitly recognized that a party may pursue such relief via a counterclaim. In *Qualcomm Inc. v. Broadcom Corp.*, a patent owner appealed a judgment of unenforceability, arguing that, "because waiver was pled as an affirmative defense, it cannot result in a judgment of unenforceability." 548 F.3d 1004, 1024–25 (Fed. Cir. 2008). The Federal Circuit disagreed, "see[ing] no reason" why a district court could not enter a judgment of unenforceability

[6] Although Snap is asserting that too. *See* D.I. 37 (Answer) at 57–58 (Fifth Defense).

based on waiver, even when "raised . . . as an affirmative defense *rather than as a counterclaim or cross-claim*." *Id.* (emphasis added). Dolby is thus incorrect that Snap's counterclaim is an improperly pleaded affirmative defense entitling Snap to no relief independent of Dolby's infringement claims. Indeed, there is nothing wrong with asserting both a defense and a declaratory judgment counterclaim that are premised on the same underlying facts (and Dolby does not challenge Snap's ability to do so for non-infringement and invalidity, for example).

Turning to factual issues, Dolby disputes that statements by Access Advance and Via LA—both unequivocally, and without limitation, relinquishing the right to charge royalty fees for Snap's use of Dolby's HEVC- and AVC-related patents—constitute waiver on its part. But Dolby's position cannot be squared with the well-pleaded facts, which must be accepted as true. *See Twombly*, 550 U.S. at 555. In 2015, Dolby founded Access Advance—which is partially owned by Dolby Laboratories—to monetize its patents by forming and administering patent pools for "alleged standard-essential patents for standards-based video codec technologies." CClaims ¶ 15. Dolby was then among Access Advance's original patent licensors, for its HEVC Advance Patent Pool. *Id.* ¶¶ 18, 21. And Dolby continues to be part-owner of Access Advance. *Id.* ¶¶ 7, 36.

Both Dolby and Access Advance, therefore, have (and historically had) a financial interest in the success of HEVC as a standard to encode video content for users. *Id.* ¶¶ 7, 18, 20–21, 32, 36. For example, the increased use of HEVC to encode video on the Internet motivates device manufacturers to support HEVC decoding on their devices, which in turn results in more licensing revenue for hardware-based licensing pools like HEVC Advance. *See id.* ¶¶ 30, 32. So, in 2018, Access Advance announced it would stop charging for certain uses of HEVC—namely, "for *non-physical HEVC content distribution* including Internet streaming"—with the express aim "to further accelerate HEVC adoption and support streaming . . . distributors to bring the best video

experience to consumers." *Id.* ¶¶ 22–25. In other words, Dolby and Access Advance affirmatively decided—and "outright declare[d]" an intent (*see* MTD at 13)—to stop charging to license for streaming uses in order to increase overall adoption of the video coding technologies Dolby's patents allegedly support. Access Advance then celebrated when, within just weeks, this decision not to seek royalties for streaming had its intended effect, as demonstrated by "the positive market reaction" of a dozen new entities joining Access Advance's HEVC Advance Patent Pool as licensors or licensees. CClaims ¶¶ 28, 30, 32. In light of these facts, Dolby cannot now be heard to assert that Snap's counterclaim of unenforceability due to express waiver is implausible.[7]

Dolby's arguments also fail closer scrutiny, just as they fail when viewed against this big-picture backdrop. First, Dolby denies that Access Advance and Via LA are its agents, which is another fact-intensive question that cannot be addressed on the pleadings. *See Lony v. E.I. du Pont de Nemours & Co.*, 821 F. Supp. 956, 959 (D. Del. 1993) (explaining that "whether an agency relationship was created . . . is a mixed question of law and fact"). Dolby claims that its "exclusionary rights" to enforce its patents against infringers is "distinct from Dolby's commercial decisions to license its patents bilaterally or through patent pools." MTD at 13. But the rights to exclude (or enforce) and to license are simply opposite sides of the same coin, as "a patent license agreement is in essence nothing more than a promise by the licensor not to sue the licensee." *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009)

[7] Dolby's now-subsidiary, Via LA (formerly MPEG LA), likewise announced in August 2010 that it was extending, indefinitely, its decision not to charge royalties "for Internet Video that is free to end users (known as 'Internet Broadcast AVC Video')," similarly supporting Snap's claim of express waiver as to Dolby's AVC-related patents. *See* CClaims ¶¶ 37–48. Dolby argues—in a single sentence—that it cannot be held "liable for the acts of its subsidiaries." MTD at 15. That is beside the point. The issue here is not whether Dolby can be *liable* for Via LA's acts—but whether those acts may plausibly *bind* Dolby as Via LA's principal that acquiesced to and accepted Via LA's acts. In other words, what matters is that, in the context of licensing AVC-related patents, Via LA acts as Dolby's agent—and expressly waived the right to charge royalty fees for those patents.

(citation omitted); *id.* at 1276 ("In its simplest form, a license means only leave to do a thing which the licensor would otherwise have a right to prevent." (quoting parenthetically *W. Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118 (2d Cir. 1930))); *id.* ("[W]hether an agreement is framed in terms of a 'covenant not to sue' or a 'license'" is a difference "only . . . of form, not substance."). And to the extent there is any difference between Dolby's "exclusionary rights" and its "commercial decisions" to delegate licensing authority, Access Advance's express waiver covered both, declaring, on behalf of itself and the HEVC Advance Patent Pool licensors, that it "will no longer license *nor* seek royalty fees." *See* CClaims ¶¶ 22–25 (emphasis added). Moreover, Dolby delegated authority to Access Advance to act as Dolby's agent in numerous ways—not just in licensing. Beyond delegated authority to make licensing offers and enter licensing agreements (*id.* ¶¶ 18–20, 25, 36), Access Advance exercises authority over whether patents can be enforced. *Id.* ¶¶ 13, 36, 55, 234. For example, it exercises authority to enter into covenants and waivers of both the right to sue for infringement and the right to collect royalties. *See id.* ¶¶ 22–25.

Dolby nonetheless claims Snap has not adequately alleged Dolby's "control" over Access Advance or otherwise satisfied the "indicia for when a sales representative is an agent." MTD at 14–15. But, as Dolby's authority shows, an agency relationship does not require actual, ongoing, day-to-day control. Rather, it requires only "the principal's *right to* direct or control the agent's actions," including the right to exert "interim control" over how delegated authority is exercised—in contrast to those merely contracting to receive a service, who lack interim control over how that service is rendered. *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1208–09 (Fed. Cir. 2022) (quoting *In re Google LLC*, 949 F.3d 1338, 1342 (Fed. Cir. 2020)); *accord* *Jack Eckerd Corp. v. Dart Grp. Corp.*, 621 F. Supp. 725, 732 (D. Del. 1985) ("The 'touchstone' of the agency relationship is the principal's *right to control* the agent." (emphasis added)). And Snap has

plausibly alleged facts regarding Dolby's right to control Access Advance, as Dolby itself founded Access Advance, was among its original patent licensors, and (as Dolby does not deny) continues to be Access Advance's part-owner. *See* CClaims ¶¶ 7, 18, 21, 36.

Moreover, to the extent Dolby's New Jersey-law sales-representative authority would even apply here—it does not—Snap has also adequately pleaded facts satisfying those indicia. *See* MTD at 14–15 (citing *Migliore ex rel. Migliore v. Vision Solar LLC*, 160 F.4th 79, 87 (3d Cir. 2025)). First, Access Advance is unquestionably "empowered 'to conduct and conclude' transactions for" Dolby as its patent pool administrator. *See* CClaims ¶¶ 20–22, 29. Second, Access Advance is "empowered to speak as" Dolby, as it does when it offers licenses to join its patent pools—and when it announces decisions about the royalty fees it will (or will not) seek on behalf of Dolby and its other licensors. *See id.* ¶¶ 21–22, 24–25. Indeed, Dolby cannot seriously dispute that Access Advance is "empowered to speak" on its behalf, considering Dolby pleaded that it "has negotiated in good faith with Snap, including for example, *through negotiations between Snap and Access Advance*"—and asks this Court for a declaration that *Access Advance's* offers to Snap satisfy Dolby's ITU RAND obligations. *See* FAC ¶¶ 578, 581–82 (emphasis added). Third, Dolby exercises control over how it is represented to third parties by Access Advance, including through its choice of patents to offer through Access Advance's patent pools. *See* CClaims ¶¶ 22, 24–25. And fourth, Dolby benefits financially from its agency relationship with Access Advance, not only through royalty revenue distributions but through the increased adoption Access Advance's royalty-waiver strategies have stimulated. *See id.* ¶¶ 27, 29, 31–32.

At any rate, the existence and scope of the agency relationship here is a "fact-intensive inquiry" that cannot be resolved on a motion to dismiss in advance of discovery—including disclosure of the agreements between Dolby and Access Advance (and Via LA)—illuminating the

nature, terms, and scope of the relationship between Dolby and its patent pool administrators. *See* *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 198–99 (3d Cir. 2001); *Flora*, 776 F.3d at 175 (At the motion to dismiss stage, "[t]he district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it."); *Connelly*, 809 F.3d at 789 (claim proceeding past plausibility review is entitled to "reasonable expectation that discovery will reveal evidence of the necessary element[s]").

Dolby further denies that comprehensive waiver—encompassing both patent-pool and bilateral licensing—would be within the scope of any agency relationship that did exist between it and Access Advance. *See* MTD at 14–15. But Snap has adequately alleged not just that Access Advance "could" (*see* MTD at 14) but in fact does "grant releases" of rights to enforce the patents in its patent pools, on behalf of itself, its licensors (including Dolby), and the licensors' affiliates. CClaims ¶ 25. Dolby does not deny that Access Advance has, indeed, granted such releases with respect to its patents—arguing only that such waivers could only apply to pool licensing, because that is the purported scope of AA's authority, and, further, only in the context of "executed license[s]." *See* MTD at 14 & n.5. But, again, the scope of any such authority to grant releases—or to bind Dolby—is factually disputed and not a question that can be answered without discovery into both Access Advance's agreements with patent-pool licensors and its executed waivers. *Rhone Poulenc*, 269 F.3d at 198–99. To the extent Dolby and Access Advance seek early resolution of this issue, they can and should immediately produce these agreements, which are highly relevant. For now, Snap has sufficiently alleged that Access Advance has such authority—facts this Court must take as true at this stage. *See Twombly*, 550 U.S. at 555.

Relatedly, Dolby asserts that, in addition to licensing through Access Advance and Via LA pools, it has been, and still is, willing to license "bilaterally"—and that any waiver by Access

Advance or Via LA does not inhibit its ability to do so. MTD at 13–15. Again, this is a classic factual dispute that this Court may not resolve on a motion to dismiss. *See Flora*, 776 F.3d at 175. Notably, Dolby has failed to make a single bilateral licensing offer to Snap (on RAND terms or otherwise), proceeding instead exclusively through Access Advance. *See* CClaims ¶¶ 53–54.

Lastly, Dolby argues that its "years of acquiescence and acceptance of benefits" "are insufficient" to amount to express waiver—claiming that "[s]ilence, even misleading silence, is not enough for acquiescence and waiver." MTD at 15 (quoting *Sprint Commc'ns Co. L.P. v. Cequel Commc'ns, LLC*, 2022 WL 609213, at *4 (D. Del. Jan. 27, 2022)). But Snap is not asserting that Dolby waived its right to seek royalties for the Asserted Patents based solely on its "silence." To be sure, Dolby never protested when its licensing agent, Access Advance, expressly waived that right by announcing it would not seek license fees for video streaming (*see* CClaims ¶ 26, 240)—thereby conveying to the licensing public that Access Advance had indeed acted with Dolby's delegated authority. But Dolby did more than stand silent. It also adopted or ratified its licensing agents' express waivers through its subsequent conduct. Indeed, Dolby signaled its ratification of that announcement by collecting—for nearly *seven years*—royalty distributions that included not a dime "for non-physical HEVC content distribution including Internet streaming." *See id.* ¶¶ 27, 31, 240.[8] Dolby's own case law—including *Sprint*, where "numerous conversations" about "ongoing other business" between the patent owner and user "raise[d] a genuine issue of material fact as to whether Sprint affirmatively consented to [the user's alleged] infringement," *see* 2022 WL 609213, at *4—supports this distinction between "silence" and inferences of waiver that can be drawn from conduct, including "a party's actions (or inactions)." *See also Valli v. Avis Budget*

[8] Sharp, Dolby's predecessor-in-interest as to its AVC-related patents, likewise signaled its ratification by years of collecting distributions that included no royalties "for Internet Video that is free to end users (known as 'Internet Broadcast AVC Video')," as did Dolby after it was assigned the relevant patents in 2015. *See* CClaims ¶¶ 44–46, 242.

Grp. Inc, 162 F.4th 396, 409–10 (3d Cir. 2025) (quoting parenthetically *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 497 (6th Cir. 2020)).

Moreover, *Sprint* cites no authority to support the assumption that silence cannot amount to waiver or acquiescence. 2022 WL 609213, at *4. And the decision relies on a series of business communications during which the patentee did not raise the alleged infringement to conclude that there were fact issues as to both equitable estoppel and waiver or acquiescence. *Compare id.* at *2 (analyzing equitable estoppel), *with id.* at *4 (analyzing waiver and acquiescence). Regardless, Delaware courts have not uniformly concluded that "silence" can never amount to waiver. In *Lony v. E.I. du Pont de Nemours & Co.*, the court held that whether an agency relationship existed was a fact issue, as DuPont's "silence"—"standing by" and "fail[ing] . . . to object to the representations made by" its alleged agent"—could reasonably be understood as "ratify[ing] those statements" and thus "implicitly creat[ing]" an agency relationship. *See* 821 F. Supp. at 959–60. Here too, whether Dolby's "action of standing by" and "failing to object" to its patent-pool administrators' announcements relinquishing the right to charge royalties—coupled with its years of collecting royalties reflecting that relinquishment—"acted to ratify those statements" (or otherwise demonstrate an agency relationship) are fact-intensive questions inappropriate for resolution at motion to dismiss. *See Flora*, 776 F.3d at 175. Snap is instead entitled to pursue discovery on its express waiver claim. *See Connelly*, 809 F.3d at 789.

**C. Dolby generalizes Snap's allegations to the point of abstraction to claim that Count XX (Breach of Duty of Good Faith and Fair Dealing) is improperly duplicative of Count XIX (Breach of RAND Obligations).**

Finally, Dolby claims this Court should dismiss Count XX because it is purportedly duplicative of Count XIX (and because Snap supposedly neglects to plead either an implied covenant that Dolby breached or damages). MTD at 15–18. These arguments fail too.

Dolby says Snap did not plausibly plead an implied covenant because express contract terms (like Dolby's RAND commitments) and implied covenants are "mutually exclusive." *See* MTD at 16 (quoting *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438–39 (3d Cir. 1993) (applying Pennsylvania law)). But that point of law is irrelevant here because Dolby's RAND commitments are not the "implied covenants" that Snap asserts Dolby breached in Count XX. Snap instead asserts that Dolby's RAND commitments to the ITU come with implied duties of good faith and fair dealing barring Dolby and its agents from, for example, withholding information critical to Snap evaluating licensing offers while threatening the specter of infringement litigation. *See* CClaims ¶¶ 55, 228, 230–34, 236.

"Delaware courts use the implied covenant of good faith and fair dealing to infer contractual terms where the party asserting the implied covenant shows the other party acted so arbitrarily and unreasonably as to frustrate[] the fruits of the bargain . . . ." *Opengate Cap. Grp. LLC v. Thermo Fisher Sci. Inc.*, 2014 WL 3367675, at *14 (D. Del. July 8, 2014) (cleaned up) (denying motion to dismiss breach of implied covenant claim premised on party's "misrepresentations, half-truths, and omissions"). Indeed, across jurisdictions, courts routinely hold that "[t]he covenant of good faith and fair dealing is implied in every agreement"—including an SSO contract to license standard-essential patents at RAND terms. *See* *HSMY, Inc. v. Getty Petrol. Mktg., Inc.*, 417 F. Supp. 2d 617, 621–22 (D. Del. 2006) (applying Delaware law to deny motion to dismiss breach of implied covenant claim against defendant that "took advantage of its position as Plaintiff's exclusive supplier to fix wholesale prices in excess of competitor's retail prices"); *see also* *Microsoft*, 864 F. Supp. 2d at 1038 (applying Washington law) ("[A]ny offer by [patent owner] (be it an initial offer or an offer during a back-and-forth negotiation) must comport with the implied duty of good faith and fair dealing inherent in every contract"); *Realtek*

Semiconductor Corp. v. LSI Corp., 2012 WL 4845628, at *4 & n.2 (N.D. Cal. Oct. 10, 2012) (discussing both Washington and California law) (concluding prospective licensee's "allegations plausibly support a claim that defendants breached their duty of good faith and fair dealing" where patent owner's royalty-rate offer exceeded price of licensee's allegedly infringing device).

Dolby mashes all of Snap's allegations into a single abstract theme—that Dolby has breached its RAND obligations—and then uses that generalization to argue Count XX is "based on exactly the same acts" as Count XIX and thus duplicative. *See* MTD at 16. To be sure, Snap alleges in Count XIX that Dolby breached express contract terms requiring it to offer RAND licensing of its HEVC- and AVC-related patents—because Dolby has entirely failed to offer a license for its AVC-related patents (*see* CClaims ¶¶ 53–54, 218), and because the only HEVC-related licensing offer extended to Snap thus far has not been RAND (*see id.* ¶¶ 53–59, 215–18).

But this does not mean Snap's breach of good faith and fair dealing claim relies rely on "exactly the same acts" as Count XIX. Rather, Count XX alleges a deeper problem than just Dolby's failure to "offer[] Snap a license on RAND terms." MTD at 17. Beyond that, Dolby, itself and through Access Advance, has failed to negotiate with Snap in a way that comports with its implied good-faith and fair-dealing duties. After Access Advance, acting on Dolby's behalf as licensing agent, first contacted Snap about licensing through the VDP, Snap requested that the parties sign a routine non-disclosure agreement ("NDA") and circulated a proposed NDA. CClaims ¶ 55. Yet, despite indicating that an NDA "shouldn't be an issue," Access Advance dragged its feet from early March 2026 until July 15 on finalizing and signing one. *See id.* ¶¶ 55–56, 233. Access Advance ignored Snap's proposed NDA revisions from March 17 all the way through June 22, 2026—and only responded then after being nudged by Snap on June 12. *Id.* ¶ 56. Despite Snap's request, Access Advance also failed (and has continued to fail) to disclose the terms

of its licenses to other licensors, which is critical to Snap's assessment of whether Access Advance's offer is fair, reasonable, and non-discriminatory. *Id.* ¶¶ 56, 233–34. Meanwhile, even though Access Advance itself was holding up the NDA—and thus the negotiating process—on March 18, it attempted to strong-arm Snap into joining the VDP "ASAP," threatening Snap that an infringement suit by one of its VDP licensors was "imminent[]." *Id.* ¶¶ 55, 233–34. Just days later, in apparent coordination with Access Advance, Dolby made good on that threat, prematurely filing its infringement suit without having ever engaged—itself or through Access Advance—in meaningful negotiation of licenses for its alleged standard-essential patents. *Id.* ¶¶ 55–56, 234.

Count XX, in other words, alleges that—RAND or supra-RAND terms aside—Dolby and its licensing agent, Access Advance, have not conducted the *process* of negotiating fairly or in good faith. Indeed, Access Advance's dilatory conduct short-circuited negotiations, significantly delaying finalizing an NDA necessary to even negotiate in earnest. It failed to provide licensing-term information necessary for Snap to evaluate Access Advance's VDP offer. It used the threat of infringement litigation as leverage against Snap. And Dolby then filed that coercive litigation. Such a bad faith, unfair process conceivably could still eventually result in licensing on RAND terms. But eventually reaching RAND terms would not excuse Dolby's breach of its obligation to negotiate, itself and through Access Advance, in good faith and fair dealing. That distinguishes Counts XIX and XX, such that Dolby's motion to dismiss Count XX as duplicative fails.

Finally, Dolby remarks, in passing, that Snap has not "adequately alleged" "resulting damages" for Count XX. MTD at 15. Dolby fails to develop this point any further, however, and its failure to elaborate means it has forfeited the argument. *See, e.g.*, *Redwood Techs., LLC v. Netgear, Inc.*, 2024 WL 4591852, at *2 (D. Del. Oct. 28, 2024) (explaining that "cursory argument [that] is 'raised in passing,' as opposed to being 'squarely argued,'" in motion to dismiss "is

forfeited"). Regardless, Snap has plainly alleged damages resulting from Dolby's failure, itself and through Access Advance, to negotiate in good faith and fair dealing, including the unnecessary costs Snap has incurred in defending this litigation, filed before Dolby (or Access Advance) ever engaged in meaningful negotiation. *See* CClaims ¶¶ 235, 237; *see also* *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1081–82 (W.D. Wis. 2012) (denying motion for summary judgment for lack of damages from breach of SSO contract claim, where claimant premised damages solely on litigation costs); *Rsch. In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 797 (N.D. Tex. 2008) (refusing to dismiss breach of SSO contract claim for lack of injury because court must accept as true, at pleading stage, that patent owner "already refused to negotiate fair terms outside this court," thus forcing prospective licensee to litigate to obtain RAND terms).

In sum, Snap's Count XX is not duplicative of Count XIX, and it adequately alleges both an implied duty of good faith and fair dealing that Dolby breached *and* damages caused by that breach. Snap's counterclaim for breach of Dolby's duties of good faith and fair dealing—which is sure to be "heavily fact intensive"—should therefore proceed to discovery, just like Snap's other counterclaims. *See* *Microsoft*, 864 F. Supp. 2d at 1038 (observing that determining whether patent owner's licensing offers breached "duty of good faith and fair dealing" is "heavily fact intensive and is appropriately placed in the hands of a finder-of-fact that knows what in fact constitutes a RAND agreement between the parties"); *Flora*, 776 F.3d at 175; *Connelly*, 809 F.3d at 789.

## VI. CONCLUSION

For these reasons, Snap respectfully requests that this Court deny Dolby's motion to dismiss and allow Snap's counterclaims to proceed to discovery.

OF COUNSEL:

Kathi Vidal
Alexander P. Ott
Joseph C. Masullo
WINSTON TAYLOR LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000

Eimeric Reig-Plessis
WINSTON TAYLOR LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5891
(415) 591-1000

Carson Swope
WINSTON TAYLOR LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
(650) 858-6500

September 28, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendant and Counterclaim-Plaintiff Snap Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 28, 2026, upon the following in the manner indicated:

Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
FARNAN LAW, LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Kevin Schubert, Esquire
Robert Burns, Esquire
MCKOOL SMITH P.C.
1301 6th Ave, 32nd Floor
New York, NY 10019
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Warren Lipschitz, Esquire
Greg Saltz, Esquire
MCKOOL SMITH P.C.
300 Crescent Court
Dallas, TX 75201
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Mitch Verboncoeur, Esquire *VIA ELECTRONIC MAIL*
MCKOOL SMITH P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

Christopher McNett, Esquire *VIA ELECTRONIC MAIL*
Kyra Mouser, Esquire
MCKOOL SMITH P.C.
1717 K Street, NW, Suite 1000
Washington, DC 20006
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*/s/ Jennifer Ying*
Jennifer Ying (#5550)