IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOLBY VIDEO COMPRESSION, LLC and DOLBY INTERNATIONAL AB,<br><br>Plaintiffs,<br><br>v.<br><br>SNAP INC.,<br><br>Defendant. | ) | C.A. No. 26-317 (JLH) |
| SNAP INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>DOLBY VIDEO COMPRESSION, LLC, DOLBY LABORATORIES, INC., DOLBY INTERNATIONAL AB, and ACCESS ADVANCE LLC,<br><br>Counterclaim-Defendants. | ) | |

**DEFENDANT SNAP INC.'S ANSWERING BRIEF IN OPPOSITION TO COUNTERCLAIM-DEFENDANT ACCESS ADVANCE'S MOTION TO DISMISS**

OF COUNSEL:

Kathi Vidal
Alexander P. Ott
Joseph C. Masullo
WINSTON TAYLOR LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000

Eimeric Reig-Plessis
WINSTON TAYLOR LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5891
(415) 591-1000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendant and Counterclaim-Plaintiff Snap Inc.*

Carson Swope
WINSTON TAYLOR LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
(650) 858-6500

September 28, 2026

# TABLE OF CONTENTS

**Page**


I. STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ............................ 1

II. SUMMARY OF ARGUMENT.................................................................................. 2

III. STATEMENT OF FACTS ..................................................................................... 3

IV. LEGAL STANDARD ............................................................................................. 4

V. ARGUMENT .......................................................................................................... 5

A. The well-pleaded facts establish that Access Advance, as Dolby's licensing agent, is a proper counterclaim-defendant for Counts XIX and XX. ..................... 5

1. RAND obligations run with the patents and bind Access Advance............ 5

2. Snap has plausibly pleaded an agency relationship, which is sufficient to join Access Advance as a counterclaim defendant. ................ 7

3. Access Advance's standing and case-or-controversy arguments rely on inapposite caselaw..................................................................... 8

4. The UK Supreme Court's *Tesla* decision supports finding that pool administrators can be proper parties to RAND disputes...........................11

5. Access Advance's AV1-related arguments attack a theory that Snap is not advancing. ..................................................................... 12

6. Access Advance's damages-related arguments fail. ................................ 13

B. Access Advance asks this Court to improperly resolve factual disputes to dismiss Count XXI regarding unenforceability due to express waiver................ 14

C. Count XX is not improperly duplicative of Count XIX. ..................................... 16

VI. CONCLUSION.................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Apple, Inc. v. Motorola Mobility, Inc.*,
886 F. Supp. 2d 1061 (W.D. Wis. 2012) ....................3, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*ASUS Tech. Licensing Inc. & Celerity IP, LLC v. AT&T Enters., LLC*,
2026 WL 2323353 (E.D. Tex. Aug. 11, 2026) ....................6, 17

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*,
181 F.3d 435 (3d Cir. 1999)....................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4, 5

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007)....................8, 9, 10

*Bioverativ Inc. v. CSL Behring LLC*,
2021 WL 3471688 (D. Del. Aug. 6, 2021) ....................6, 17

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016)....................5, 13

*Datatreasury Corp. v. Wells Fargo & Co.*,
522 F.3d 1368 (Fed. Cir. 2008)....................6, 17

*E.I. DuPont v. Rhone Poulenc*,
269 F.3d 187 (3d Cir. 2001)....................15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)....................6

*Flora v. County of Luzerne*,
776 F.3d 169 (3d Cir. 2015)....................5, 14

*HSMY, Inc. v. Getty Petrol. Mktg., Inc.*,
417 F. Supp. 2d 617 (D. Del. 2006)....................16

*In re Indus. Print Techs.*,
2015 U.S. Dist. LEXIS 137238 (N.D. Tex. Oct. 7, 2015) ....................10, 14

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
956 F. Supp. 2d 925 (N.D. Ill. 2013) ....................6

*Jack Eckerd Corp. v. Dart Grp. Corp.*,
621 F. Supp. 725 (D. Del. 1985)....7

*Lony v. E.I. du Pont de Nemours & Co.*,
821 F. Supp. 956 (D. Del. 1993)....7

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....9

*Microchip Tech. Inc. v. Chamberlain Grp., Inc.*,
441 F.3d 936 (Fed. Cir. 2006)....9

*Microsoft Corp. v. Motorola, Inc.*,
2013 WL 5373179 (W.D. Wash. Sep. 24, 2013)....13, 14

*Microsoft Corp. v. Motorola, Inc.*,
864 F. Supp. 2d 1023 (W.D. Wash. 2012)....3, 16

*Migliore ex rel. Migliore v. Vision Solar LLC*,
160 F.4th 79 (3d Cir. 2025)....7

*Neitzke v. Williams*,
490 U.S. 319 (1989)....5

*Opengate Cap. Grp. LLC v. Thermo Fisher Sci. Inc.*,
2014 WL 3367675 (D. Del. July 8, 2014)....16

*Qualcomm Inc. v. Broadcom Corp.*,
548 F.3d 1004 (Fed. Cir. 2008)....15

*Riverside Mem'l Mausoleum, Inc. v. UMET Tr.*,
581 F.2d 62 (3d Cir. 1978)....15

*Rsch. In Motion Ltd. v. Motorola, Inc.*,
644 F. Supp. 2d 788 (N.D. Tex. 2008)....13

*Sanyo Elec. Co. v. Intel Corp.*,
2019 WL 1650067 (D. Del. Apr. 17, 2019)....10, 11

*TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*,
943 F.3d 1360 (Fed. Cir. 2019)....3

*Tesla, Inc. v. InterDigital Pat. Holdings, Inc.*
[2026] UKSC 27 (U.K.)....11, 12, 13

*Truinject Corp. v. Nestle Skin Health, S.A.*,
2020 WL 70981 (D. Del. Jan. 7, 2020)....8

*USX Corp. v. Prime Leasing Inc.*,
988 F.2d 433 (3d Cir. 1993)....................16

*In re Volkswagen Grp. of Am., Inc.*,
28 F.4th 1203 (Fed. Cir. 2022) ....................7, 16

**Rules**

Fed. R. Civ. P. 12(b)(6)....................4, 5

## I. STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

This case is more than just a garden-variety dispute between Plaintiff Dolby and Defendant Snap Inc. over alleged patent infringement. In its capacity as Dolby's authorized licensing agent for eight of the nine asserted patents, Counter-Defendant Access Advance LLC unequivocally and unconditionally relinquished the right to seek royalty fees for video streaming—the exact conduct that Dolby now alleges infringes.[1] The allegations in both Dolby's and Snap's pleadings confirm that Access Advance is properly named as a counter-defendant and should not be dismissed.

On March 25, 2026, despite never having even attempted to negotiate any license, let alone on fair, reasonable, and nondiscriminatory ("RAND")[2] terms, Dolby sued Snap for infringement of four patents, as well as for a declaratory judgment that it complied with its RAND obligations. *See* D.I. 1. In attempting to show compliance with those obligations, Dolby confirmed that it "offers licenses to its patents . . . through Access Advance's Video Distribution Patent ('VDP') pool," and Dolby relied on Access Advance's offer for Snap to join the VDP as its alleged RAND offer to license those patents. *Id.* ¶¶ 45, 255. After Snap answered and counterclaimed (D.I. 13), Dolby amended its Complaint, expanding its infringement allegations to five additional patents (collectively, with the original four, the "Asserted Patents"). *See* D.I. 21 ("FAC"). Snap again answered and counterclaimed (D.I. 25), and on August 31, 2026—after Dolby and Access Advance moved to dismiss Snap's counterclaims (D.I. 30, 31, 32, 33)—Snap filed its operative Answer and Amended Counterclaims. D.I. 37 ("CClaims").

---

[1] Snap uses "Dolby" to refer to Plaintiff and Counter-Defendants Dolby Video Compression, LLC and Dolby International AB,together with Counter-Defendant Dolby Laboratories, Inc.

[2] Snap uses the term "RAND" throughout this brief interchangeably with the term "FRAND" for Fair, Reasonable, and Nondiscriminatory.

Snap asserts counterclaims for non-infringement and invalidity of each Asserted Patent. *See id.*, Counts I to XVIII (against Dolby only). Snap further seeks declaratory judgments that Dolby and Access Advance breached Dolby's RAND commitments (*id.*, Count XIX), as well as their associated duties of good faith and fair dealing. *Id.*, Count XX. Snap also seeks a declaratory judgment that Dolby's HEVC- and AVC-related patents are unenforceable due to express waiver. *Id.*, Count XXI. Dolby and Access Advance have now moved to dismiss Counts XIX, XX, and XXI. *See* D.I. 41, 42 ("MTD"); *see also* D.I. 39, 40 (Dolby briefing). This is Snap's answering brief in opposition to Access Advance's motion to dismiss.

## II. SUMMARY OF ARGUMENT

Access Advance's motion should be denied. It seeks to extricate Access Advance from concrete disputes that center on its own conduct by misstating Snap's theories and attempting to litigate classic factual questions on the pleadings.

***First***, Snap's counterclaims XIX and XX, which concern the RAND commitments that encumber the Asserted Patents and the associated duty of good faith and fair dealing, properly include Access Advance as Dolby's authorized licensing agent for the Asserted Patents. Indeed, Access Advance is the *only* party that has made any offer to license the Asserted Patents to Snap, and Dolby expressly relies on Access Advance's sole offer to allege that it has complied with its RAND obligations, which Snap disputes. D.I. 21, ¶¶ 46, 578. Access Advance's argument that it is not a party to Dolby's underlying contractual commitments ignores that RAND obligations are encumbrances that run with the patents and thus equally bind Access Advance as Dolby's licensing agent for those patents. The nature and scope of Access Advance's licensing authority and its agency relationship with Dolby, which partially owns it, are fact-intensive disputes that cannot be resolved at this stage. And Access Advance's argument as to the AV1-related patents misconstrues Snap's counterclaims, which do not require any independent contractual obligation for those

patents but instead plead that Access Advance has improperly bundled patents allegedly related to AV1 as a condition for licensing HEVC-related patents that are RAND-encumbered.

***Second***, Snap's counterclaim XXI for express waiver also properly applies against Access Advance, which made the express statements waiving the rights to seek licensing fees for the streaming conduct that Dolby now accuses of infringing. Whether Access Advance had the right to sue Snap for patent infringement without Dolby is beside the point. Dolby is already a declaratory co-defendant, and there is an actual controversy over whether Access Advance, on *behalf* of its licensors including Dolby, waived the ability to assert such infringement.

***Third***, Snap's counterclaims for breach of RAND obligations (Count XIX) and of the duties of good faith and fair dealing (Count XX) are not duplicative. Snap has sufficiently pleaded good-faith and fair-dealing duties in addition to RAND obligations. Dismissal should be denied.

## III. STATEMENT OF FACTS

Snap is an American technology company and creator of the communication platform Snapchat and augmented reality smart glasses Specs. Dolby alleges it owns the Asserted Patents, one of which it claims is practiced by implementing a video coding standard called AV1, and the other eight it claims are practiced by implementing video coding standards called HEVC and/or AVC. *See* FAC ¶¶ 6, 31–32, 44. Dolby committed to the International Telecommunication Union ("ITU")—a standard-setting organization ("SSO")—that it would license any standard-essential HEVC- and AVC-related patents on RAND terms and conditions. FAC ¶¶ 41–44; MTD at 3; CClaims ¶¶ 51–52, 215. Snap is a third-party beneficiary of Dolby's RAND commitments.[3]

---

[3] *Cf. TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, 943 F.3d 1360, 1364 (Fed. Cir. 2019) ("Because th[e FRAND] obligation is intended to benefit implementers of [an SSO's] standards, the implementers may assert their rights created by the FRAND obligation as third-party beneficiaries."); *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1085

Access Advance is a patent-pool administrator founded in 2015 and partially owned by Dolby that offers licenses to allegedly standard-essential patents. CClaims ¶¶ 7, 18, 36. Access Advance acts as Dolby's licensing agent, including with respect to Dolby's HEVC- and AV1-related patents. *Id.* ¶¶ 21, 25, 36, 215, 219, 230. Dolby is among Access Advance's original licensors in its HEVC Advance Patent Pool, which licenses video-coding patents for devices that can play HEVC-encoded video. *Id.* ¶¶ 20–21, 31. On March 13, 2018, Access Advance announced it would "no longer license nor seek royalty fees for *non-physical HEVC content distribution* including Internet streaming." *Id.* ¶¶ 22–25, 240. Since then, Dolby continued to participate in, and accept royalty revenue from, the HEVC Advance Patent Pool. *Id.* ¶¶ 27, 31, 240.

Dolby alleges that Snap infringes each of the Asserted Patents (FAC ¶¶ 3, 13, 24, 37) even though Snap's uses of encoded video fall within the uses for which Access Advance (and another pool, Via LA) waived the right to seek royalties (CClaims ¶¶ 240, 242). Dolby has never made an offer directly to Snap to license its patents, but Access Advance made an offer to Snap to join the VDP. *Id.* ¶¶ 34, 54. The VDP is not limited to the asserted HEVC-related patents, but instead bundles those patents with "over 40,000" others, including patents for completely unrelated coding technologies, like AV1, VVC, and VP9. *See* CClaims ¶¶ 35, 53–54, 57–59, 215–18.

## IV. LEGAL STANDARD

A court may not dismiss pursuant to Rule 12(b)(6) unless a claim lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(W.D. Wis. 2012) (prospective licensee was third party beneficiary of patent-holder's agreements with SSO); *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1032 (W.D. Wash. 2012).

(citation omitted). Instead, "the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citation and marks omitted). Nor does the plausibility standard "impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556. Instead, a claim suffices as long as its "[f]actual allegations [are] enough to raise a right to relief above the speculative level." *Id.* at 555 (citation omitted). But "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting parenthetically *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). And a district court may not resolve factual disputes when adjudicating a Rule 12(b)(6) motion. *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015). Rather, in evaluating a claim's sufficiency, a district court must credit all well-pleaded facts, proceeding "on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citations omitted).

## V. ARGUMENT

### A. The well-pleaded facts establish that Access Advance, as Dolby's licensing agent, is a proper counterclaim-defendant for Counts XIX and XX.

Access Advance's central argument is that it should not be a party to this case and that Snap is improperly "attempt[ing] to entangle Access Advance in a dispute properly between Dolby and Snap." D.I. 42 at 1. Access Advance is wrong. As set forth below, Snap has plausibly pleaded that Access Advance, as Dolby's licensing agent that Dolby partly owns and that exercises delegated authority over Dolby's RAND-encumbered patents, is a proper counter-defendant.

#### 1. RAND obligations run with the patents and bind Access Advance.

Access Advance does not meaningfully dispute that Dolby committed to license the Asserted Patents on RAND terms, and that there is a concrete, ripe dispute over whether that

RAND commitment has been breached. Instead, Access Advance argues that "Snap cannot backdoor a contractual commitment for Access Advance based on a contract it did not enter for patents it does not own." MTD at 8. Yet, it is well established that RAND commitments do not merely bind the originally contracting parties but constitute "legal encumbrances" that run with the patent itself, to the benefit of third parties. *See* *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008) (discussing "legal encumbrances" that run with patent when transferred, including restrictions on the right to license); *Bioverativ Inc. v. CSL Behring LLC*, 2021 WL 3471688, at *3 (D. Del. Aug. 6, 2021) (holding "covenant not to sue" among "legal encumbrances" that run with patent); *ASUS Tech. Licensing Inc. & Celerity IP, LLC v. AT&T Enters., LLC*, 2026 WL 2323353, at *1 (E.D. Tex. Aug. 11, 2026) ("affirmatively find[ing] that a FRAND obligation runs with all remaining asserted patents"); *In re Innovatio IP Ventures, LLC Pat. Litig.*, 956 F. Supp. 2d 925, 933 (N.D. Ill. 2013) (noting that RAND commitments made by original patent owner to SSO "are now binding on" the current owner).

RAND commitments—and their associated implied covenants—thus bind any party exercising delegated authority to license those patents. That includes Access Advance, which exercises authority to license, negotiate, and either seek or forego royalties on Dolby's behalf. CClaims ¶¶ 219–221. Access Advance cannot suggest it could license Dolby's patents at supra-RAND rates when Dolby itself cannot. *See* *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1235 (Fed. Cir. 2014) ("A principal cannot, moreover, grant authority to an agent if the principal does not itself possess the power granted."). Because Access Advance is bound by the RAND commitments that encumber the Asserted Patents it is authorized to license—and, indeed, has attempted to license to Snap on Dolby's behalf—it is a proper party in the disputes raised by Snap's counterclaims regarding whether those RAND commitments have been breached.

**2. Snap has plausibly pleaded an agency relationship, which is sufficient to join Access Advance as a counterclaim defendant.**

Access Advance disputes that it is Dolby's agent. D.I. 42 at 10, n.5. But Snap has plausibly pleaded an agency relationship, which is a fact-intensive question that cannot be resolved on the pleadings. *See Lony v. E.I. du Pont de Nemours & Co.*, 821 F. Supp. 956, 959 (D. Del. 1993) (explaining that "whether an agency relationship was created . . . is a mixed question of law and fact"). An agency relationship does not require actual, ongoing, day-to-day control. It requires only "the principal's *right to* direct or control the agent's actions," including the right to exert "interim control." *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1208–09 (Fed. Cir. 2022); *accord Jack Eckerd Corp. v. Dart Grp. Corp.*, 621 F. Supp. 725, 732 (D. Del. 1985).

Here, the well-pleaded facts amply support an agency relationship. Dolby itself founded Access Advance, was among its original patent licensors, and (as Access Advance does not deny) continues to be Access Advance's part-owner. CClaims ¶¶ 7, 18, 21, 36. Access Advance implements Dolby's licensing programs, communicates licensing positions, issues licensing demands, and seeks royalties on Dolby's behalf. *Id.* ¶ 219. As alleged, the indicia of agency are all satisfied: (1) Access Advance is "empowered to conduct and conclude transactions" for Dolby (*id.* ¶¶ 20–22, 29); (2) Access Advance is "empowered to speak as" Dolby (*id.* ¶¶ 21–22, 24–25); (3) Dolby exercises control over how it is represented to third parties (*id.* ¶¶ 22, 24–25); and (4) Dolby benefits financially from the agency relationship, including based upon Dolby's partial ownership and control of Access Advance (*id.* ¶¶ 7, 27, 29, 31–32, 36, 59). *See Migliore ex rel. Migliore v. Vision Solar LLC*, 160 F.4th 79, 87 (3d Cir. 2025). Indeed, Dolby pleaded that it "has negotiated in good faith with Snap, including for example, *through negotiations between Snap and Access Advance*," FAC ¶ 578 (emphasis added), and Dolby asked this Court for a declaration that *Access Advance's* offers to Snap satisfy *Dolby's* ITU RAND obligations, FAC ¶¶ 581–82.

Unable to dispute agency, Access Advance argues that "an action for breach of contract lies only against a disclosed principal (Dolby), not an alleged agent (Access Advance) acting within the scope of its authority." MTD at 6. But Access Advance's case law does not support its broad assertion. *Bel-Ray Co. v. Chemrite (Pty) Ltd.* holds that a corporation's officers and directors sued in their personal capacity by the corporation's supplier were not bound to arbitrate under an arbitration agreement the corporation executed. 181 F.3d 435, 439, 444–45 (3d Cir. 1999). *Truinject Corp. v. Nestle Skin Health, S.A.* holds that an employee who merely signs a confidentiality agreement on behalf of a corporate entity cannot be held liable for its breach. 2020 WL 70981, at *11 (D. Del. Jan. 7, 2020). Neither case remotely resembles this dispute. Access Advance is not a passive signatory or corporate officer. It is an entity that is partly owned by Dolby and that Dolby authorizes to communicate licensing positions, issue licensing demands, enter into licensing agreements, and seek (or forego) licensing royalties for Dolby's patents—including patents that Dolby is asserting against Snap—on Dolby's behalf. CClaims ¶¶ 219, 221.

Access Advance's arguments about the standards for "affiliate relationship" and veil-piercing (MTD at 11) are inapposite. Snap's claims do not depend on affiliate status or veil-piercing, but rather on two independent grounds discussed above: (1) the RAND obligations that run with the patents and bind any party exercising delegated licensing authority; and (2) the agency relationship between Dolby and Access Advance. Either is sufficient to deny dismissal.

**3. Access Advance's standing and case-or-controversy arguments rely on inapposite caselaw.**

Access Advance also argues that Snap lacks standing to sue by contending that, for a declaratory judgment, there must be "an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it." MTD at 14–15 (quoting *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d

1340, 1344 (Fed. Cir. 2007)). But *Benitec* never says this is a *requirement* to establish a case or controversy, only "[a] useful question to ask" in the context of declaratory judgment actions of *non-infringement*, 495 F.3d at 1344, which does not apply to Snap's counterclaims against Access Advance. Moreover, the case that *Benitec* quotes for this "useful question," *Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006), predates the Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, which rejected the Federal Circuit's prior standard for declaratory judgment jurisdiction as overly narrow and held instead that the relevant test is simply "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. 118 (2007) (cleaned up).

That test is satisfied here. Access Advance has a concrete financial interest in the enforceability of Dolby's Asserted Patents at least because it derives revenues from administering the VDP that includes those patents. CClaims ¶¶ 221, 241. And Snap has suffered concrete financial injuries from Access Advance's breaches of the RAND commitments that run with the Asserted Patents and its duty of good faith and fair dealing in seeking to coerce Snap into licensing those patents at supra-RAND rates—including because Access Advance's misconduct has forced Snap to incur the costs of defending against VDP-member lawsuits premised on Access Advance's non-RAND offer. *Id.* ¶¶ 226, 235, 237. These disputes are neither hypothetical nor remote. Access Advance cannot deny that the disputes over its licensing offer to Snap are sufficiently concrete and immediate when they have already resulted in the very lawsuit that Snap is defending.

Access Advance also misreads *Benitec*, which was not about who is a proper declaratory judgment defendant. Rather, the *Benitec* court considered whether it was divested of jurisdiction over declaratory judgment claims after an intervening Supreme Court ruling rendered the allegedly

infringing activity non-infringing. *See Benitec*, 495 F.3d at 1345–46. That situation bears no resemblance to this case, where Dolby has sued Snap for infringement of patents that Access Advance licenses on Dolby's behalf, and where the pleaded disputes over whether Dolby satisfied its RAND commitments center on Access Advance's own conduct and scope of authority.

Access Advance quotes *Sanyo* for the proposition that "[j]ust as Sanyo lacks standing to bring an infringement suit against Intel, so too does Intel lack standing to seek a declaratory judgment against Sanyo." MTD at 17. But this is irrelevant because Snap is not seeking declaratory relief against Access Advance over patent infringement disputes. Snap did not join Access Advance to Snap's patent-specific counterclaims seeking declaratory judgments of non-infringement and invalidity, which are asserted only against patent-owner Dolby. Snap only joined Access Advance to its counterclaims that involve Access Advance's own conduct as Dolby's licensing agent. Moreover, *Sanyo* is factually inapposite because it involved declaratory judgment counterclaims asserted against a patent's prior owner who had undisputedly assigned *all* of its rights to another party. *Sanyo Elec. Co. v. Intel Corp.*, 2019 WL 1650067, at *10 (D. Del. Apr. 17, 2019). That has nothing to do with this case or with Snap's theory for asserting counterclaims against Access Advance, which possesses at least *some* rights to the Asserted Patents, including the right to license the patents on Dolby's behalf.

Similarly, Access Advance cites *In re Industrial Print Technologies*, but that case involved an alleged infringer seeking to add as a counterclaim-defendant a party who had previously assigned away "all" of its "rights, obligations, interests, and liabilities" to another, wholly-owned entity already named as counterclaim-defendant—on the grounds that the latter entity was purposefully "grossly-undercapitalized." *See In re Indus. Print Techs.*, 2015 U.S. Dist. LEXIS 137238, at *3–4 (N.D. Tex. Oct. 7, 2015). That is an alter-ego theory, not an agency theory.

None of Access Advance's cases involve a patent owner's authorized licensing agent, let alone an agent (1) whose conduct *both* parties rely on for a central dispute over RAND obligations and (2) whose representations waived licensing fees for the exact conduct that is alleged to infringe. Unlike the prior owners and assignees in *Sanyo* and *Industrial Print*, Access Advance continues to exercise delegated authority to license Dolby's patents, communicate Dolby's licensing positions, issue licensing demands, and seek royalties on Dolby's behalf. CClaims ¶¶219, 221. It thus has a "direct, concrete financial interest" in the outcome of this dispute. *Id.* ¶ 221.

**4. The UK Supreme Court's *Tesla* decision supports finding that pool administrators can be proper parties to RAND disputes.**

Although this Court need not reach the issue to deny Access Advance's motion to dismiss, a recent decision by the Supreme Court of the United Kingdom ("UKSC") provides persuasive authority that patent pool administrators like Access Advance can be proper parties to proceedings concerning disputes over RAND licensing obligations. In *Tesla, Inc. v. InterDigital Pat. Holdings, Inc.* [2026] UKSC 27 (U.K.), the court held that a FRAND obligation did not "cease to apply" when patent owners licensed through a licensing agent. *Id.* ¶ 84. The UKSC reasoned that it was "unable to discern anything in the wording of the FRAND obligation or the wider IPR Policy which provides any basis for concluding that the FRAND obligation ceases to apply if two or more owners choose to offer a licence of their patents through or using a licensing agent." *Id.*

Notably, the UKSC observed that the pool administrator in that case was an "essential party" for assessing pool license terms and further reasoned that "[w]ithout the possibility of court scrutiny of the pool or platform rates," the "effectiveness of the FRAND obligation" would be "seriously undermine[d]." *Id.* ¶¶ 138, 142. And the court recognized that patent owners cannot insulate themselves from RAND obligations by hiding behind intermediaries. *Id.* ¶¶ 85, 89.

While *Tesla* was a decision on jurisdiction under UK law and arose in the context of a particular cellular technology FRAND obligation, the UKSC's reasoning is persuasive. The same policy concern animates Snap's claims: If Dolby could delegate its licensing functions to Access Advance and then argue that Access Advance is immune from any obligation to license on RAND terms, the RAND framework would be eviscerated. Declaratory relief concerning Dolby's RAND obligations should run against both Dolby and Access Advance. CClaims ¶ 222.

**5. Access Advance's AV1-related arguments attack a theory that Snap is not advancing.**

Access Advance argues that Counts XIX and XX fail because Snap does not allege any contract requiring Access Advance to license Dolby's AV1 patents on RAND terms. D.I. 42 at 8–9. But that is not Snap's theory as to the alleged AV1-related patents. Snap's counterclaims are not premised on AV1 patents being encumbered by any independent RAND obligations. Instead, Snap asserts that Dolby, *through Access Advance*, has breached its contractual commitments to license its standard-essential patents *for HEVC* on RAND terms by offering to license those patents only bundled with other, non-essential patents—related to entirely distinct video coding standards, like AV1—and charged at supra-RAND royalty rates. *See* CClaims ¶¶ 53–54, 57–59, 215–18.

Access Advance acknowledges this bundling theory, observing that "this allegation goes to whether Dolby (not Access Advance) breached its obligations with respect to licensing implementations of the H.264 and H.265 Standards, and whether it is appropriate for Dolby to, allegedly, condition a license for implementations of the H.264 and H.265 Standards on a license for implementations of the AV1 specification." MTD at 9. But Access Advance's distinction—that the breach was by "Dolby (not Access Advance)"—is precisely what Snap refutes. Again, because Access Advance is Dolby's agent exercising delegated licensing authority, it is equally bound by Dolby's RAND obligations. Nor is this bundling theory inconsistent with Snap's requested relief.

*Id*. at 9. Access Advance, on Dolby's behalf, has bundled Dolby's AV1-related patents as required add-ons through the VDP for licensing Dolby's HEVC-related patents, which can only legally be licensed (by either Dolby or Access Advance) on RAND terms. And the only pre-suit offer to Snap was Access Advance's demand to join the VDP, which Snap contends is not RAND. CClaims ¶ 54. The declaration that Snap seeks for breach of RAND commitments is thus entirely consistent with Snap's pleaded theory of breach. *See Connelly*, 809 F.3d at 789.

**6. Access Advance's damages-related arguments fail.**

Access Advance argues that Snap has not pleaded "a viable theory for damages," claiming Snap is "attempt[ing] to manufacture damages attributable to Access Advance." D.I. 42 at 6, 12–14. Access Advance is wrong. Snap has plainly alleged damages caused by Access Advance's breaches, including the resources Snap invested in defending premature litigation that Access Advance threatened and facilitated. CClaims ¶¶ 226, 235, 237. Had Access Advance negotiated in good faith and offered RAND terms, these costs could have been avoided. *See Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1081–82 (W.D. Wis. 2012) (denying summary judgment for lack of damages from breach of SSO contract claim, where claimant premised damages solely on litigation costs); *Rsch. In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 797 (N.D. Tex. 2008) (refusing to dismiss breach of SSO contract claim for lack of injury).

Access Advance assumes, without basis, that Snap's claimed damages are attorney's fees barred by the "American Rule." D.I. 42 at 13. But the American Rule that presumptively requires Snap to bear its own fees is precisely why Snap is damaged by having to defend against needless litigation. Access Advance cites *Microsoft Corp. v. Motorola, Inc.*, but that case, far from barring such damages, concluded that Washington courts were likely to "recognize an exception to the American rule where seeking injunctive relief to enforce a RAND-committed patent is found to

be a violation of the duty of good faith and fair dealing." 2013 WL 5373179, at *4, 11–12, 13–14 (W.D. Wash. Sep. 24, 2013). The same reasoning applies here.

Access Advance further argues that Snap's damages "are, at most attributable solely to Dolby," and that any damages "could be obtained from Dolby." D.I. 42 at 13–14, 16. But both counter-defendants may be jointly and severally liable for the same damages, and Access Advance ignores that it wielded the threat of litigation itself. It was Access Advance—not Dolby directly—that warned Snap on March 18, 2026, that an infringement suit was "imminent," attempting to coerce Snap into joining the VDP "ASAP." CClaims ¶¶ 55, 233–34. And Snap has pleaded facts showing Access Advance's delegated authority includes enforcement authority—including authority to enter covenants and waivers of the right to sue. *Id.* ¶¶ 13, 36, 55, 234. Access Advance's damages are not "attributable solely to Dolby"—they are attributable to Access Advance's own conduct in exercising its delegated authority. At a minimum, discovery is needed into Dolby and Access Advance's relationship and their coordination of licensor litigation.

Access Advance's only support for its argument that damages should be sought from Dolby alone is *In re Industrial Print Technologies*. But as discussed above, that case involved an alter-ego theory—not an agency theory—and the court did not hold that recovering from the agent could never be proper. Rather, the court noted only that the defendants had not shown the entity was "so undercapitalized that it would be unable to satisfy any award of fees or costs." 2015 U.S. Dist. LEXIS 137238, at *7. That reasoning has no application here.

**B. Access Advance asks this Court to improperly resolve factual disputes to dismiss Count XXI regarding unenforceability due to express waiver.**

Access Advance raises a series of factual disputes and then asks this Court to resolve those disputes in its favor to dismiss Count XXI. D.I. 42 at 16–19. That is improper. "[I]nsofar as there is a factual dispute" at the motion to dismiss stage, "the court may not resolve it." *Flora*, 776 F.3d

at 175. First, Access Advance argues that waiver is an affirmative defense and therefore cannot be the basis for a counterclaim. D.I. 42 at 18. But Access Advance's own case law recognizes that "the facts underlying some defenses might also support a counterclaim." *Riverside Mem'l Mausoleum, Inc. v. UMET Tr.*, 581 F.2d 62, 68 (3d Cir. 1978). The Federal Circuit has implicitly recognized that a party may pursue a judgment of unenforceability via a counterclaim grounded in waiver. In *Qualcomm Inc. v. Broadcom Corp.*, a patent owner argued that, "because waiver was pled as an affirmative defense, it cannot result in a judgment of unenforceability." 548 F.3d 1004, 1024–25 (Fed. Cir. 2008). The Federal Circuit disagreed, "see[ing] no reason" why a district court could not enter a judgment of unenforceability based on waiver, even when "raised . . . as an affirmative defense *rather than as a counterclaim or cross-claim*." *Id.* (emphasis added). Moreover, Snap's counterclaim seeks relief that is broader than its affirmative defense: a declaration that Dolby's HEVC and AVC standard-essential patents are unenforceable due to express waiver—including as to other patents in the VDP. CClaims ¶¶ 243–44.

Second, Access Advance argues it "cannot waive rights it does not possess" because it does not own the Asserted Patents. MTD at 18–19. But this confuses ownership with authority. Snap's theory is not that Access Advance waived its *own* patent rights. Rather, Snap alleges that Access Advance, as Dolby's authorized licensing agent, waived *Dolby's* rights within the scope of Access Advance's delegated authority. CClaims ¶¶ 24–27, 31. Whether Access Advance had authority to make such a waiver is a factual question. *See E.I. DuPont v. Rhone Poulenc*, 269 F.3d 187, 198–99 (3d Cir. 2001).

Third, Access Advance argues that any ability to bind Dolby is limited to the patent-pool context. MTD at 18. But this supports Snap's position: The waiver was squarely within the pool context. Access Advance announced, in its capacity as administrator of the HEVC Advance Patent

Pool, that it would "no longer license nor seek royalty fees for non-physical HEVC content distribution including Internet streaming." CClaims ¶¶ 22–25. In any event, the scope of Access Advance's agency—and whether the March 2018 announcement was within its delegated authority—is a fact question for discovery. *See Volkswagen*, 28 F.4th at 1208–09.

### C. Count XX is not improperly duplicative of Count XIX.

Finally, Access Advance asserts that Count XX (Breach of Duty of Good Faith and Fair Dealing) should be dismissed as duplicative of Count XIX (Breach of RAND Obligations). This argument fails. Access Advance contends that Dolby's express RAND commitments and the implied duties of good faith and fair dealing are "necessarily mutually exclusive." *See* MTD at 19 (quoting *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438–39 (3d Cir. 1993)). But that point of law is irrelevant here because Dolby's RAND commitments are not the "implied covenants" that Snap asserts have been breached in Count XX. Instead, Snap asserts that Dolby's RAND commitments to the ITU come with *implied duties of good faith and fair dealing* barring Dolby and its agents from, for example, withholding information critical to Snap's evaluation of licensing offers while threatening infringement litigation. *See* CClaims ¶¶ 55, 228, 230–34, 236.

"Delaware courts use the implied covenant of good faith and fair dealing to infer contractual terms where the party asserting the implied covenant shows the other party acted so arbitrarily and unreasonably as to frustrate[] the fruits of the bargain." *Opengate Cap. Grp. LLC v. Thermo Fisher Sci. Inc.*, 2014 WL 3367675, at *14 (D. Del. July 8, 2014) (cleaned up). Indeed, "[t]he covenant of good faith and fair dealing is implied in every agreement"—including an SSO contract to license standard-essential patents at RAND terms. *See HSMY, Inc. v. Getty Petrol. Mktg., Inc.*, 417 F. Supp. 2d 617, 621–22 (D. Del. 2006); *see also Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1038 (W.D. Wash. 2012). Snap pleads distinct conduct beyond the failure to offer RAND terms in Count XIX, including ignoring Snap's proposed NDA revisions

while threatening that infringement litigation was “imminent.” CClaims ¶¶ 55–56, 233–34. And Access Advance withheld the terms of its other licenses, which is critical to Snap’s assessment of whether the VDP offer was fair, reasonable, and non-discriminatory. *Id.* ¶¶ 56, 233–34. RAND or supra-RAND terms aside, Access Advance did not conduct the *process* of negotiating fairly or in good faith. Those implied duties run with the patent and bind Access Advance. *See Datatreasury*, 522 F.3d at 1372; *Bioverativ*, 2021 WL 3471688, at *3; *ASUS Tech.*, 2026 WL 2323353, at *1.

## VI. CONCLUSION

Access Advance’s motion to dismiss should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendant and Counterclaim-Plaintiff Snap Inc.*

OF COUNSEL:

Kathi Vidal
Alexander P. Ott
Joseph C. Masullo
WINSTON TAYLOR LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000

Eimeric Reig-Plessis
WINSTON TAYLOR LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5891
(415) 591-1000

Carson Swope
WINSTON TAYLOR LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
(650) 858-6500

September 28, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 28, 2026, upon the following in the manner indicated:

Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
FARNAN LAW, LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Kevin Schubert, Esquire
Robert Burns, Esquire
MCKOOL SMITH P.C.
1301 6th Ave, 32nd Floor
New York, NY 10019
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Warren Lipschitz, Esquire
Greg Saltz, Esquire
MCKOOL SMITH P.C.
300 Crescent Court
Dallas, TX 75201
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Mitch Verboncoeur, Esquire
McKool Smith P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Christopher McNett, Esquire
Kyra Mouser, Esquire
McKool Smith P.C.
1717 K Street, NW, Suite 1000
Washington, DC 20006
*Attorneys for Plaintiffs and Counterclaim-Defendants Dolby Video Compression, LLC and Dolby International AB, and Counterclaim-Defendants Dolby Laboratories, Inc. and Access Advance LLC*

*VIA ELECTRONIC MAIL*

*/s/ Jennifer Ying*
Jennifer Ying (#5550)