**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| DOLBY VIDEO COMPRESSION, LLC, AND DOLBY INTERNATIONAL AB,<br><br>Plaintiffs,<br><br>vs.<br><br>SNAP INC.,<br><br>Defendant, | Civil Action No. 26-317 (JLH) |
| SNAP INC.,<br><br>Counterclaim-Plaintiff,<br><br>vs.<br><br>DOLBY VIDEO COMPRESSION, LLC, DOLBY LABORATORIES, INC., DOLBY INTERNATIONAL AB, AND ACCESS ADVANCE LLC,<br><br>Counterclaim-Defendants, | |

**COUNTERCLAIM-DEFENDANT ACCESS ADVANCE LLC'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS SNAP INC.'S COUNTERCLAIMS**

Dated: October 9, 2026

Of Counsel:

**McKOOL SMITH P.C.**

Kevin Schubert
kschubert@mckoolsmith.com
Robert Burns
rburns@mckoolsmith.com
McKool Smith P.C.
1301 6th Ave, 32nd Floor
New York, NY 10019

Warren Lipschitz

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
Phone: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

***Attorneys for Plaintiff***

wlipschitz@mckoolsmith.com
Greg Saltz
gsaltz@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court
Dallas, TX 75201

Mitch Verboncoeur
mverboncoeur@mckoolsmith.com
McKool Smith P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701

Christopher McNett
cmcnett@mckoolsmith.com
Kyra Mouser
kmouser@mckoolsmith.com
McKool Smith P.C.
1717 K Street, NW, Suite 1000
Washington, DC 20006

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Access Advance Should Be Dismissed From This Lawsuit .......... 1

1. Access Advance Is Not Liable Under Agency Principles .......... 1

2. Snap Cannot Sustain Subject Matter Jurisdiction Because Alleged Economic Injury Does Not Establish a "Case or Controversy" .......... 3

3. Snap Has No Standing Against Access Advance .......... 5

4. Snap Fails To Plead Proper Damages Against Access Advance .......... 6

5. This Court Should Disregard Snap's Foreign, Inapposite, Case Law . 7

B. Snap's Express Waiver Claim Should Be Dismissed For Additional Reasons .......... 8

C. This Court Should Dismiss Snap's Good Faith and Fair Dealing Claim For Additional Reasons .......... 10

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Amneal Pharms. LLC*,
2019 WL 4538135 (D. Del. Sept. 19, 2019)....................4

*Armroyd v. Williams*,
1 F. Cas. 1132 (C.C.D. Pa. 1811) ....................8

*ASUS Tech. Licensing Inc. & Celerity IP, LLC v. AT&T Enters., LLC*,
2026 WL 2323353 (E.D. Tex. Aug. 11, 2026) ....................3

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*,
181 F.3d 435 (3d Cir. 1999)....................2

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007)....................4

*Bioverativ Inc. v. CSL Behring LLC*,
2021 WL 3471688 (D. Del. Aug. 6, 2021) ....................2

*Creative Compounds, LLC v. Starmark Lab'ys*,
651 F.3d 1303 (Fed. Cir. 2011)....................4

*Datatreasury Corp. v. Wells Fargo & Co.*,
522 F.3d 1368 (Fed. Cir. 2008)....................2

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004)....................8

*Farag v. Health Care Serv. Corp.*,
2017 U.S. Dist. LEXIS 103302 (N.D. Ill. July 5, 2017)....................4

*In re Indus. Print Techs.*,
2015 U.S. Dist. LEXIS 137238 (N.D. Tex. Oct. 7, 2015) ....................5, 7

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
956 F. Supp. 2d 925 (N.D. Ill. 2013) ....................2

*Labreck v. Bank of Am., N.A.*,
2018 WL 6427717 (D. Del. Dec. 7, 2018)....................9

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....................4

*Microchip Tech. Inc. v. Chamberlain Group, Inc.*,
441 F.3d 936 (Fed. Cir. 2006)....................4

*Microsoft Corp. v. Motorola, Inc.*,
2011 WL 11480223 (W.D. Wash. June 1, 2011)....................8

*Nat'l Controls Corp. v. Nat'l Semiconductor Corp.*,
833 F.2d 491 (3d Cir. 1987)....................6

*Qualcomm Inc. v. Broadcom Corp.*,
548 F.3d 1004 (Fed. Cir. 2008)....................8

*Sanyo Elec. Co., Ltd. v. Intel Corp.*,
2019 WL 1650067 (D. Del. Apr. 17, 2019)....................5

*Tabletop Media, LLC v. AMI Ent. Network, LLC*,
2017 WL 4511351 (D. Del. Oct. 10, 2017)....................4

*Tesla, Inc. v. InterDigital Pat. Holdings, Inc.*
[2026] UKSC 27....................7, 8

*Truinject Corp. v. Nestle Skin Health, S.A.*,
2020 U.S. Dist. LEXIS 2541 (D. Del. Jan. 7, 2020) (Hall, J.)....................2, 10

*In re Volkswagen Grp. of Am., Inc.*,
28 F.4th 1203 (Fed. Cir. 2022)....................10

**Other Authorities**

Restatement (Second) of Agency § 320....................2

Rule 12(b)(1)....................5

Rule 12(b)(6)....................3

# I. INTRODUCTION

Adding Access Advance would only needlessly increase the cost and complexity of this case. Snap cites no case in which a U.S. court has ever held Access Advance, or any patent pool administrator, a proper party to an infringement suit. While Snap tries to kick up dust with purported "fact issues," four *legal* reasons independently warrant Access Advance's dismissal.

First, Snap's argument that Access Advance is liable for contractual commitments Dolby entered as Dolby's alleged "agent" fails. Even if Access Advance were Dolby's "agent," an agent cannot be liable for contracts entered into by a principal, and Snap cites no authority otherwise. Second, Snap fails to show the subject matter jurisdiction, which requires that parties have adverse legal rights, not "mere adverse economic interests," *Arris Grp., Inc. v. Brit. Telecomms. PLC*, 639 F.3d 1368, 1374-1375 (Fed. Cir. 2011), as Snap alleges. Third, Snap cites no authority for standing to bring counterclaims against Access Advance seeking unenforceability of patents Access Advance does not own and cannot enforce. Fourth, Snap does not adequately plead damages against Access Advance and instead bases damages on costs of a litigation *filed by Dolby*. For these and other reasons below, the Court should dismiss Access Advance and the counterclaims against it.

# II. ARGUMENT

## A. Access Advance Should Be Dismissed From This Lawsuit

### 1. Access Advance Is Not Liable Under Agency Principles

Snap cannot manufacture a contractual commitment for Access Advance based on a contract it did not enter for patents it does not own. Snap alleges that—as Dolby's "agent"[1] —

[1] Snap's counterclaims assert liability "by virtue of [Access Advance's] role as the licensing agent for Dolby . . . and as an affiliate that is part-owned by Dolby." Countercls. at ¶ 59. Snap now abandons the second allegation. Resp. at 8 ("Snap's claims do not depend on affiliate status or veil-piercing, but rather on . . . the agency relationship between Dolby and Access Advance.").

Access Advance is bound to Dolby's RAND obligations. But Snap fails to cite a single case supporting that contention. Snap's claim that Access Advance is liable for any alleged breach of Dolby's RAND commitments merely because Access Advance has some authority to sublicense Dolby's patents as part of a pool offering is incorrect and unsupported by the case law.

Snap goes on for pages arguing that Access Advance is Dolby's agent, but Snap misses the point. D.I. 45 ("Resp.") at 5–8. While Access Advance denies that it is Dolby's agent, as it stated in a mere footnote (Mot. at 10, n.5), Access Advance is not liable for Dolby's ITU obligations *even if* Snap is correct that Access Advance is Dolby's "agent" because an agent does not "become a party to the contract" between a disclosed principal and a third party. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999); *see also Truinject Corp. v. Nestle Skin Health*, *S.A.,* 2020 U.S. Dist. LEXIS 2541 at *33–34 (D. Del. Jan. 7, 2020) (Hall, J.). Snap's retort is that the underlying facts of Access Advance's cited cases do not exactly match the circumstances of a licensing administrator negotiating licenses on behalf of patent pool members. Resp. at 8. But Snap fails to explain how the details of Access Advance's supposed agency affect the basic principles governing an agent's liability. Snap cannot rely on the allegation that Access Advance is an "agent" for its claims while eschewing binding caselaw regarding agents.

An agent cannot be liable for the acts of a disclosed principal. Restatement (Second) of Agency § 320; *Bel-Ray*, 181 F.3d at 445; *TruInject*, 2020 U.S. Dist. LEXIS 2541 at *33. Citing no authority to the contrary, Snap attempts to analogize to inapposite cases related to the rights that transfer to subsequent patent owners. *See Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1373 (Fed. Cir. 2008); *Bioverativ Inc. v. CSL Behring LLC*, No. CV 17-914-RGA, 2021 WL 3471688, at *3 (D. Del. Aug. 6, 2021); *In re Innovatio IP Ventures, LLC Pat. Litig.*, 956 F. Supp. 2d 925, 933 (N.D. Ill. 2013). But those cases all involved the transfer of patent *ownership*. As Snap

concedes, Access Advance is not an owner of Dolby's patents. Countercls. at ¶36 ("Dolby retains ownership of its patents."). Snap also cites an inapposite case regarding whether a party is bound by its *own* representations about its *own* patents. *ASUS Tech. Licensing Inc. & Celerity IP, LLC v. AT&T Enters., LLC*, 2026 WL 2323353, at *1 (E.D. Tex. Aug. 11, 2026) (finding that the plaintiff could not revoke its representation that *its own* patents were FRAND-encumbered). But this case actually supports Access Advance, showing that the party that owns the encumbered patents—Dolby—is subjected to the RAND obligation, not Access Advance.

Snap's counterclaims related to AV1 are even more strained because Dolby undisputedly never made any contractual commitments for AV1. Snap attempts to shoehorn in a basis to find Access Advance somehow liable for Dolby's RAND commitments through a theory that a license offer covering multiple video coding technologies violates RAND. *See* Resp. at 12. This theory fails because, again, Access Advance, the alleged agent, is not liable for any alleged RAND breaches by Dolby under agency law.

As basic agency principles dictate that Access Advance is not bound to Dolby's ITU commitments, and Snap cites no contrary authority, this Court should dismiss counterclaims XIX (breach of RAND) and XX (breach of duty) against Access Advance for failure to state a claim under Rule 12(b)(6). This Court should also dismiss counterclaim XXI (express waiver) for a similar reason, *i.e.*, Access Advance is only an alleged agent and does not own the asserted patents.

**2. Snap Cannot Sustain Subject Matter Jurisdiction Because Alleged Economic Injury Does Not Establish a "Case or Controversy"**

A second dispositive reason for dismissing Access Advance is the lack of subject matter jurisdiction. To sustain subject matter jurisdiction, there must be an "actual controversy" between Access Advance and Snap. This controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Arris*, 639 F.3d at 1373 (quoting *MedImmune,*

*Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)); Resp. at 9. An "adverse legal interest requires a dispute as to a legal right." *Arris*, 639 F.3d at 1374-1375. But a "mere adverse *economic* interest is insufficient to create declaratory judgment jurisdiction." *Id.*; *Farag v. Health Care Serv. Corp.*, 2017 U.S. Dist. LEXIS 103302, *10 (N.D. Ill. July 5, 2017) ("Plaintiffs' interest in having the '197 Patent declared invalid or unenforceable is adverse to Novartis' interest only in a pure economic sense, and is thus too far attenuated to support jurisdiction…") (citing *Arris*).

Snap fails to identify any "legal right," instead alleging adverse **economic** interests. For example, Snap claims that there are "financial interests in the enforceability of Dolby's Asserted Patents at least because [Access Advance] derives revenues from administering the VDP that includes those patents." Resp. at 9. But these allegations are insufficient to sustain declaratory judgment jurisdiction. *Arris*, 639 F.3d at 1374-1375; *Farag*, 2017 U.S. Dist. LEXIS 103302 at *10. Without a controversy as to a "legal right," this Court must dismiss Snap's counterclaims.

Snap cites *MedImmune*'s statement that declaratory judgment jurisdiction requires*, inter alia*, "parties having adverse legal interests," Resp. at 9, and concludes, with no authority, that because the parties purportedly have a different "financial interest," that is sufficient. *Id.* But, as in *Arris*, "mere adverse *economic* interest" is insufficient. A "legal right" is required, and courts—both before and after *MedImmune*—have evaluated a "legal right" based on whether there is "an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring."[2] *Arris*, 639 F.3d at 1374; *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340,

[2] Snap takes issue with *Benitec* citing the pre-*MedImmune* decision *Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006). Resp. at 9. But *Benitec* was, itself, post-*MedImmune* and extensively referenced *MedImmune*. The principle regarding whether the defendant could have filed suit against the plaintiff has been echoed in a host of post-*MedImmune* cases. *See, e.g.*, *Amgen Inc. v. Amneal Pharms. LLC*, 2019 WL 4538135, at *4 (D. Del. Sept. 19, 2019); *Tabletop Media, LLC v. AMI Ent. Network, LLC*, 2017 WL 4511351, at *3 (D. Del. Oct. 10, 2017); *Creative Compounds, LLC v. Starmark Lab'ys*, 651 F.3d 1303, 1316 (Fed. Cir. 2011).

1344 (Fed. Cir. 2007). Snap's failure to show subject matter jurisdiction is fatal, and all counterclaims against Access Advance must be dismissed under Rule 12(b)(1).

### 3. Snap Has No Standing Against Access Advance

To make matters worse, Snap lacks standing to bring these claims. Snap barely addresses Access Advance's standing arguments and cites no authority of its own. Snap's only arguments on standing are an attempt to distance itself from *Sanyo* and *Industrial Print*. Resp. at 10-11. Access Advance cited *Sanyo* for the proposition that it does not have the requisite standing to bring suit against Snap, so Snap cannot bring this declaratory judgment action against Access Advance. Mot. at 15. Snap erroneously limits *Sanyo* to just infringement cases, Resp. at 10, but *Sanyo* applies beyond infringement actions: "Just as Sanyo lacks standing to bring an infringement suit against Intel, so too does Intel lack standing to seek a declaratory judgment against Sanyo *of invalidity or patent exhaustion*." *Sanyo Elec. Co., Ltd. v. Intel Corp.*, 2019 WL 1650067, at *10 (D. Del. Apr. 17, 2019) (emphasis added). Regardless, Snap has no answer as to why it has any standing to file unenforceability counterclaims against Access Advance for patents Access Advance does not own.

Snap also attempts to distinguish *Industrial Print* because Access Advance allegedly "continues to exercise delegated authority to license Dolby's patents, communicate Dolby's licensing positions," *etc.*, Resp. at 11, but these are precisely the kinds of activities the court found insufficient. *In re Indus. Print Techs.*, 2015 U.S. Dist. LEXIS 137238 at *7-8 (N.D. Tex. Oct. 7, 2015). There, the court found no standing against a counterclaim defendant that "dominates [plaintiff and] controls every aspect of this litigation," because, like Access Advance, it "does not own any of the asserted patents and does not have any rights to assert them." *Id.* at *6.

As pled, Snap's counterclaims all apply to the Asserted Patents. *See* Counterclaims at 118, ¶G (requesting "[e]ntry of judgment declaring that Dolby . . . waived any ability to enforce the Asserted Patents."); *id.*, ¶F (requesting "[e]ntry of judgment declaring that the Asserted Patents

are RAND-encumbered."). Access Advance does not have standing to bring suit to enforce the Asserted Patents, and Snap lacks standing to bring this suit against Access Advance. Accordingly, all of Snap's counterclaims must also be dismissed against Access Advance for lack of standing.

#### 4. Snap Fails To Plead Proper Damages Against Access Advance

Access Advance must be dismissed for yet an additional reason: Snap does not plausibly allege any damages caused by Access Advance, which undisputedly is a required element of a breach of contract claim. *See* Mot. at 12-13. Moreover, damages must be tied to the alleged breach as a "but-for" cause and "substantial factor" in bringing about the sustained harm. *Nat'l Controls Corp. v. Nat'l Semiconductor Corp.*, 833 F.2d 491, 496 (3d Cir. 1987) (citation omitted).

Snap attempts to manufacture damages against Access Advance based around accusations that, at most, amount to litigation fees.[3] For example, Snap points to the cost of "defending premature litigation" brought by Dolby, Resp. at 13, that Access Advance "wield[ed] the threat of litigation" and "warn[ed] Snap . . . that an infringement suit was 'imminent,' attempting to coerce Snap into joining the VDP." Resp. at 14. But Snap cites no supporting authority that these costs are cognizable, and under the American rule parties typically bear their own attorney fees.[4] Even if these costs are cognizable, they are the result of *Dolby*, not Access Advance, filing a lawsuit.

Snap's suggestion that Access Advance purported "enforcement authority" somehow caused Snap damages is a red herring. Resp. at 14. Indeed, the examples Snap gives of "enforcement authority" are "authority to enter covenants and waivers of the right to sue." *Id*. Snap does not and cannot allege that Access Advance can assert (*i.e.*, enforce) patents it does not own.

[3] Snap's opposition does not raise any expenditures regarding negotiations, Resp. at 13-14, nor does it dispute that any such expenditures would be nonviable. *Compare id.* with Mot. at 13.

[4] Snap oddly asserts "an exception to the American rule where parties seek[] injunctive relief to enforce a RAND-committed patent." Resp. at 13. But Access Advance is not seeking an injunction.

Thus, Snap fails to allege a plausible theory under which Snap's cost of defending against Dolby's lawsuit can be attributed to Access Advance.

Snap also cites the need for discovery, but this is an insufficient rationale to keep Access Advance in the case. *In re Indus. Print*, 2015 U.S. Dist. LEXIS 137238 at *7 (dismissing a counterclaim defendant and denying further discovery as to its relationship with plaintiff). Indeed, "[t]he Federal Rules provide sufficient means for Defendants to obtain relevant discovery from [counterclaim defendant] as a nonparty," including through subpoenas or other tools. *Id.*[5]

As Snap's counterclaims XIX and XX are both rooted in contract, and Snap has not pled cognizable damages against Access Advance, these counterclaims must be dismissed. Counterclaim XXI must also be dismissed because Snap seeks no damages from Access Advance, and, again, the requested relief is unenforceability of patents Access Advance does not own.

### 5. This Court Should Disregard Snap's Foreign, Inapposite, Case Law

Unable to cite a single supportive U.S. case, Snap relies heavily on the U.K. Supreme Court's decision in *Tesla, Inc. v. InterDigital Pat. Holdings, Inc.* [2026] UKSC 27 (U.K.). But this decision was made by a foreign tribunal under U.K. law and involves different parties, a different contract subject to French law, and different allegations from those in this dispute.

Snap fails to explain why this Court should ignore clear, binding determinations from U.S. courts regarding the liability of "agents"—as Snap alleges Access Advance is here—to instead follow the decision from a foreign tribunal. U.K. law, even if applicable, should not control over established U.S. agency law that has governed for centuries: "[A] court which means to act

[5] Notably, Snap's counterclaims make substantially similar allegations against Access Advance for certain patents-in-suit, and another pool administrator, Via LA for another patent-in-suit, including that both pools allegedly expressly waived patent rights. Countercls. at 57–58, ¶¶37–48, 242. Snap did not, however, add Via LA as a counterclaim defendant to this litigation, further showing there is no need to have a pool administrator as a named party in this lawsuit.

correctly, will never depart from the rule of right, or reverse fixed principles of law, because a foreign tribunal has done so." *Armroyd v. Williams*, 1 F. Cas. 1132, 1134 (C.C.D. Pa. 1811) (Washington, J.); *see also F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 165 (2004) (seeing no reason to allow "American [antitrust] law [to] supplant, for example, Canada's or Great Britain's or Japan's own determination about how best to protect Canadian or British or Japanese customers from anticompetitive conduct"). Moreover, even if Snap could look to extraterritorial law on the issue of "agency," which it cannot, the *Tesla* case would not fix the host of other dispositive problems with Snap's counterclaims, namely lack of subject matter jurisdiction, lack of standing, and failure to properly plead tenable damages.

**B. Snap's Express Waiver Claim Should Be Dismissed For Additional Reasons**

Snap's support for pursuing waiver as a counterclaim is a misapplication of *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1025 (Fed. Cir. 2008), which evaluated whether a court may consider waiver *as a defense* (not a counterclaim) after a jury noninfringement finding. *Qualcomm* did not consider the propriety of waiver as a counterclaim. Snap misleadingly turns the court's description of the plaintiff's argument into an endorsement of waiver as a proper counterclaim,[6] when all the court said was that "the district court rejected *Qualcomm's argument* that Broadcom may not have any remedies beyond itself, because it raised waiver as an affirmative defense rather than as a counterclaim or crossclaim." *Qualcomm*, 548 F.3d at 1024 (emphasis added). Snap's failure to identify any supporting law for waiver as a counterclaim is unsurprising because courts are "unaware of[] any legal authority allowing waiver as a cause of action." *Microsoft Corp. v. Motorola, Inc.*, 2011 WL 11480223, at *4 (W.D. Wash. June 1, 2011).

[6] According to Snap, "[t]he Federal Circuit disagreed, 'see[ing] no reason' why a district court could not enter a judgment of unenforceability based on waiver, even when 'raised . . . as an affirmative defense rather than as a counterclaim or cross-claim.'" Resp. at 15.

Next, Snap improperly attempts to justify its waiver counterclaim because it somehow seeks affirmative relief beyond that sought in Snap's fifth defense because the counterclaim purportedly requests a "declaration that Dolby's HEVC and AVC standard-essential patents are unenforceable due to express waiver—including as to other patents in the VDP." Resp. at 15 (citing Countercls. ¶¶ 243–44). But this allegation directly contradicts Snap's pleadings. Indeed, Snap *removed* this requested relief from its amended counterclaims in response to Access Advance's motion to dismiss Snap's initial counterclaims.

Specifically, Snap initially sought a declaratory judgment that "all claims of all patents that are licensed through Access Advance" are unenforceable. D.I. 25 at ¶ 197. Access Advance moved to dismiss, arguing that this sought relief was overbroad and untenable. D.I. 33 at 6–7. Subsequently, Snap amended its counterclaims to pursue this relief only for "all Asserted Patents." Countercls. ¶¶ 243–44 (alleging "Snap is entitled to a declaratory judgment that all claims of all Asserted Patents that are licensed through Access Advance are unenforceable" and seeking relief as to "all Asserted Patents" and "all claims of the '173 Patent"); *see also* Prayer for Relief ¶ G (same). Based on Snap's operative pleadings, Snap's requested relief for its counterclaims is *not* broader than that asserted in its fifth defense, and these pleadings cannot be revised via Snap's Response. *Labreck v. Bank of Am., N.A.*, 2018 WL 6427717, at *4 (D. Del. Dec. 7, 2018) ("While Plaintiff may have decided to change his theory of the case after reviewing Defendants' motion to dismiss, he may not amend his complaint through his opposition to the motion to dismiss.").

Finally, even if Access Advance were Dolby's agent, Access Advance's alleged statement would, at most, pertain to pool licensing. Mot. at 18. Snap does not argue otherwise. Resp. at 15 ("The waiver was squarely within the pool context."). But Access Advance could not effectuate an express waiver on Dolby's behalf because its authority was, at most, limited to pool licensing.

*In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1209 (Fed. Cir. 2022) ("[J]ust because a party may be a principal's agent for a particular purpose does not mean that the party is the principal's agent for another."). Snap attempts to frame this issue as a "fact question for discovery," but without pleading any allegations that Access Advance had any authority to speak for Dolby's rights outside of the pool context, *i.e.* to enforce its patents or license them bilaterally, Snap has failed to adequately plead an express waiver of such rights.

### C. This Court Should Dismiss Snap's Good Faith and Fair Dealing Claim For Additional Reasons

This Court should dismiss Snap's Count XX (Breach of Duty of Good Faith and Fair Dealing) as improperly duplicative of Snap's Count XIX (Breach of RAND). To preserve both claims, Snap separates "offer[ing] RAND terms" from "the process of negotiating fairly." Resp. at 16–17. But this is not what Snap pleaded in its counterclaims, which expressly link "Access Advance's course of conduct in communications" with "an absence of any effort to negotiate in good faith *or any effort to meet the RAND obligations*." Countercls. at ¶ 55 (emphasis added).

Moreover, Snap has failed to plead adequate facts for its good faith and fair dealing claim, which as this Court has held is a claim "rarely invoked successfully." *Truinject Corp.*, 2020 U.S. Dist. LEXIS 2541 at *40. Snap has not shown a "specific obligation implied in the contract, a breach of that obligation, and resulting damages." *Id.* (determining that a covenant of good faith and fair dealing claim is a "limited and extraordinary legal remedy."). Here, Snap never identifies any contract Access Advance has breached, let alone a specific obligation implied in that contract, and resulting damages.

## III. CONCLUSION

This is a case properly between Snap and Dolby—not Access Advance. This Court should dismiss Access Advance, and all counterclaims against it, from this litigation.

Dated: October 9, 2026.

Respectfully submitted,

**FARNAN LLP**

*/s/ Brian* E. Farnan

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Phone: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

***Attorneys for Counterclaim-Defendant Access Advance***

Of Counsel:

**McKOOL SMITH P.C.**

Kevin Schubert
kschubert@mckoolsmith.com
Robert Burns
rburns@mckoolsmith.com
McKool Smith P.C.
1301 6th Ave, 32nd Floor
New York, NY 10019

Warren Lipschitz
wlipschitz@mckoolsmith.com
Greg Saltz
gsaltz@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court
Dallas, TX 75201

Mitch Verboncoeur
mverboncoeur@mckoolsmith.com
McKool Smith P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701

Christopher McNett
cmcnett@mckoolsmith.com
Kyra Mouser
kmouser@mckoolsmith.com
McKool Smith P.C.
1717 K Street, NW, Suite 1000
Washington, DC 20006